SC 13D/A 1 dsc13da.htm SCHEDULE 13D AMENDMENT NO. 23

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# SCHEDULE 13D

**Under the Securities Exchange Act of 1934**
**(Amendment No. 23)\***

OPEN JOINT STOCK COMPANY
"VIMPEL-COMMUNICATIONS"

**(Name of Issuer)**

Common Stock, nominal value 0.005 rubles per share

**(Title of Class of Securities)**

68370R109

**(CUSIP Number)**

Franz Wolf
Eco Telecom Limited
Suite 2
4 Irish Place
Gibraltar
(350) 41977

**(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)**

October 9, 2006

**(Date of Event which Requires Filing of this Statement)**

With a copy to:

Alexey Reznikovich
Altimo Holdings & Investments Limited
Str. Novy Arbat, build. 21
GSP-2
119992 Moscow, Russia
(7-495) 981-4449

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the following box. ☐

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 (the "Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

| | |
|---|---|
| 1. Name of Reporting Persons<br>   I.R.S. Identification Nos. of above persons (entities only)<br><br>   **Eco Telecom Limited**<br>   **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** | |
| 2. Check the Appropriate Box if a Member of a Group<br>   (a) ☐<br>   (b) ☒ | |
| 3. SEC Use Only | |
| 4. Source of Funds<br><br>   **AF; OO** | |
| 5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) | ☐ |
| 6. Citizenship or Place of Organization<br><br>   **Gibraltar** | |

| Number of Shares Beneficially Owned by Each Reporting Person With | 7. Sole Voting Power<br><br>   **14,213,257 shares of Common Stock**\* |
| | 8. Shared Voting Power<br><br>   **0** |
| | 9. Sole Dispositive Power<br><br>   **14,213,257 shares of Common Stock**\* |
| | 10. Shared Dispositive Power<br><br>   **0** |

| | |
|---|---|
| 11. Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>   **14,213,257 shares of Common Stock**\* | |
| 12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares | ☐ |
| 13. Percent of Class Represented by Amount in Row (11)<br><br>   **27.7% of Common Stock**\* | |
| 14. Type of Reporting Person<br><br>   **OO, HC** | |

\* Eco Telecom is also the direct beneficial owner of 6,426,600 (100%) shares of the Issuer's type-A voting preferred stock, which, together with the total number of shares of the Issuer's common stock owned by Eco Telecom, represents approximately 35.8% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of a swap agreement, the Reporting Person shall have the right to receive 1,649,475 shares of Common Stock in the Issuer, represented by 6,597,900 American Depositary Receipts of the Issuer on or after October 27, 2006 or, with the consent of the swap counterparty, cash in lieu of the American Depositary Receipts. See Item 6.

- 2 -

1. Name of Reporting Persons
   I.R.S. Identification Nos. of above persons (entities only)

   **Altimo Holdings & Investments Limited**
   **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**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)   ☐

6. Citizenship or Place of Organization

   **British Virgin Islands**

Number of Shares Beneficially Owned by Each Reporting Person With

7. Sole Voting Power

   **14,213,257 shares of Common Stock**\*

8. Shared Voting Power

   **0**

9. Sole Dispositive Power

   **14,213,257 shares of Common Stock**\*

10. Shared Dispositive Power

    **0**

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,213,257 shares of Common Stock**\*

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares   ☐

13. Percent of Class Represented by Amount in Row (11)

    **27.7% of Common Stock**\*

14. Type of Reporting Person

    **OO, HC**

---

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type-A voting preferred stock, which, together with the total number of shares of the Issuer's common stock that the Reporting Person may be deemed to beneficially own, represents approximately 35.8% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of a swap agreement, the Reporting Person shall have the right to receive 1,649,475 shares of Common Stock in the Issuer, represented by 6,597,900 American Depositary Receipts of the Issuer on or after October 27, 2006 or, with the consent of the swap counterparty, cash in lieu of the American Depositary Receipts. See Item 6.

- 3 -

1. Name of Reporting Persons
   I.R.S. Identification Nos. of above persons (entities only)

   **CTF Holdings Limited**
   **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**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **AF; OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6. Citizenship or Place of Organization

   **Gibraltar**

Number of Shares Beneficially Owned by Each Reporting Person With

7. Sole Voting Power

   **14,213,257 shares of Common Stock**\*

8. Shared Voting Power

   **0**

9. Sole Dispositive Power

   **14,213,257 shares of Common Stock**\*

10. Shared Dispositive Power

    **0**

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,213,257 shares of Common Stock**\*

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares    ☐

13. Percent of Class Represented by Amount in Row (11)

    **27.7% of Common Stock**\*

14. Type of Reporting Person

    **OO, HC**

---

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type-A voting preferred stock, which, together with the total number of shares of the Issuer's common stock that the Reporting Person may be deemed to beneficially own, represents approximately 35.8% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of a swap agreement, the Reporting Person shall have the right to receive 1,649,475 shares of Common Stock in the Issuer, represented by 6,597,900 American Depositary Receipts of the Issuer on or after October 27, 2006 or, with the consent of the swap counterparty, cash in lieu of the American Depositary Receipts. See Item 6.

- 4 -

1. Name of Reporting Persons
   I.R.S. Identification Nos. of above persons (entities only)

   **Crown Finance Foundation**
   **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**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **AF; OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6. Citizenship or Place of Organization

   **Liechtenstein**

Number of Shares Beneficially Owned by Each Reporting Person With

7. Sole Voting Power

   **14,213,257 shares of Common Stock**\*

8. Shared Voting Power

   **0**

9. Sole Dispositive Power

   **14,213,257 shares of Common Stock**\*

10. Shared Dispositive Power

    **0**

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,213,257 shares of Common Stock**\*

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares    ☐

13. Percent of Class Represented by Amount in Row (11)

    **27.7% of Common Stock**\*

14. Type of Reporting Person

    **OO**

---

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type-A voting preferred stock, which, together with the total number of shares of the Issuer's common stock that the Reporting Person may be deemed to beneficially own, represents approximately 35.8% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of a swap agreement, the Reporting Person shall have the right to receive 1,649,475 shares of Common Stock in the Issuer, represented by 6,597,900 American Depositary Receipts of the Issuer on or after October 27, 2006 or, with the consent of the swap counterparty, cash in lieu of the American Depositary Receipts. See Item 6.

- 5 -

**Item 1. Security and Issuer.**

This Amendment No. 23 (this "Amendment") to the Statement on Schedule 13D relates to the common stock, nominal value 0.005 rubles per share (the "Common Stock"), of Open Joint Stock Company "Vimpel-Communications" ("VimpelCom"). The initial Statement on Schedule 13D, previously filed jointly by Eco Telecom Limited ("Eco Telecom"), Eco Holdings Limited, CTF Holdings Limited ("CTF Holdings") and Crown Finance Foundation ("Crown Finance") on June 11, 2001 (as amended and supplemented by Amendment Nos. 1 through 22, the "Statement"), is hereby amended and supplemented with respect to the items set forth in this Amendment. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Statement.

**Item 2. Identity and Background.**

This Amendment is being filed on behalf of each of the following persons (each, a "Reporting Person" and, collectively, the "Reporting Persons"):

(i)   Eco Telecom;

(ii)  Altimo Holdings & Investments Limited (formerly known as Alfa Telecom Limited) ("Altimo");

(iii) CTF Holdings; and

(iv)  Crown Finance.

The Statement, as amended hereby, relates to the shares of Common Stock held for the account of Eco Telecom.

<u>The Reporting Persons</u>

Eco Telecom is a Gibraltar company, with its principal business address at 10/8 International Commercial Centre, Casemates Square, Gibraltar. The principal business of Eco Telecom is to function as a holding company. Current information concerning the identity and background of the directors and officers of Eco Telecom is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

Altimo Holdings & Investments Limited ("Altimo") is a British Virgin Islands company, with its principal address at P.O. Box 3339, Geneva Place, Second Floor, 333 Waterfront Drive, Road Town, Tortola, British Virgin Islands. The principal business of Altimo is to function as a holding company. Altimo is the sole shareholder of Eco Telecom and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of Altimo is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

CTF Holdings is a Gibraltar limited liability company, with its principal address at Suite 2, 4 Irish Place, Gibraltar. The principal business of CTF Holdings is to function as a holding company. CTF Holdings indirectly owns a majority of the shares of Altimo and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of CTF Holdings is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

Crown Finance is a Liechtenstein foundation, with its principal address at Am Schragen Weg 14, P.O. Box 1618, FL-9490, Vaduz, Liechtenstein. The principal business of Crown Finance is investment and management of the assets and capital of the foundation. Crown Finance is the sole shareholder of CTF Holdings and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of Crown Finance is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

The "Supervisory Board" coordinates the strategic development of a group of affiliated entities, often referred to as the "Alfa Group Consortium," which group includes the Reporting Persons. In certain instances, the Supervisory Board issues recommendations regarding strategic business decisions to the entities that are members of the Alfa Group Consortium. Current information regarding the identity and background of the members of the Supervisory Board is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

During the past five years, none of the Reporting Persons and, to the best of the Reporting Persons' knowledge, no other person identified in response to this Item 2, has been (a) convicted in a criminal proceeding or (b) a party to any civil proceeding or a judicial or administrative body of competent jurisdiction as a result of which such person was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws, or finding any violation with respect to such laws.

**Item 3. Source and Amount of Funds or Other Consideration.**

As stated in the Reporting Person's Amendment 10 to Schedule 13D, filed on May 25, 2005, the Reporting Persons intend to fund purchases under the transaction described in Item 6, below, with working capital of affiliates of Alfa Telecom.

**Item 4. Purpose of Transaction.**

Item 4 is hereby supplemented as follows:

The new Anti-monopoly Law in the Russian Federation effective from October 26, 2006 provides for the mandatory prior consent of the Federal Anti-monopoly Service ("FAS") for acquisitions of more than 25%, and/or more than 50% and more than 75% of the voting shares of a company entered into the register of companies with a significant market share or assets exceeding certain thresholds. No preliminary FAS consent is required if an acquirer's stake does not exceed any of these thresholds.

Prior to the effectiveness of the new Anti-monopoly Law, the Reporting Persons have entered into the transaction described in Item 6 through a wholly-owned affiliate to attempt to assure the availability of additional Common Shares in VimpelCom should the Reporting Person seek to acquire such shares as a result of the effectiveness of the new Anti-monopoly law. The Reporting Persons currently intend to increase their influence over the corporate actions to be taken by VimpelCom but may, from time to time, and reserve the right to, change their plans or intentions and take any and all actions that they deem appropriate to maximize the value of their investment in VimpelCom.

**Item 5. Interest in Securities of the Issuer.**

Item 5 is hereby supplemented as follows:

(a) After giving effect to the transaction described in Item 6, the Reporting Persons may be the direct or indirect beneficial owner of 6,426,600 shares of the Issuers type-A voting preferred stock, representing 100% of such class of securities, and 14,213,257 shares of the Issuer's Common Stock.

(b) Each of the Reporting Persons may be deemed to have sole voting power to direct the voting and disposition of 14,213,257 shares of Common Stock (subject to the exercise of the swap agreement described in Item 6) and 6,426,600 shares of the Issuer's type-A preferred stock held for the account of Eco Telecom.

(c) As described in Item 6, a subsidiary of Altimo has entered into a swap agreement relating to 1,649,475 shares of the Issuer's Common Stock, represented by 6,597,900 American Depositary Receipts.

(d) No material change.

(e) Not applicable.

**Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

On August 30, 2006, Rightmarch Limited, a wholly-owned subsidiary of Altimo ("Rightmarch"), entered into a 2002 master agreement and schedule thereto published by the International Swaps and Derivatives Association, Inc. ("ISDA") together with a master confirmation (the "Swap Agreement") with Jam Holding Asset Management Limited (the "Counterparty") relating to certain share forward transactions in respect of American Depositary Receipts of VimpelCom ("ADRs") (each a "Swap Transaction"). Each Swap Transaction will be entered into by Rightmarch and the Counterparty executing a supplemental confirmation in respect of such Swap Transaction. Each such supplemental confirmation will contain, inter alia, the number of ADRs which are to be the subject of the relevant Swap Transaction. The effective date of each Swap Transaction will be the date specified in such supplemental confirmation. Under each Swap Transaction, Rightmarch will make an upfront payment to the Counterparty on the date specified in the applicable supplemental confirmation and will, in return, be entitled to require the Counterparty to deliver to Rightmarch the number of ADRs in respect of which the relevant Swap Transaction was entered into on any date elected by Rightmarch which falls between 26 October 2006 and 1 January 2007 (subject to adjustment for non-business days). At the time of such election Rightmarch and the Counterparty may agree that, in lieu of physical delivery of the relevant number of ADRs, the Counterparty pays to Rightmarch the cash equivalent of such number of ADRs, as determined on the date the relevant settlement is due to take place. Neither Rightmarch nor any of the other Reporting Persons shall have any voting power with respect to any ADRs or the underlying shares in VimpelCom represented thereby until such time as delivery of the relevant ADRs takes place.

The preceding summary of the Swap Transaction is not intended to be complete and is qualified in its entirety by reference to the full text of the master confirmation to the Swap Agreement, a conformed copy of which is attached hereto as Exhibit 99.1 and incorporated herein by reference.

- 7 -

In addition to the Swap Transaction described herein, the Reporting Persons may, from time to time, enter into and unwind cash settled swap or other similar derivative transactions with respect to the securities of VimpelCom, which transactions may be significant in amount. These arrangements do not and will not give the Reporting Persons voting or investment control over the securities of VimpelCom to which these transactions relate and, accordingly, the Reporting Persons disclaim beneficial ownership of any such securities.

Except as provided in the documents described in the Statement on Schedule 13D and Amendments Nos. 1 through 22 hereto (inclusive), or as set forth herein, neither Eco Telecom, Altimo, CTF Holdings or Crown Finance, nor to the best of Eco Telecom's, Altimo's, CTF Holdings' or Crown Finance's knowledge, any of the individuals named in Item 2 hereof has entered into any contracts, arrangements, understandings or relationships (legal or otherwise) with any person with respect to any securities of VimpelCom, including, but not limited to, transfer or voting of any securities, finder's fees, joint ventures, loan or option arrangement, puts or calls, guarantees of profits, division of profits or losses, or the giving or withholding of proxies.

**Item 7. Material to be Filed as Exhibits.**

The Index of Exhibits attached hereto is incorporated herein by reference.

- 8 -

SIGNATURES

After reasonable inquiry and to the best of his or her knowledge and belief, each of the undersigned certifies that the information in this Amendment is true, complete and correct.

Date: October 9, 2006

ECO TELECOM LIMITED

By: /s/ Marina Kushnareva
Name: Marina Kushnareva
Title: Director

Date: October 9, 2006

ALTIMO HOLDINGS & INVESTMENTS LIMITED

By: /s/ Franz Wolf
Name: Franz Wolf
Title: Director

Date: October 9, 2006

CTF HOLDINGS LIMITED

By: /s/ Franz Wolf
Name: Franz Wolf
Title: Director

Date: October 9, 2006

CROWN HOLDINGS LIMITED

By: /s/ Franz Wolf
Name: Franz Wolf
Title: Attorney-in-Fact

- 9 -

# ANNEX A

## Directors and Officers of Eco Telecom Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Marina Kushnareva, Director (Russia) | Manager, CTF Holdings Limited | Suite 2<br>4 Irish Place, Gibraltar |

## Directors and Officers of Altimo Holdings & Investments Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Geoffrey Piers Hemy, Director (United Kingdom) | Director, Grand Financial Holding S.A. | 11 Boulevard Royale<br>L-2449 Luxembourg |
| Georgia Karydes, Director (Cyprus) | Director, Feldmans Management (Overseas) Ltd. | 6 Nikou Georgiou Street<br>Block C, Office 704<br>Nicosia 1098, Cyprus |
| Alla Kudryavtseva, Director (Russia) | Director, CTF Holdings Limited | Suite 2,<br>4 Irish Place, Gibraltar |
| Alexey Reznikovich, Chief Executive Officer (Russia) | Chief Executive Officer, OOO ALTIMO Limited | Str. Novy Arbat, build. 21<br>GSP-2<br>119992 Moscow, Russia |
| Pavel Volitskiy, Director (Russia) | Manager, CTF Holdings Limited | Suite 2<br>4 Irish Place, Gibraltar |
| Franz Wolf, Director (Germany) | Director, CTF Holdings Limited | Suite 2<br>4 Irish Place, Gibraltar |

## Directors and Officers of CTF Holdings Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Alla Kudryavtseva, Director (Russia) | Director, CTF Holdings Limited | Suite 2<br>4 Irish Place, Gibraltar |
| Franz Wolf, Director (Germany) | Director, CTF Holdings Limited | Suite 2<br>4 Irish Place, Gibraltar |

## Directors and Officers of Crown Finance Foundation

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Christian Rosenow, Director (Switzerland) | Financial Adviser | Talacker 35, 8001<br>Zurich, Switzerland |
| Dr. Norbert Seeger, Director (Liechtenstein) | Attorney, Arcomm Trust Company | Am Schragen Weg 14<br>P.O. Box 1618 FL-9490<br>Vaduz, Liechtenstein |
| Dr. Christian Zangerle, Director (Austria) | Attorney, Law Office of Dr. Norbert Seeger | Am Schragen Weg 14<br>P.O. Box 1618 FL-9490<br>Vaduz, Liechtenstein |

- 10 -

**Members of the Supervisory Board of Alfa Group Consortium**

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Peter Aven, Director (Russia) | President, OJSC Alfa Bank | 11 Mashy Poryaevoy Street 107078 Moscow, Russia |
| Alexandr Fain, Director (Russia) | Chief Executive Officer, Alfa Eco LLC | 21 Novy Arbat Street 121019 Moscow, Russia |
| Mikhail Fridman, Director (Russia) | Chairman of the Board of Directors, OJSC Alfa Bank | 9 Mashy Poryvayevoy Street 107078 Moscow, Russia |
| Michail Gamzin, Director (Russia) | Director General, OAO Russian Technologies | 3 rd Golutvinsky Pereulok 10 Building 6 109180 Moscow, Russia |
| German Khan, Director (Russia) | Executive Director, TNK-BP Management | 18/2, Schipok Street 115093 Moscow, Russia |
| Lev Khasis, Director (Russia) | Chief Executive Officer, Pyaterochka Holding N.V. | Kapranova Pereulok 3 123242 Moscow, Russia |
| Alexander Kosiyanenko, Director (Russia) | Member of the Supervisory Board of Pyaterochka Holding N.V. | Apt. 421 Mozhayskoye shosse 2, B 121356 Moscow, Russia |
| Andrei Kosogov Director (Russia) | Chairman of the Board of Directors of Alfa Asset Management | 12 Prospect Academic Sakharov 107078 Moscow, Russia |
| Alexey Kuzmichev, Director (Russia) | Chairman of Board of Directors, Alfa Eco LLC | 21 Novy Arbat Street 121019 Moscow, Russia |
| Nigel John Robinson, Director (United Kingdom) | Director of Corporate Development, Finance and Control, Alfa Group Consortium | 6 Sechenovskiy Pereulok Building 3, Floor 3 119034 Moscow, Russia |
| Alexey Reznikovich, Director (Russia) | Chief Executive Officer, OOO ALTIMO Limited | Str. Novy Arbat, build. 21 GSP-2 119992 Moscow, Russia |
| Alexander Savin, Director (Russia) | Managing Director, A1 LLC | 12 Krasnopresenskaya Nab. International Trade Center 2, Entrance 7 123610 Moscow, Russia |

To the best of the Reporting Persons' knowledge:

(a)   None of the above persons holds any shares of Common Stock.

(b)   None of the above persons has any contracts, arrangements, understandings or relationships with respect to any shares of Common Stock.

- 11 -

**Index of Exhibits**

Exhibit 99.1   Master Confirmation, dated 30 August 2006, between Jam Holding Asset Management Limited and Rightmarch Limited.

- 12 -

EX-99.1 2 dex991.htm MASTER CONFIRMATION

**Exhibit 99.1**

| | |
|---|---|
| To: | Rightmarch Limited<br>Themistokli Dervi<br>5 Elenion Building<br>2nd Floor<br>P.C. 1066<br>Nicosia<br>Cyprus |
| Fax no: | +350 41 988 (c/o Altimo Holdings & Investments Limited) |
| Attention: | Mr Franz Wolf |
| From: | Jam Holding Asset Management Ltd.<br>Akara Building<br>24, de Castro Street<br>Wickhams Cay 1<br>Road Town<br>Tortola<br>British Virgin Islands |
| Attention: | Michel Huber |
| Date: | 30 August 2006 |

Dear Sirs

**MASTER CONFIRMATION FOR SHARE FORWARD TRANSACTIONS**

The purpose of this communication (the **"Master Confirmation"**) is to set forth the terms and conditions applicable to share forward transactions (each, a **"Transaction"**) to be entered into between Jam Holding Asset Management Ltd (**"Party A"**) and Rightmarch Limited (**"Party B"**) on the Trade Date relating to such Transaction. For each such Transaction, this Master Confirmation will be supplemented by a supplemental confirmation (a **"Supplemental Confirmation"**) which, together with this Master Confirmation, shall form the **"Confirmation"** for the relevant Transaction, as referred to in the Agreement specified below.

The form of Supplemental Confirmation is set out at the Schedule to this Master Confirmation. A Transaction will only be entered into upon execution of a Supplemental Confirmation and the terms of this Master Confirmation shall apply to such Transaction separately from each other Transaction. The parties hereby agree that no Supplemental Confirmation will be entered into after 26 October 2006.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the **"Equity Derivatives Definitions"**) as published by the International Swaps and Derivatives Association, Inc. (**"ISDA"**) as amended and supplemented by the 2000 ISDA Definitions published by ISDA (together, the **"Definitions"**) are incorporated into this Master Confirmation and the Supplemental Confirmation relating to the relevant Transaction. In the event of any inconsistency between the Definitions and the Master Confirmation and any Supplemental Confirmation, the Confirmation will prevail.

This Master Confirmation and the applicable Supplemental Confirmation relating to a Transaction supplements, forms part of and is subject to the 2002 ISDA Master Agreement dated on or about 30 August 2006 (the **"Agreement"**) between Party A and Party B. All provisions contained in or incorporated by reference in the Agreement will govern this Confirmation except as expressly modified below.

Each party represents to the other that it is entering into this transaction in reliance on its own judgment after taking such tax, accounting, regulatory, legal, financial and other related advice as it has deemed necessary and not in reliance on any view or other statement expressed by the other.

The terms of each Transaction to which this Confirmation relates are as follows:

1. **GENERAL TERMS**

   | | |
   |---|---|
   | Buyer: | Party B. |
   | Seller: | Party A. |
   | Trade Date: | In respect of each relevant Transaction, the applicable date set out in the Supplemental Confirmation. |
   | Commencement Date: | In respect of each relevant Transaction, the applicable date set out in the Supplemental Confirmation. |
   | Transaction Type: | Share Forward Transaction. |
   | Shares: | American Depositary Receipts of Open Joint Stock Company "Vimpel-Communications" (**"VimpelCom"**) (ISIN: US68370R1095, CUSIP: 68370R109). |
   | Exchange: | The New York Stock Exchange. |
   | Related Exchange: | All Exchanges. |
   | Number of Shares: | As specified in the Supplemental Confirmation for the applicable Transaction. |
   | Prepayment: | Applicable. |
   | Prepayment Amount: | The amount in US dollars equal to the product of the Initial Price as at the Prepayment Date multiplied by the Number of Shares applicable to the Transaction. |
   | Prepayment Date: | As specified in the Supplemental Confirmation for the applicable Transaction. |
   | Premium: | Not applicable. |
   | Business Days: | London and New York. |
   | Business Day Convention: | Following. |
   | Calculation Agent: | Party B. |
   | Settlement Currency: | US dollars. |

- 2 -

2. **PROCEDURE FOR EXERCISE**

   | | |
   |---|---|
   | Exercise Date: | Any Scheduled Trading Day falling from, and including, the Exercise Period Start Date to, but excluding, the Expiration Date notified by Party B to Party A in writing at least three Business Days prior to the applicable Scheduled Trading Day. |
   | Exercise Period Start Date: | 26 October 2006. |
   | Expiration Date: | 1 January 2007. |
   | Expiration Time: | At the close of trading on the Exchange on the Expiration Date. |

3. **SETTLEMENT TERMS**

   | | |
   |---|---|
   | Settlement: | Physical Settlement. Notwithstanding the foregoing, if the Party B notifies Party A prior to the applicable Settlement Date that it wishes for the Transaction to be Cash-settled, then Cash Settlement shall apply (with the relevant Cash Settlement Payment Date being the Settlement Date) if Party A confirms in writing to Party B that it consents to the Transaction being Cash-settled in lieu of Physical Settlement. |
   | Settlement Date: | The Exercise Date. Notwithstanding the foregoing, if Party B has not notified Party A of an Exercise Date which falls prior to the Expiration Date, the Settlement Date will be the Expiration Date. |
   | Valuation Date: | To the extent Cash Settlement applies, as agreed between Party A and Party B prior to the Cash Settlement Payment Date. |
   | Valuation Time: | To the extent Cash Settlement applies, as agreed between Party A and Party B prior to the Cash Settlement Payment Date. |
   | Variable Obligation: | Not applicable. |
   | Business Days for Exercise and Settlement Date: | London and New York. |
   | Business Day Convention: | Following (which shall apply to any date referred to in this Confirmation that falls on a day that is not a Business Day). |
   | Termination Currency: | USD. |

- 3 -

4. **ADJUSTMENTS**

| | |
|---|---|
| Method of Adjustment: | Calculation Agent Adjustment. |
| Consequences of Merger Event: | |
|     Share for Share: | Modified Calculation Agent Adjustment. |
|     Share for Other: | Modified Calculation Agent Adjustment. |
|     Share for Combined: | Modified Calculation Agent Adjustment. |
| Consequences of Tender Offers: | |
|     Share for Share: | Modified Calculation Agent Adjustment. |
|     Share for Other: | Modified Calculation Agent Adjustment. |
|     Share for Combined: | Modified Calculation Agent Adjustment. |
| Nationalisation, Insolvency or Delisting: | Negotiated Close-out. |
| Change in Law: | Applicable. |
| Insolvency Filing: | Applicable. |

5. **DIVIDENDS**

| | |
|---|---|
| Dividend Period: | First Period. |
| Excess Dividend Amount: | Record Amount (as defined below). |

6. **ADDITIONAL PROVISIONS:**

6.1 As at the date of entry into each Supplemental Confirmation, Party B represents that, for the purposes of Section 14(d)(1) of the Williams Act (15 U.S.C. Section 78n(d)(1)), the execution of this Master Confirmation and the relevant Supplemental Confirmation, and the performance of its obligations thereunder, does not constitute a tender offer.

6.2 Section 13.1 ("Non-Reliance") and 13.4 ("Additional Acknowledgements") of the Equity Derivatives Definitions shall apply in respect of each Transaction.

6.3 If the Calculation Agent determines that the holder of the Shares is entitled to subscribe for additional Shares or Related Shares (a) the Number of Shares will be deemed to have increased by the number of Shares which a Notional Investor would have been entitled to subscribe for had such Notional Investor, on the applicable Prepayment Date, fully hedged its delivery and payment obligations under the relevant Transaction and (b) the Calculation Agent will make such other adjustments to the terms of the applicable Transaction as it determines are appropriate to take account of the economic effect of such increase in the Number of Shares (including, without limitation, providing for a further prepayment date under the relevant Transaction).

6.4 Each reference to a Share in Section 6.3 of the Equity Derivatives Definitions shall be deemed to be a reference to both the Shares and the Related Shares.

6.5 The definition of "Potential Adjustment Event" in Section 11.2 of the Equity Derivatives Definitions and the definitions of "Nationalisation", "Insolvency" and "Delisting" in Section 12.6 of the Equity Derivatives Definitions shall be construed as if references to the Shares include references to the Related Shares.

6.6 The words "or Related Shares" shall be deemed to be added after each reference to the "Shares" in Section 12.1 of the Equity Derivatives Definitions.

6.7 If the Deposit Agreement is terminated, then on or after the date of such termination the terms of the Transaction will be amended so that each reference to a Share shall be deemed to be replaced by a reference to a Related Share and the Calculation Agent will make such other adjustments to the terms of the applicable Transaction as it determines are appropriate to take account of such termination.

6.8 In respect of each Transaction, on the 10th Business Day following the Prepayment Date relating thereto, Party B will pay to Party A a fee equal to 0.5 per cent of the Prepayment Amount determined in respect of such Transaction. In addition, Party B may (in its sole determination), but shall not be obliged to, pay to Party A on such 10th Business Day an additional fee of 0.3 per cent of the Prepayment Amount relating to the relevant Transaction in consideration of Party A entering into the relevant Transaction.

7. **DEFINITIONS**

The following terms used in this confirmation shall have the meanings set out opposite them, notwithstanding anything to the contrary in the Definitions.

"**Deposit Agreement**" means, in relation to the Shares, the agreement(s) of other instrument(s) constituting the Shares, as from time to time amended or supplemented in accordance with its (their) terms;

"**Initial Price**" means the price for a Share on the Prepayment Date which shall be calculated as the mid point of the highest bid price and the lowest ask price quoted as of the Initial Price Determination Time on the Scheduled Trading Day falling immediately prior to the Prepayment Date (or, if it is not possible to determine such prices on such date, on the first Scheduled Trading Day preceding the Prepayment Date on which it is possible to determine such prices) for the Shares on the Exchange (or the last such prices quoted immediately before such time) without regard to quotations that "lock" or "cross" the dealer exchange or dealer quotation system in respect of the Exchange;

"**Initial Price Determination Time**" means the scheduled weekday closing time of the Exchange without regard to after hours or any other trading outside of the regular trading session hours provided that it the Exchange closes prior such scheduled closing time on the relevant date, such time shall be such actual closing time for the Exchange;

"**Notional Investor**" means a notional investor in materially the same position as Party A which had entered into a forward transaction, on materially the same terms as the applicable Transaction, as seller under such forward transaction;

"**Issuer**" means The Bank of New York (or any successor thereto), as depositary in respect of the ADRs, and VimpelCom, as issuer of the Related Shares;

"**Record Amount**" means 100 per cent of the gross cash dividend (before withholding or deduction of taxes at source by or on behalf of any applicable authority having power to tax in respect of such a dividend, and shall exclude any imputation or other credits, refunds or deductions granted by any applicable authority having power to tax in respect of such dividend and any taxes, credits, refunds or benefits imposed, withheld, assessed or levied thereon) per Share declared by the Issuer to holders of record of a Share or Related Share, as the case may be, on any record date occurring during the relevant Dividend Period; and

"**Related Shares**" means common shares of VimpelCom, each of which has a nominal value of 0.005 rubles.

8.  ACCOUNT DETAILS

    Payments to Party A:

    Account for payments:   Bank Julius Baer & Co. AG
                            c/o Mrs A Caviezel
                            PO Box 8010 Zurich.
                            Account number: 03025822.

    Payments to Party B:

    Account for payments:   Amsterdam Trade Bank N.V., Amsterdam
                            Herengracht 475, 1017 BS Amsterdam, The Netherlands
                            SWIFT: STOLNL2A
                            Account Number: 9001-800687-001

                            Correspondent Bank of Party B's bank:
                            JP Morgan Chase, New York, USA
                            SWIFT: CHASUS33
                            Correspondent Account: 400211408.

    Account for deliveries to Party B: To be advised.

Yours faithfully,

For and on behalf of **Jam Holding Asset Management Ltd**

By:

On behalf of Rightmarch Limited we agree to the terms set out above and agree to act as Calculation Agent.

**Rightmarch Limited**

By:

- 6 -

## Schedule
## Supplemental Confirmation

| | |
|---|---|
| To: | Rightmarch Limited<br>Themistokli Dervi<br>5 Elenion Building<br>2nd Floor<br>P.C. 1066<br>Nicosia<br>Cyprus |
| Fax no: | +350 41 988 (c/o Altimo Holdings & Investments Limited) |
| Attention: | Mr Franz Wolf |
| From: | Jam Holding Asset Management Ltd<br>Akara Building<br>24, de Castro Street<br>Wickhams Cay 1<br>Road Town<br>Tortola<br>British Virgin Islands |
| Attention: | Michel Huber |
| Date: | [●] |

Dear Sirs

**SHARE FORWARD TRANSACTION - REFERENCE NUMBER [ ]**

This communication is a supplemental confirmation to the master confirmation entered into between Jam Holding Asset Management Ltd (**"Party A"**) and Rightmarch Limited (**"Party B"**) on 30 August 2006. This supplemental confirmation, together with such master confirmation, shall form the **"Confirmation"** for the share forward transaction described below and in such master confirmation. The terms and definitions described in such master confirmation are incorporated herein. In the event of any inconsistency between this supplemental confirmation to such master confirmation, such master confirmation will prevail.

| | |
|---|---|
| Trade Date: | [●]. |
| Commencement Date: | [●]. |
| Number of Shares: | [●]. |
| Prepayment Date: | [●]. |

Yours faithfully,

For and on behalf of Jam Holding Asset Management Ltd

By:

On behalf of Rightmarch Limited we are delighted to have agreed this transaction with you.

Rightmarch Limited

By:

- 7 -