SC 13D/A 1 u50258sc13dza.htm FORM 13D/A

| OMB APPROVAL |
| --- |
| OMB Number: 3235-0145 |
| Expires: February 28, 2009 |
| Estimated average burden hours per response...14.5 |

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 13D

### Under the Securities Exchange Act of 1934
### (Amendment No. 36)*

# OPEN JOINT STOCK COMPANY "VIMPEL-COMMUNICATIONS"

(Name of Issuer)

---

Common Stock, 0.005 rubles nominal value

(Title of Class of Securities)

---

68370R 10 9

(CUSIP Number)

---

Bjørn Hogstad
Telenor ASA
Snarøyveien 30
N-1331 Fornebu, Norway
47-97-77-8806

(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

---

June 2, 2006

(Date of Event which Requires Filing
of this Statement)

---

Copy to:

Peter O'Driscoll
Orrick, Herrington & Sutcliffe
Tower 42, Level 35
25 Old Broad Street
London EC2N 1HQ
England
44-20-7562-5000

---

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of §§ 240.13d-1(e) or 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See § 240.13d-7 for other parties to whom copies are to be sent.

*The remainder of this cover page will be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this "cover page" shall not be deemed "filed" for the purpose of Section 18 of the Securities Exchange of 1934 (the "Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

CUSIP No. 68370R 10 9

---

1. Name of Reporting Person:          I.R.S. Identification Nos. of above persons (entities only):
   Telenor East Invest AS             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

---

2. Check the Appropriate Box if a Member of a Group (See Instructions):

   (a) ☐

   (b) ☐

---

3. SEC Use Only:

---

4. Source of Funds (See Instructions):
   N/A

---

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e): ☐
   N/A

---

6. Citizenship or Place of Organization:
   Norway

---

|                                                    | 7. Sole Voting Power:<br>15,337,854 |
| Number of Shares Beneficially Owned by Each Reporting Person With | 8. Shared Voting Power:<br>-0- |
|                                                    | 9. Sole Dispositive Power:<br>15,337,854 |
|                                                    | 10. Shared Dispositive Power:<br>-0- |

---

11. Aggregate Amount Beneficially Owned by Each Reporting Person:
    15,337,854

---

12. Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions):
    ☐

---

13. Percent of Class Represented by Amount in Row (11):
    29.9% of the outstanding Common Stock (26.6% of the outstanding voting capital stock)

---

sc13dza

14. Type of Reporting Person (See Instructions):
    CO

CUSIP No. 68370R 10 9

---

1. Name of Reporting Person:          I.R.S. Identification Nos. of above persons (entities only):
   Telenor Mobile Holding AS          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

---

2. Check the Appropriate Box if a Member of a Group (See Instructions):

   (a)  ☐

   (b)  ☐

---

3. SEC Use Only:

---

4. Source of Funds (See Instructions):
   N/A

---

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e):  ☐
   N/A

---

6. Citizenship or Place of Organization:
   Norway

---

|  | 7. Sole Voting Power:<br>15,337,854[1] |
| Number of Shares Beneficially Owned by Each Reporting Person With | 8. Shared Voting Power:<br>-0- |
|  | 9. Sole Dispositive Power:<br>15,337,854[1] |
|  | 10. Shared Dispositive Power:<br>-0- |

---

11. Aggregate Amount Beneficially Owned by Each Reporting Person:
    15,337,854[1]

---

12. Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions):
    ☐

---

13. Percent of Class Represented by Amount in Row (11):
    29.9% of the outstanding Common Stock (26.6% of the outstanding voting capital stock)

---

14.  Type of Reporting Person (See Instructions):
     CO

---

[1]The Reporting Person disclaims beneficial ownership of all shares.

---

CUSIP No. 68370R 10 9

---

1. Name of Reporting Person:                I.R.S. Identification Nos. of above persons (entities only):
   Telenor ASA                              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

---

2. Check the Appropriate Box if a Member of a Group (See Instructions):

   (a)  ☐

   (b)  ☐

---

3. SEC Use Only:

---

4. Source of Funds (See Instructions):
   AF

---

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e): ☐
   N/A

---

6. Citizenship or Place of Organization:
   Norway

---

| Number of Shares Beneficially Owned by Each Reporting Person With | 7. Sole Voting Power: 15,337,854 [2] |
| | 8. Shared Voting Power: -0- |
| | 9. Sole Dispositive Power: 15,337,854 [2] |
| | 10. Shared Dispositive Power: -0- |

---

11. Aggregate Amount Beneficially Owned by Each Reporting Person:
    15,337,854 [2]

---

12. Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions):
    ☐

---

13. Percent of Class Represented by Amount in Row (11):
    29.9% of the outstanding Common Stock (26.6% of the outstanding voting capital stock)

---

14.  Type of Reporting Person (See Instructions):
     CO

---

(2)The Reporting Person disclaims beneficial ownership of all shares.

---

## SCHEDULE 13D

**Item 1. <u>Security and Issuer</u>**

The statement on Schedule 13D relating to the common stock, 0.005 rubles nominal value (the "Common Stock"), of Open Joint Stock Company "Vimpel-Communications," a Russian open joint stock company ("VimpelCom"), as previously jointly filed by Telenor East Invest AS, Telenor Mobile Holding AS and Telenor ASA (as amended by Amendment Nos. 1 through 35, the "Statement"), is hereby amended and supplemented with respect to the items set forth below.

Except as provided herein, this Amendment does not modify any of the information previously reported in the Statement.

**Item 2. <u>Identity and Background</u>**

This amendment to the Statement on Schedule 13D is being jointly filed by Telenor East Invest AS, Telenor Mobile Holding AS and Telenor ASA (collectively, the "Reporting Persons").

TELENOR EAST INVEST AS

(a)    Telenor East Invest AS, a corporation formed under the laws of Norway.

(b)    Snarøyveien 30
       N — 1331 Fornebu
       Norway

(c)    Telenor East Invest AS is engaged principally in the business of investing in the telecommunications industry outside of Norway.

(d)    During the last five years, Telenor East Invest AS has not been convicted in a criminal proceeding.

(e)    During the last five years, Telenor East Invest AS was not a party to a civil proceeding of a judicial or administrative body as a result of which Telenor East Invest AS was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

EXECUTIVE OFFICERS AND DIRECTORS OF TELENOR EAST INVEST AS

(a), (b), (c) and (f) The following information sets forth the name, citizenship, business address and present principal occupation of each of the directors and executive officers of Telenor East Invest AS. Except as otherwise indicated, the business address

of each of such persons is Telenor East Invest AS, c/o Telenor ASA, Snarøyveien 30, N-1331 Fornebu, Norway.

### DIRECTORS OF TELENOR EAST INVEST AS

| Name and Business Address | Citizenship | Present Principal Occupation |
| --- | --- | --- |
| Ragnar Korsaeth (Oslo, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Global Coordination; and Chief Operating Officer of Telenor Mobile Communications AS |
| Bjorn Hogstad (Oslo, Norway) | Norway | Attorney, Advokatene i Telenor |
| Gunn Margethe Logith Ringoen (Oslo, Norway) | Norway | Senior Business Manager of Telenor ASA |

### EXECUTIVE OFFICERS OF TELENOR EAST INVEST AS

| Name and Business Address | Citizenship | Present Principal Occupation |
| --- | --- | --- |
| Kenneth Bolsoy (Oslo, Norway) | Norway | Financial Controller, Telenor ASA |

(d)     During the last five years, none of the above executive officers and directors of Telenor East Invest AS has been convicted in a criminal proceeding.

(e)     During the last five years, none of the above executive officers and directors of Telenor East Invest AS was a party to a civil proceeding of a judicial or administrative body as a result of which Telenor East Invest AS was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

### TELENOR MOBILE HOLDING AS

(a)     Telenor Mobile Holding AS, a corporation formed under the laws of Norway.

(b)     Snarøyveien 30
N — 1331 Fornebu
Norway

(c)     Telenor Mobile Holding AS is engaged principally in the development of and investment in the field of telecommunications through direct and indirect ownership of companies and entering into agreements relating to telecommunications.

(d)     During the last five years, Telenor Mobile Holding AS has not been convicted in a criminal proceeding.

(e)     During the last five years, Telenor Mobile Holding AS was not a party to a civil proceeding of a judicial or administrative body as a result of which Telenor Mobile Holding AS was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

EXECUTIVE OFFICERS AND DIRECTORS OF TELENOR MOBILE HOLDING AS

(f)     (a), (b), (c) and (f) The following information sets forth the name, citizenship, business address and present principal occupation of each of the directors and executive officers of Telenor Mobile Holding AS. The address of the directors and executive officers is Telenor Mobile Holding AS, c/o Telenor ASA, Snarøyveien 30, N — 1331 Fornebu, Norway.

DIRECTORS OF TELENOR MOBILE HOLDING AS

| Name and Business Address | Citizenship | Present Principal Occupation |
| --- | --- | --- |
| Jon Fredrik Baksaas (Sandvika, Norway) | Norway | President and Chief Executive Officer of Telenor ASA and Chairman of the Board of Telenor Mobile Holding AS |
| Trond Westlie (Oslo, Norway) | Norway | Executive Vice President and Chief Financial Officer of Telenor ASA |
| Jan Edvard Thygesen (Nesbru, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Telenor in Eastern/Central Europe |
| Berit Svendsen (Oslo, Norway) | Norway | Executive Vice President of Telenor ASA |

| Name and Business Address | Citizenship | Present Principal Occupation |
|---|---|---|
| Morten Fallstein<br>(Oslo, Norway) | Norway | Employee Representative |
| Tore Haugland<br>(Bergen, Norway) | Norway | Employee Representative |
| Arnhild Londal<br>(Oslo, Norway) | Norway | Employee Representative |
| Kirsten Dalholt<br>(Oslo, Norway) | Norway | Senior Advisor of Telenor ASA Nordic Division |

### EXECUTIVE OFFICERS OF TELENOR MOBILE HOLDING AS

| Name and Business Address | Citizenship | Present Principal Occupation |
|---|---|---|
| Arve Johansen<br>(Oslo, Norway) | Norway | Senior Executive Vice President of Telenor ASA and Head of Telenor in Asia; and Chief Executive Officer of Telenor Mobile Holding AS |
| Jon Fredrik Baksaas<br>(Sandvika, Norway) | Norway | President and Chief Executive Officer of Telenor ASA and Chairman of the Board of Telenor Mobile Holding AS |

(d) During the last five years, none of the above executive officers and directors of Telenor Mobile Holding AS has been convicted in a criminal proceeding.

(e) During the last five years, none of the above executive officers and directors of Telenor Mobile Holding AS has been a party to a civil proceeding of a judicial or administrative body as a result of which such executive officer or director was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

TELENOR ASA

(a)    Telenor ASA, a corporation formed under the laws of Norway.

(b)    Snarøyveien 30
N — 1331 Fornebu
Norway

(c) Telenor ASA is engaged principally in the business of production and supply of services in the fields of telecommunications, data services and media distribution.

(d) During the last five years, Telenor ASA has not been convicted in a criminal proceeding.

(e) During the last five years, Telenor ASA was not a party to a civil proceeding of a judicial or administrative body as a result of which Telenor ASA was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

EXECUTIVE OFFICERS AND DIRECTORS OF TELENOR ASA

(a), (b), (c) and (f) The following information sets forth the name, citizenship, business address and present principal occupation of each of the directors and executive officers of Telenor ASA. Except as otherwise indicated, the business address of each of such persons is c/o Telenor ASA, Snarøyveien 30, N — 1331 Fornebu, Norway.

DIRECTORS OF TELENOR ASA

| Name and Business Address | Citizenship | Present Principal Occupation |
|---|---|---|
| Torleif Enger (Ostre Toten, Norway) | Norway | Chief Executive Officer of Yara International ASA and Chairman of the Board of Telenor ASA |
| Bjorg Ven (Oslo, Norway) | Norway | Partner, Haavind Vislie Law Firm; Deputy Chairman of the Board of Telenor ASA; and Member of the Boards of Cermaq ASA, Vital Insurance AS and Dagbladet AS |
| Hanne de Mora (Erlenbach, Switzerland) | Switzerland | Principal of A-Connect and Member of the Board of Tomra ASA |
| Jorgen Lindegaard (Stockholm, Sweden) | Denmark | President and Chief Executive Officer of the SAS Group and Member of the Boards of Finansieringsinstituttet for Industri og Haandvaerk AS and Superfos AS |
| John Giverholt (Asker, Norway) | Norway | Chief Financial Officer of Ferd AS |

| Name and Business Address | Citizenship | Present Principal Occupation |
| --- | --- | --- |
| Paul Bergqvist (Stockholm, Sweden) | Sweden | Managing Director of Carlsberg Sweden |
| Liselott Kilaas (Oslo, Norway) | Norway | Managing Director of ZENITEL ASA |
| Per Gunnar Salomonsen (Skien, Norway) | Norway | Employee Representative |
| Harald Stavn (Kongsberg, Norway) | Norway | Employee Representative |
| Irma Ruth Tystad (Trysil, Norway) | Norway | Employee Representative |

### EXECUTIVE OFFICERS OF TELENOR ASA

| Name and Business Address | Citizenship | Present Principal Occupation |
| --- | --- | --- |
| Jon Fredrik Baksaas (Sandvika, Norway) | Norway | President and Chief Executive Officer of Telenor ASA and Chairman of the Board of Telenor Mobile Holding AS |
| Arve Johansen (Oslo, Norway) | Norway | Senior Executive Vice President of Telenor ASA and Head of Telenor in Asia; and Chief Executive Officer of Telenor Mobile Holding AS |
| Trond Westlie (Oslo, Norway) | Norway | Executive Vice President and Chief Financial Officer of Telenor ASA |
| Jan Edvard Thygesen (Nesbru, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Telenor in Eastern/Central Europe |
| Stig Eide Sivertsen (Oslo, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Telenor Broadcast; Chief Executive Officer of Telenor Broadband Services AS; and Chairman of the Board of Canal Digital AS |
| Morten Karlsen Sorby (Hammaro, Sweden) | Norway | Executive Vice President of Telenor ASA and Head of Telenor in the Nordic Region; and Chief Executive Officer of Telenor Norway |
| Ragnar Korsaeth (Oslo, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Global Coordination; and Chief Operating Officer of Telenor Mobile Communications AS |
| Bjørn Magnus Kopperud (Drammen, Norway) | Norway | Executive Vice President of Telenor ASA and Head of Human Resources |

(d) During the last five years, none of the above executive officers and directors of Telenor ASA has been convicted in a criminal proceeding.

(e) During the last five years, none of the above executive officers and directors of Telenor ASA has been a party to a civil proceeding of a judicial or administrative body as a result of which such executive officer or director was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

### Item 4. <u>Purpose of the Transaction</u>

The Reporting Persons may, from time to time, and reserve the right to, change their plans or intentions and to take any and all actions that they deem appropriate to maximize the value of their investment in VimpelCom. In order to maximize the value of their investment in VimpelCom, the Reporting Persons may, from time to time, consider, evaluate or propose various possible transactions involving VimpelCom or its subsidiaries or affiliates, which could include, among other things:

(i) the possible acquisition of additional securities of VimpelCom from time to time in the open market, in privately negotiated transactions or otherwise, including, without limitation, through entry into and exercise of call options or other derivative transactions;

(ii) the possible acquisition or disposition of debt securities or other debt instruments of third parties, in each case, that are secured by, convertible into or exchangeable for securities of VimpelCom, and the enforcement of any such security interest or the exercise of any such exchange or conversion right;

(iii) the possible disposition or exchange of any securities of VimpelCom owned by them, including the possible disposition of all of the shares of Common Stock of VimpelCom owned by them;

(iv) possible extraordinary corporate transactions (such as a merger, consolidation, reorganization or restructuring) involving VimpelCom or any of its subsidiaries, including with other telecommunication companies which may be affiliated with the Reporting Persons;

(v) in addition to the proposed transaction concerning Closed Joint Stock Company "Kyivstar G.S.M." previously described in the Statement, the possible acquisition by VimpelCom or its subsidiaries of assets or interests in one or more telecommunication companies, including other telecommunication companies which may be affiliated with the Reporting Persons, or the possible sale of assets or operations by VimpelCom or its subsidiaries;

(vi) making or seeking to make changes in or affecting the Board of Directors or management of VimpelCom;

(vii) in addition to ongoing litigation and arbitration proceedings previously described in the Statement, possible litigation or arbitration involving VimpelCom, its Board of Directors and/or its management and/or one or more of Eco Telecom Limited, Eco Holdings Limited, CTF Holdings Limited, Alfa Telecom Limited and their respective affiliates;

(viii) in addition to the Swap Transaction described in Item 6 below, entering into and unwinding derivative transactions with respect to the securities of VimpelCom; or

(ix) soliciting the votes of VimpelCom's shareholders in relation to any annual or extraordinary general meeting of shareholders of VimpelCom.

The Reporting Persons may also, from time to time, formulate other plans or proposals regarding VimpelCom or its securities to the extent deemed advisable in light of market conditions, subsequent developments affecting VimpelCom, the general business and future prospects of VimpelCom, tax considerations, or other factors.

### Item 6.  Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer

On June 2, 2006, Telenor ASA entered into a master confirmation (the "Swap Agreement") with ING Bank N.V., London Branch ("ING") providing for a total return equity swap (the "Swap Transaction") in respect of up to 8,130,000 American Depositary Receipts of VimpelCom ("ADRs") (evidencing up to 2,032,500 shares of Common Stock of VimpelCom). During the period beginning on June 2, 2006 and ending on September 30, 2006 (unless the Swap Transaction is fully terminated prior to such date), ING will execute and deliver to Telenor ASA supplemental confirmations in respect of any ADRs acquired by ING (the "Underlying ADRs") under the Swap Agreement (each such acquisition, a "Transaction"). The effective date of each Transaction will be the date specified in such supplemental confirmation. Under the Swap Agreement, Telenor ASA will make payments to or receive payments from ING that reflect the total return on the notional value of the Underlying ADRs during the period beginning on June 2, 2006 and ending on June 2, 2007 (unless the Swap Transaction is fully terminated prior to such date), including receiving amounts equivalent to 85% of the amount of any dividends paid during the term of the Swap Transaction, and Telenor will make payments to ING equivalent to a floating rate of interest on a notional principal amount equal to the aggregate notional value of the Underlying ADRs. The Swap Agreement provides only for cash settlement. Neither Telenor ASA nor any of the other Reporting Persons shall have any voting power with respect to any Underlying ADRs, and Telenor ASA and each of the other Reporting Persons disclaim beneficial ownership of any such securities.

The preceding summary of the Swap Transaction is not intended to be complete and is qualified in its entirety by reference to the full text of the Swap Agreement, a conformed copy of which is attached hereto as Exhibit 99.1 and incorporated herein by reference.

In addition to the Swap Transaction described herein, the Reporting Persons may, from time to time, enter into and unwind cash settled equity swap or other similar derivative transactions with respect to the securities of VimpelCom, which transactions may be significant in amount. These arrangements do not and will not give the Reporting Persons voting or investment control over the securities of VimpelCom to which these transactions relate and, accordingly, the Reporting Persons disclaim beneficial ownership of any such securities.

Except as provided in the documents described in the Statement on Schedule 13D and Amendments Nos. 1 through 35 hereto (inclusive), or as set forth herein, neither Telenor East Invest AS, Telenor Mobile Holding AS or Telenor ASA, nor to the best of Telenor East Invest AS's, Telenor Mobile Holding AS's or Telenor ASA's knowledge, any of the individuals named in Item 2 hereof has entered into any contracts, arrangements, understandings or

relationships (legal or otherwise) with any person with respect to any securities of VimpelCom, including, but not limited to, transfer or voting of any securities, finder's fees, joint ventures, loan or option arrangement, puts or calls, guarantees of profits, division of profits or losses, or the giving or withholding of proxies.

**Item 7.  <u>Material to be Filed as Exhibits</u>**

99.1.  Master Confirmation dated June 2, 2006 between ING Bank N.V., London Branch and Telenor ASA

## SIGNATURES

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this Amendment to the Statement on Schedule 13D is true, complete and correct and that such Statement, as amended hereby, is true, complete and correct.

Dated: June 2, 2006

**TELENOR EAST INVEST AS**

By  /s/ Ragnar Korsaeth
      Name:  Ragnar Korsaeth
      Title:    Chairman of the Board

**TELENOR MOBILE HOLDING AS**

By  /s/ Jon Fredrik Baksaas
      Name:  Jon Fredrik Baksaas
      Title:    Chairman of the Board

**TELENOR ASA**

By  /s/ Jon Fredrik Baksaas
      Name:  Jon Fredrik Baksaas
      Title:    President and Chief
                Executive Officer

EX-99.1 2 u50258exv99w1.htm EXHIBIT 99.1

Exhibit 99.1

Conformed Copy

MASTER CONFIRMATION DATED JUNE 2, 2006 BETWEEN ING BANK, N.V., LONDON BRANCH AND TELENOR ASA

Date:                              June 2, 2006

To:                                Telenor ASA
Telephone No.:                     Redacted
Facsimile No.:                     Redacted
Attention:                         Redacted
From:                              ING Bank N.V., London Branch ("ING")
Telephone No.:                     Redacted
Facsimile No.:                     Redacted
Attention:                         Redacted

ING Reference Number:              Redacted

Subject:                           Master Confirmation Total Return Swap Transaction

Dear Sirs

The purpose of this letter agreement (this "Master Confirmation") is to confirm the terms and conditions applicable to transaction (each a "Transaction" and, together the "Transactions") to be entered into between us on the Trade Date specified below from time to time. Each Transaction is to be evidenced by a supplemental confirmation (each, a "Supplemental Confirmation" and Supplemental Confirmation, together with, the Master Confirmation, a "Confirmation" for purposes of the Agreement (as defined below)) substantially in the form of Exhibit A hereto, which shall be executed by ING and delivered to and binding on Counterparty (as defined below) (except in the case of manifest error) without the need for any further action by the parties.

1.      Each Confirmation supplements, forms part of and is subject to, the ISDA Master Agreement dated as of 9 May, 2006, amended and supplemented from time to time (the "Agreement"), between you and us. All provisions contained in the Agreement govern each such Confirmation except as expressly modified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Swap Definitions") and in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions," and together with the Swap Definitions, the "Definitions"), in each case published by the International Swaps and Derivatives Association, Inc., are incorporated into each Confirmation. In the event of any inconsistency between the Swap Definitions and the Equity Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and any Confirmation such Confirmation will govern. In the event of an inconsistency between any Supplemental Confirmation and this Master Confirmation, this Master Confirmation will govern.

For the purpose of this Master Confirmation, "ING" means ING Bank N.V., London Branch and "Counterparty" means Telenor ASA.

2.      The terms of the particular Transactions to which this Master Confirmation relates are as follows:

General Terms:

        Trade Date:                For each Transaction, the date specified in the Supplemental Confirmation

        Effective Date:            For each Transaction, the date specified in the Supplemental Confirmation

        Termination Date(s):       June 2, 2007 and each Optional Termination Date (as

defined in "Option to Terminate"), to be adjusted in accordance with the Business Day Convention

| | |
|---|---|
| Shares: | Vimpelcom-SP ADR<br>ISIN: US68370R1095 (Sedol No. 2943675) |
| Exchange: | New York Stock Exchange |
| Related Exchange(s): | All Exchanges |
| Business Days: | New York, London and Oslo |
| Business Day Convention | Following |
| Calculation Agent: | ING and Counterparty. If the parties are unable to agree on a determination within one Business Day, each party agrees to be bound by the determination of an independent leading dealer in equity derivative Transactions ("independent leading dealer"), mutually selected by the parties, who shall act as the substitute Calculation Agent, with the fees and expenses of such substitute Calculation Agent (if any) to be met equally by the parties. If the parties are unable to agree on an independent leading dealer to act as substitute Calculation Agent, each party shall select an independent leading dealer and such independent leading dealers shall agree on an independent third party who shall be deemed to be the substitute Calculation Agent. |

Equity Amounts payable by the Equity Amount Payer:

| | |
|---|---|
| Equity Amount Payer: | ING |
| Number of Shares: | For each Transaction, the number of Shares specified in the Supplemental Confirmation, subject to an aggregate limit of 8,130,000 Shares subject to this Master Confirmation on or prior to September 30, 2006. |
| Equity Notional Amount: | For each Transaction, the USD amount specified in the Supplemental Confirmation, being on the Trade Date the Number of Shares multiplied by the Initial Price specified in the Supplemental Confirmation and, for the Transactions, the aggregate of such amounts. |
| Equity Notional Reset: | Applicable |
| Type of Return: | Total Return |
| Initial Price: | In respect of the initial Valuation Date for each Transaction the USD amount specified in the Supplemental Confirmation; provided that upon the earlier of (i) the completion of Transactions in respect of 8,130,000 Shares and (ii) September 30, 2006, the Initial Price shall be the arithmetic average of the Initial Prices specified in all Supplemental Confirmations, weighted by the Number of Shares specified in each such Supplemental Confirmation. |
| Final Price: | In respect of any Valuation Date other than a Final Valuation Date, the Relevant Price. In respect of a Final Valuation Date, provided the parties have not otherwise agreed on a Final Price (including an amount representing ING's cost of funding, inclusive of the Spread, for the |

period from the Termination Date to the final Cash Settlement Payment Date) by no later than 4pm London time (the "Notification Time") on the second Exchange Business Day following such Final Valuation Date, then the following provisions shall apply.

On or before the Notification Time on the third Exchange Business Day following such Final Valuation Date, ING shall notify the Counterparty whether ING elects, in its sole discretion, to dispose of the Shares being terminated and, if ING so elects, the number of days, between 5 and 40 (beginning on the relevant Termination Date), designated by ING for such disposal (the "Unwind Period").

If ING notifies the Counterparty on or before the Notification Time on the third Exchange Business Day following such Final Valuation Date that ING has elected not to dispose of all of the Shares, the Final Price shall be the Relevant Price on the relevant Final Valuation Date.

If ING notifies the Counterparty on or before the Notification Time on the third Exchange Business Day following such Final Valuation Date that ING has elected to dispose of the Shares being terminated during the Unwind Period, the Final Price shall be the sum of (i) the costs and expenses of ING in disposing of such Shares (which shall not exceed 20 bps, based on the Equity Notional Amount in respect of such Shares on the relevant Termination Date); and (ii) the product of the Relevant Price on each day during the Unwind Period multiplied by the Daily Unwind Amount on any such day, provided that, in calculating the Final Price, any terminated Shares that ING does not dispose of during the Unwind Period shall be deemed to have been disposed of on the final day of the Unwind Period.

The "Daily Unwind Amount" shall be the number of Shares disposed of (or deemed disposed of) by ING on any day during the Unwind Period.

The final Cash Settlement Payment Date shall be three Exchange Business Days following the earliest of (i) the date on which the parties have agreed the Final Price, (ii) the last day of the Unwind Period or (iii) such date on which ING notifies the Counterparty that it has disposed of all of the Shares.

If the parties fail to agree the Final Price as provided in the first paragraph of this section, then the Counterparty shall be obligated to pay ING's cost of funding (including the Spread) in respect of the terminated Shares held by it during the period commencing on the Termination Date and ending on the final Cash Settlement Payment Date determined in accordance with clause (ii) or (iii) of the preceding paragraph.

| | |
|---|---|
| Relevant Price: | The official volume weighted average price per Share quoted by the Exchange as of the Valuation Time on a Valuation Date or a day during the Unwind Period. |
| Valuation Time: | The Scheduled Closing Time on the relevant Exchange |
| Valuation Dates: | (i) For each Transaction, the Effective Date of such |

Page 3 of 9

Transaction, (ii) the third Exchange Business Day preceding each Cash Settlement Payment Date and (iii) each Final Valuation Date

Final Valuation Date(s):        The third Exchange Business Day preceding each Termination Date, in each case with respect to the Shares terminated on such Termination Date

Floating Amounts payable by the Floating Amount Payer:

Floating Amount Payer:          Counterparty

Notional Amount:                The Equity Notional Amount

Payment Dates:                  Each Cash Settlement Payment Date

Floating Rate Option:           USD-LIBOR-BBA

Designated Maturity:            1 month, provided that for each Transaction after the initial Transaction, the Designated Maturity for the initial Calculation Period shall be the period from the Effective Date of such Transaction to the next succeeding Cash Settlement Payment Date for the initial Transaction and linear interpolation shall apply

Spread:                         40 bps for the first three Calculation Periods and 30 bps for each subsequent Calculation Period.

Floating Rate for the           For each Transaction, the rate specified in the Supplemental Confirmation (exclusive of
initial Calculation Period:     Spread)

Floating Rate Day Count         Actual/360
Fraction:

Reset Dates:                    The first day of each Calculation Period.

Settlement Terms:

Cash Settlement:                Applicable

Settlement Currency:            USD

Cash Settlement Payment         The 2nd Business Day of each calendar month; the final Cash Settlement Payment Date
Dates:                          to be determined in accordance with Final Price.

Settlement Method Election:     Not Applicable

Dividends:

Dividend Period:                Second Period

Dividend Amount:                Ex Amount

                                "Ex Amount" means, in relation to a Dividend Amount, the Dividend Percentage of the gross cash dividend per Share declared by the Issuer to holders of record of a Share where the date that the Shares have commenced trading ex-dividend on the Exchange occurs during the relevant Dividend Period.

Page 4 of 9

exv99w1

| | |
|---|---|
| Dividend Percentage: | 85.00% |
| Dividend Payment Dates: | Each date on which the Issuer pays the relevant dividend to its shareholders of record. Provided that, if such payment date falls after the Termination Date, the Dividend Amount shall be paid on the date on which the Issuer pays the relevant dividend to its shareholder of record and such obligation to pay will constitute its legal valid and binding obligation enforceable in accordance with the terms of this Master Confirmation. |
| Extraordinary Dividend: | As determined by the Calculation Agent, (i) any cash dividend declared on the Shares at a time when the Issuer has not previously declared or paid dividends on such Shares for the four quarterly periods; (ii) any increase by more than 25% (determined on an annualised basis) in the dividends paid on the Shares; (iii) any payment by the Issuer to shareholders that the Issuer announces will be an extraordinary dividend; (iv) any payment by the Issuer to shareholders out of the Issuer's capital and surplus; or (v) any other "special" cash or non-cash dividend on, or distribution with respect to, the Shares which is, by its terms or declared intent, declared and paid outside the normal operations or normal dividend procedures of the relevant Issuer. For the avoidance of doubt, the Calculation Agent shall determine, in its sole discretion, whether such amount shall be included as part of an adjustment pursuant to Section 11.2 of the Equity Definitions. |
| Re-investment of Dividends: | Not Applicable |
| Adjustments: | |
| Method of Adjustment: | Calculation Agent Adjustment |
| Extraordinary Events: | |
| Consequences of Merger Events: | |
| Share-for-Share: | Alternative Obligation |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |
| Determining Party: | Calculation Agent |
| Tender Offer: | Applicable |
| Consequences of Tender Offers: | |
| Share-for-Share: | Modified Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |
| Determining Party: | Calculation Agent |
| Composition of Combined Consideration: | Not Applicable |

Page 5 of 9

Nationalisation, Insolvency or Delisting:     Cancellation and Payment

     Determining Party:     Calculation Agent

Additional Disruption Events:

     Change in Law:     Applicable

     Insolvency Filing:     Applicable

     Determining Party:     Calculation Agent

     Non-Reliance:     Applicable

     Agreements and Acknowledgements     Applicable
     Regarding Hedging Activities:

     Additional Acknowledgements:     Applicable

Option to Terminate:

Each party will have the right, to terminate the Transactions in whole, or in part, provided that an Event of Default or Termination Event has not occurred with respect to such party, in each case prior to the original Termination Date, by designating an Exchange Business Day as an "Optional Termination Date."

If either party wishes to exercise its right to designate an Optional Termination Date, such party shall do so by delivering an irrevocable notice, which shall be given by telephone to the other party between 9:00 a.m. and 5:00 p.m. London time, specifying the Optional Termination Date and the number(s) of Shares being terminated. If such notice is received by a party after 5:00 p.m. London time on any Exchange Business Day or on any day which is not an Exchange Business Day, then the notice will be deemed effective on the next following Exchange Business Day. The Optional Termination Date may be no earlier than the third Exchange Business Day following the Exchange Business Day on which such notice is deemed effective. The party which has exercised its right to designate an Optional Termination Date will execute and deliver a written notice confirming the substance of any telephonic notice of exercise within one Exchange Business Day of that notice. Failure to provide that written notice will not affect the validity of the telephonic notice.

In case of any partial termination of the Transactions the Transactions will be terminated in the chronological order of their Trade Dates until the Number of Shares of the terminated Transactions equals the number of Shares being terminated.

Additional Provisions:

For the purposes of these additional provisions, the following definitions will apply:

(A)   "Depository" means, in relation of the Shares, the Issuer of the Shares;

(B)   "Deposit Agreement" means, in relation to the Shares, the agreement(s) of other instrument(s) constituting the Shares, as from time to time amended or supplemented in accordance with its (their) terms; and

(C)   "Underlying Shares" means common shares of Open Joint Stock Company "Vimpel-Communications," 0.005 rubles nominal value.

1. In case any holder of the Shares or the Underlying Shares becomes entitled to subscribe for additional Shares o Underlying Shares, the Number of Shares subject to the Transactions shall be increased by the maximum number of Shares or Underlying Shares as such holder is entitled to receive and the Initial Price, or if a Valuation Date has occurred, the Final Price as of the immediately preceding Valuation Date shall be adjusted in accordance with the Method of Adjustment.

Page 6 of 9

2. The definition of Potential Adjustment Event in Section 11.2(e) of the Equity Definitions shall include, in relation t Shares:

(a)    the occurrence of any Potential Adjustment Event in relation to the Underlying Shares or any other shares or securities represented by the Shares, including any right to subscribe to such Underlying Shares; and

(b)    the making of any amendment or supplement to the terms of the Depository Agreement, that has a diluting or concentrative effect on the theoretical value of the Shares;

and, in relation to the Shares, "Calculation Agent Adjustment" shall apply following the declaration by the Depositary or the Issuer of the terms of any Potential Adjustment Event.

3. The definition of Merger Event in Section 12.1 of the Equity Definitions shall include, in relation to Shares, the occurrence of any Merger Event in relation to the Underlying Shares.

4. The definitions of "Nationalisation" and "Insolvency" in Section 12.6 of the Equity Definitions shall be construed references to the Shares include references to the Underlying Shares.

5. Section 12.7 and 12.8 of the Equity Definitions shall be construed in relation to the Shares as if references to the relevant Shares therein were references to the Underlying Shares and references therein to the Exchange and to Exchange Busin Days shall be customized as if the Exchange in respect of the Underlying Shares were the "Exchange" in respect of th Shares.

6. If the Deposit Agreement is terminated, then on or after the date of such termination, references to Shares herein shall be replaced by references to the Underlying Shares and the Calculation Agent will adjust any relevant terms and will determine the effective date of such replacement and adjustments.

7. The definition of Market Disruption Event in Section 6.3(a) of the Equity Definitions shall include, in relation to th Shares, the occurrence of a Market Disruption Event in relation to the Underlying Shares.

8. The definition of Issuer in Section 1.16 of the Equity Definitions shall include, in relation to the Shares, the Issuer i respect of the Underlying Shares.

Additional Representations:

The Counterparty represents and warrants that the Counterparty's execution and delivery of, and the performance obligations under, this Master Confirmation and each Supplemental Confirmation do not constitute a tender offer (as suc term is used in Section 14(d)(1) of the Williams Act, 15 U.S.C. § 78n(d)(1)).

ING shall not bid for, offer to acquire or acquire any Shares, whether to hedge its exposure in respect of any Transaction or otherwise, in any manner that would constitute a tender offer (as so defined).

Notices:

Contact details for ING for purpose of giving notice:

Name:       Redacted
Tel:        Redacted
Fax:       Redacted

Contact details for Counterparty for purpose of giving notice:

Name:       Redacted
Tel:        Redacted
Fax:       Redacted

Governing        English Law
Law:

Page 7 of 9

**General/Additional Provisions**

**3. Offices:**                    ING is acting through its London Office, and Counterparty is acting through its Oslo Office.

**4. Account Details:**            Payments to ING:

                                   Redacted

                                   Payments to Counterparty:

                                   Redacted

This Master Confirmation, which may be executed in several counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, supersedes and replaces any other confirmation (including a SWIFT MT300, SWIFT MT305 or telephone confirmation), if any, sent in connection with this Transaction on or prior to the date hereof.

Please confirm that the foregoing correctly sets forth the terms and conditions of our agreement by either executing this Confirmation and returning a copy to our Confirmation Department, or by sending us a letter agreement substantially similar to this Master Confirmation, which sets forth the material terms and conditions of the Transaction to which this Master Confirmation relates and indicates your agreement to those terms.

Failure to respond within seven calendar days shall not affect the validity or enforceability of this Transaction, and shall be deemed to be an affirmation of the terms and conditions herein, absent manifest error.

Yours faithfully

_____          _____
**ING Bank N.V., London branch**          **ING Bank N.V., London branch**
Name:                                     Name:
Title:                                    Title:

Accepted and Confirmed:

_____
**Telenor ASA**
Name:
Title:

                                                                    Page 8 of 9

**EXHIBIT A**

## SUPPLEMENTAL CONFIRMATION

ING Bank N.V. London branch ("ING") and Telenor ASA ("Counterparty") are party to the Master Confirmation dated 2 June, 2006 pursuant to which ING and the Counterparty have entered into the share swap Transaction described herein. The term contained herein, together with the Master Confirmation, shall constitute a Confirmation. In the event of any inconsistency between the Master Confirmation and this Supplemental Confirmation, the Master Confirmation shall govern.

| | |
|---|---|
| Trade Date: | [___], 2006 |
| Effective Date: | [___], 2006 |
| Number of Shares: | |
| Equity Notional Amount: | [___] |
| Initial Price: | [___] |
| Floating Rate for initial Calculation Period: | [___]% (exclusive of spread) |

**ING Bank N.V, London branch**

By: _____
      Name:
      Title:


By: _____
      Name:
      Title:

Page 9 of 9