UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                    :

TELENOR EAST INVEST AS,            :

                    :

           Plaintiff,      :     ECF Case

                    :

        - against -      :     07 Civ. 4829 (DC)

                    :

ALTIMO HOLDINGS & INVESTMENTS   :
LIMITED, ECO TELECOM LIMITED, CTF   :
HOLDINGS LIMITED, CROWN FINANCE   :
FOUNDATION and RIGHTMARCH LIMITED, :

                    :

         Defendants.     :

                    :
----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## OF ECO TELECOM LIMITED AND CTF HOLDINGS LIMITED
## TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION

LOVELLS LLP
590 Madison Avenue
New York, New York 10022
Tel: (212) 909-0600
Fax: (212) 909-0660
*Attorneys for Eco Telecom Limited and
CTF Holdings Limited*

August 27, 2007

## **Table of Contents**

                                                             **Page**

Preliminary Statement ........................................................................................... 1

Statement of Facts ................................................................................................ 2

Argument ............................................................................................................. 10

    I.      Telenor East's Complaint Should Be Dismissed .................................... 10

    II.     In the Alternative, the Court Should Grant Eco Telecom's Motion to Stay
           These Proceedings and Compel Arbitration............................................ 11

          A.    The Parties Have Agreed to Arbitrate Pursuant to a Valid
               Arbitration Clause ....................................................................... 11

          B.    This Dispute Falls Squarely Within the Scope of the Arbitration
               Clause ......................................................................................... 12

               1.   The Arbitration Clause Is Prototypically Broad ................................. 12

               2.   The Scope of the Arbitration Clause is Determined by Focusing
                    on Factual Allegations, Rather than Titles of Causes of Action ......... 13

               3.   Telenor East's Allegations Touch Upon the Shareholders
                    Agreement ........................................................................ 15

               4.   Telenor East's Actions Further Demonstrate a Strong
                    Connection Between the Amended Complaint and the
                    Shareholders Agreement .................................................... 16

          C.    Congress Has Not Foreclosed Arbitration of Securities Law
               Claims......................................................................................... 16

          D.    Under Both the FAA and New York Law, Arbitration of Any
               Surviving Claims Should be Compelled ...................................... 17

Conclusion........................................................................................................... 20

**Table of Authorities**

**Page**

**Cases**

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ................................................................................ 14

*Dazco Heating and Air Conditioning Corp. v. C.B.C. Industries, Inc.*,
    225 A.D.2d 578 (N.Y. App. Div. 1996) ........................................................... 13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ......................................................................................... 19

*Deer Stags, Inc. v. Garrison Ind. Inc.*,
    No. 00 Civ. 0267 (DC), 2000 WL 1800491 (S.D.N.Y. Dec. 7, 2000) ............ 11

*Energy Factors Inc. v. Nuevo Energy Co.*,
    No. 91 Civ. 4273 (RLC), 1992 WL 110541 (S.D.N.Y. Apr. 29, 1992) ...... 13, 16

*Fluor Daniel Intercontinental, Inc. v. General Elec. Co.*,
    No. 98 Civ. 7181 (WHP), 1999 WL 637236 (S.D.N.Y. Aug. 20, 1999) ........ 13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) ....................................................................... 14, 15

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004); *cert denied*, 543 U.S. 874 (2004) .................... 17

*In re County of Rockland*,
    51 N.Y.2d 1, 409 N.E.2d 951, 431 N.Y.S.2d 478 (N.Y. 1980) ...................... 19

*Jung v. Skadden, Arps, Slate, Meagher, & Flom*,
    434 F. Supp. 2d 211 (S.D.N.Y. 2006) ............................................................ 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................. 13, 17, 18

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998) .............................................................................. 11

*Paramedics Electromedicina Comerical, Ltda. v. GE Medical Sys. Information Technologies,
    Inc.*, 369 F.3d 645 (2d Cir. 2004) ................................................................... 12

*Rodriguez de Quijas v. Shearson American Express, Inc.*,
    490 U.S. 477 (1989) ......................................................................................... 17

*Sammarco v. Pepsi-Cola Bottling Co.*,
    1 A.D.3d 341, 767 N.Y.S.2d 59 (N.Y. App. Div. 2003) ................................. 15

*Shearson/American Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) ......................................................................................... 17

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) .............................................................................. 13

*Sprecht v. Netscape Communications Corp.*,
   306 F.3d 17 (2d Cir. 2002) .......................................................................... 15

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
   754 F.2d 457 (2d Cir. 1985) .......................................................................... 10

*World Crisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997) ............................................................................ 18

**Statutes**

15 U.S.C. § 78u-4(b)(1)........................................................................................ 1, 10

9 U.S.C. § 3 ......................................................................................................... 18

9 U.S.C. § 4 ......................................................................................................... 18

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ............................................................ 1, 10

Federal Rules of Civil Procedure 9(b)................................................................... 1, 10

Defendants Eco Telecom Limited ("Eco Telecom") and CTF Holdings Limited ("CTF") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(1), or in the alternative, to compel arbitration of the claims brought against them by Plaintiff Telenor East Invest AS ("Telenor East").

## **Preliminary Statement**

Eco Telecom and Telenor East are the two largest shareholders of Open Joint Stock Company Vimpel-Communications ("VimpelCom"), a Russian telecommunications company whose shares are publicly traded on the New York Stock Exchange. Their relationship is governed by a shareholders agreement (the "Shareholders Agreement") that gives each of them the right to nominate people to the VimpelCom board, depending on how many VimpelCom shares they own. The Shareholders Agreement includes a broad arbitration clause (the "Arbitration Clause"). Because Eco Telecom currently owns in excess of 44% of the voting stock of VimpelCom, as opposed to Telenor East's 29.9%, the Shareholders Agreement grants Eco Telecom greater rights than Telenor East concerning the nomination of non-independent directors to the VimpelCom board.

Though styled as a securities law complaint, Telenor East brought this litigation for the express purpose of stopping Eco Telecom from exercising the rights granted to it under the Shareholders Agreement commensurate with its share ownership, and it seeks various forms of relief designed to deprive Eco Telecom of those rights. This suit is thus similar in purpose to Telenor East's claims in its recently-concluded arbitration against Eco Telecom (the "Arbitration"), in which the arbitral tribunal (the "Tribunal") declined to grant Telenor East the relief it sought vis-à-vis board nomination rights as a function of share ownership. Because Telenor East's claims are facially deficient, they should be dismissed in their entirety. In the

alternative, because Telenor East agreed to arbitrate all disputes touching upon the Shareholders Agreement, and because its allegations in this litigation unambiguously do just that, Telenor East should be compelled to arbitrate its claims against Eco Telecom.

## Statement of Facts

Eco Telecom and CTF join in and incorporate by reference as though fully set forth herein the arguments set forth in Defendants Altimo Holdings & Investments Limited's ("Altimo"), Crown Finance Foundation's ("Crown"), and Rightmarch Limited's ("Rightmarch") Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint. Accordingly, the recitation of facts herein is largely focused on the second, alternate prong of Eco Telecom's and CTF's motion, which seeks to compel arbitration of any of Telenor East's claims that might survive Eco Telecom's and CTF's motion to dismiss.

On or about May 30, 2001, in connection with Eco Telecom's purchase of its initial interest in VimpelCom, Eco Telecom and Telenor East entered into the Shareholders Agreement. (Declaration of Gonzalo S. Zeballos (hereinafter, the "Zeballos Decl."), Ex. A.)    The Shareholders Agreement defines Eco Telecom's and Telenor East's right to nominate candidates for election to the nine-member VimpelCom Board as follows:

- If the shareholder owns 25% or less of the outstanding shares of VimpelCom, the Shareholders Agreement automatically terminates and the nomination procedures contained therein no longer apply;

- If the shareholder owns greater than 25% but not more than 44% of the outstanding shares, it may nominate four candidates, one of which must be independent, and in the case of Telenor East, it may nominate a fifth candidate, subject to approval by Eco Telecom;

- If the shareholder owns greater than 44% but not more than 50% of the outstanding shares, it (as a "Plurality Shareholder") may nominate four candidates, none of whom need be independent, and in the case of Telenor East, it may nominate a fifth candidate, subject to approval by Eco Telecom; and

- If the shareholder owns more than 50% of the outstanding shares, the Shareholders Agreement automatically terminates and the nomination procedures contained therein no longer apply.

(*Id.* at 9, § 4.01 and Article V, § (b).)  The Shareholders Agreement therefore anticipates, and provides incentives for, shareholders purchasing VimpelCom shares. (*Id.*)

During most of the Arbitration, and when Telenor East filed its Complaint here, Telenor East and Eco Telecom each owned less than 44% of the shares.  By the time Telenor East filed its Amended Complaint on July 11, 2007, Eco Telecom had become a Plurality Shareholder, with just above 44% of VimpelCom's shares.

**The Arbitration Clause**

Section 6.13 of the Shareholders Agreement contains a broad arbitration clause, which states, in relevant part, as follows:

> Any and all disputes and controversies arising under, relating to or in connection with this Agreement shall be settled by arbitration by a panel of three (3) arbitrators under the United Nations Commission on International Trade law (UNCITRAL) Arbitration Rules then in force . . . .

(*Id.* at § 6.13.)  The Shareholders Agreement is in full force and effect and has never been amended or modified.

**The Guarantee Agreement Compels Arbitration
of Telenor East's Claims Against CTF**

Another agreement entered into in connection with Eco Telecom's initial purchase of VimpelCom shares is a Guarantee Agreement dated as of May 30, 2001, between and among CTF, Eco Holdings Limited, VimpelCom, and Telenor East (the "Guarantee Agreement"). (Zeballos Decl., Ex. B.)  Under the terms of the Guarantee Agreement, CTF undertakes, in relevant part, to guarantee certain of Eco Telecom's obligations under the Shareholders Agreement. (*Id.*, Ex. B at Article II.)  The Guarantee Agreement also contains a broad arbitration

clause that is triggered by claims relating to or concerning Eco Telecom's obligations under the Shareholders Agreement. (*Id.*, Ex. B at § 7.9.) CTF was also a respondent in the Arbitration.

**Telenor East Initiated the Arbitration Over the Parties' Respective Rights to Nominate Directors**

On or about November 14, 2005 Telenor East initiated the Arbitration by filing a Notice and Statement of Claim against Eco Telecom and CTF under the Arbitration Clause of the Shareholders Agreement. (*See* Zeballos Decl. ¶ 5.) Telenor East filed an amended statement of claim on or about March 31, 2006 (the "Amended Statement of Claim") (*Id.* ¶ 6), in which it specifically requested, *inter alia*, an award "compelling Eco Telecom to . . . allocate its votes to ensure the election of candidates to the Board in a manner consistent with the terms of the Shareholders Agreement." (*Id.*, Ex. C at 21.)

**The November 2006 Arbitral Hearing**

The Arbitration's first evidentiary hearing was held in London, England on November 20, 2006 (the "November Hearing"). (Zeballos Decl. ¶ 7.) Following the November Hearing, the Tribunal issued an interim award on January 25, 2007 (the "Interim Award"), which did not find either party to be in breach of any provisions of the Shareholders Agreement. (*Id.* ¶ 8.) The Tribunal did not grant Telenor East's request for an award directing Eco Telecom to allocate its votes—a request made in an attempt to ensure the election of Telenor East's nominees. (*Id.*)

**The April 2007 Arbitral Hearing**

At a subsequent hearing, held on April 14, 2007, the Tribunal confirmed that Eco Telecom could not nominate a fourth non-Independent candidate for election to the VimpelCom board unless and until it owned more than 44% of the outstanding shares. (*Id.*, Ex. D at 65:20-66:8.)   Although Eco Telecom had named one too many non-Independent candidates, the

Tribunal allowed Eco Telecom time to cure this problem.  *Id.*  Eco Telecom subsequently cured.

(Zeballos Decl. ¶ 9.)

At that same hearing, at Eco Telecom's request, the Tribunal confirmed that the parties

were required to maintain the confidentiality of the arbitral proceedings.  (*See* Zeballos Decl., Ex.

D at 69:3-16.)  In response, counsel for Telenor East stated that Telenor East both "underst[ood]

and embrace[d] the need for confidentiality."  (*Id.* at 70:4-5.)

It was also at the April hearing that counsel for Telenor East first raised several of the

securities law issues now embodied in the Amended Complaint.  When asked to explain how it

was being harmed, Telenor East explicitly challenged the propriety of Eco Telecom's 13D

disclosures as follows:

> MR. SILLS: Mr. Chairman, I'll take up the time of the parties and
> the Tribunal if you want.  We have a bargained-for right under the
> [Shareholders Agreement].  These boards are set year by year under
> the [Shareholders Agreement] so long as neither party has achieved
> the 44 percent shareholding level and has at least 25 percent plus
> one.  The bargained-for right is that there will be no more than
> three Eco nominated candidates who are not independent and one
> independent.  That's a valuable right.  That is what  brings us here
> today. . . . *I will note that the 13-D that was filed regarding the $1.5
> billion that was just described on the record does not state that it
> was intended for the purchase of these shares, and if it was
> intended for the purchase of these shares, that raises extremely
> serious securities law issues.*  The statements that have been made
> in the press about achieving and about being content with the
> current shareholder level speak for themselves.  *There is no 13-D
> on file that talks about achieving a 44 per cent shareholding level,
> and it's clear that as a matter of US securities law that if there was
> such an intent given, the change in corporate governance that
> would occur at that point, that there must be a filing to that effect.
> The requirement under Section 13 of the Act is that such filings be
> made promptly.* . . .

(*Id.* at 61:2-62:4 (emphasis added)).  Thereafter, the Tribunal endorsed a request by Eco Telecom

that the parties refrain from using the U.S. securities laws to frustrate the legitimate business

interests of the parties.  (*Id.* at 70:14-19.)

5

**Telenor East Filed Its Complaint and Amended Complaint to Stop Eco Telecom**
**From Exercising Its Nomination Rights Under the Shareholders Agreement**

On June 6, 2007, Telenor East filed its original complaint (the "Complaint"), alleging violations of the U.S. securities laws against, *inter alia*, Eco Telecom and CTF. The Complaint was amended and refiled on July 11, 2007 (the "Amended Complaint"). The crux of Telenor East's allegations is that Eco Telecom has been amassing VimpelCom shares improperly, as part of an "undisclosed scheme to acquire control of VimpelCom." (Am. Complaint ¶ 44). Specifically, Telenor East alleges a failure to disclose Eco Telecom's intent to acquire more than 44% of VimpelCom's voting stock, an interest that "alter[s] the governance structure of VimpelCom" under the Shareholders Agreement, and according to Telenor East gives Eco Telecom "operational control" of VimpelCom. (*Id.* ¶ 81).

Telenor East seeks various forms of relief that would strip Eco Telecom of its rights under the Shareholders Agreement, including:

- an order directing the defendants to "rescind the purchase (or arrangement to purchase) of, or sell any VimpelCom securities they acquired" (*id.* at 36 ¶ (d)(iii));

- an injunction against "voting any VimpelCom securities they acquired" (*id.* ¶ (d)(iv); and

- an injunction against "purchasing or making any arrangement to purchase … any VimpelCom securities" (*id.* ¶ (d)(ii)).

The first two forms of relief would deprive Eco Telecom of rights granted under the Shareholders Agreement, while the third would prevent Eco Telecom from further increasing the level of its ownership.

Although Telenor East makes no secret of the fact that it brought this litigation in order to stop Eco Telecom from exercising its rights under the Shareholders Agreement, its actions in the days and weeks after it filed the Complaint reinforce this obvious reality. Indeed, Telenor East used the Complaint to disrupt Eco Telecom's efforts to raise funds (which Telenor East presumed

were to be used to acquire more VimpelCom shares). On or about June 7, 2007, Telenor East

sent a copy of the Complaint to Deutsche Bank AG ("Deutsche Bank"). (Zeballos Decl. ¶ 10)

Shortly thereafter, Telenor East used the Complaint – in a misleading and improper fashion – to

try to influence other shareholders to vote against Eco Telecom's nominees to the VimpelCom

Board.

**Telenor East Sent the Complaint to Deutsche Bank to**
**Interfere With Eco Telecom's Share Acquisition Efforts**

On March 9, 2007, Eco Telecom, Altimo Holdings and Investment Limited ("Altimo")

and Deutsche Bank executed documents for a floating rate bond issuance, whereby Deutsche

Bank arranged for the sale of up to $1.5 billion in Eco Telecom bonds ("Series A"). The

operative documents also contemplated that the parties might engage in a subsequent bond

issuance ("Series B"). All of the foregoing was disclosed by the Defendants to the public,

through the Securities and Exchange Commission's EDGAR system, on March 13, 2007. The

Series A documents included a representation by Eco Telecom and Altimo that there was nothing

that affected their ability to perform their obligations under the operative agreement (the "Series

A Representation"), including pledging all of Eco Telecom's VimpelCom shares as collateral for

the bond issuance.

Telenor East was aware of the foregoing bond issuance and the operative documents, and

expected Eco Telecom and Altimo to approach Deutsche Bank to move forward with the Series B

bond issuance for the purpose of raising funds to acquire additional VimpelCom shares. To

prevent that from happening, on or about June 7, 2007, Telenor East delivered a copy of the

Complaint to Deutsche Bank. (Zeballos Decl. ¶ 10) It did so, it seems clear, to complicate or

impede Eco Telecom's efforts to raise capital, and thus complicate or impede Eco Telecom's

ability to acquire more VimpelCom shares.

**Telenor East Used the Complaint
to Alarm Other Shareholders**

On or about June 18, 2007 – 12 days after filing the Complaint – Telenor East affiliate

Telenor ASA made a presentation (the "ISS Presentation") to Institutional Shareholder Services

("ISS"), and then publicly disclosed that presentation by filing it through the SEC's EDGAR

system. (*Id.*, Ex. E.) One of ISS's primary businesses is to advise shareholders on how to vote

their shares. (*Id.*, Ex. F.)

On a page bearing the heading "Alfa's control of [VimpelCom] is not in the best interests

of *any* minority shareholder," Telenor ASA made negative statements about the Defendants and

others, including:

- Alfa has increased its stake to at least 43.8% over the past year, up from 32.9% in June 2006, through illegal street sweeps, swap transactions designed to circumvent Russian law and without making the disclosures required under US securities laws. Telenor East Invest AS v. Altimo Holdings & Investments Limited, et al.

  ....

- Alfa has repeatedly made inconsistent and contradictory statements concerning its intentions with respect to VimpelCom, including that it intends to increase its ownership stake above 44%, which would give it the right under the VimpelCom Shareholders Agreement to nominate 4 non-independent directors.

(Zeballos Decl, Ex. E at 12.) The citation in the first bulleted statement is to the caption of this

litigation, but done in such a way that suggests a citation to a legal opinion, rather than to Telenor

East's own just-filed Complaint. The second bulleted statement reiterates Telenor East's

motivation for filing this litigation – to stop Eco Telecom from being able to acquire more than

44% of the VimpelCom shares, and to exercise the rights that go along with that.

At a conference call with the arbitral Tribunal on July 25, 2007, the Tribunal expressed its

intention to render a final award, and not to take up additional claims by the parties. The

Tribunal declined to address the question of whether the claims in this litigation are arbitrable.

The Tribunal noted, however, that if the Court were to compel arbitration of this dispute, its members would be willing to serve on a new tribunal if the parties opt to commence an arbitration. The Tribunal further noted that, even if its members were not asked by the parties to so serve, the parties' claims could of course be presented to a different panel. (Zeballos Decl. ¶ 14.)

### Argument

## I.    TELENOR EAST'S COMPLAINT SHOULD BE DISMISSED

The Amended Complaint contains five counts premised on the Securities Exchange Act of 1934. Telenor alleges that Defendants: (1) violated Section 13(d) by filing incomplete or false and misleading 13Ds; (2) violated Section 10(b) and Rule 10b-5 by purchasing VimpelCom shares while in possession of material non-public information; (3) violated Section 14(d) by conducting an illegal tender offer; (4) violated Section 14(e) and Rule 14e-3 by purchasing VimpelCom shares during a tender offer while in possession of material non-public information; and (5) violated Section 13(e) by conducting an illegal "going private" transaction.

Eco Telecom and CTF respectfully submit that the claims set forth in Telenor East's Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the PLSRA, 15 U.S.C. § 78u-4(b)(1)-(2). As set forth in Defendants Altimo's, Crown's, and Rightmarch's Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint, Telenor East's Amended Complaint is meritless, fails to state a claim upon which relief may be granted and is improperly pled. Eco Telecom and CTF hereby join and incorporate by reference Altimo's, Crown's, and Rightmarch's motion to dismiss and the supporting documents thereto as though fully set forth herein.[1]

---

[1]    Eco Telecom's and CTF's motion to dismiss is made without prejudice to their right to move in the alternative to compel arbitration of Telenor East's claims against them. It is well settled in this circuit that a party that seeks to compel arbitration may first seek dismissal of the claims against it without waiver of the right to arbitrate. *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 465 (2d Cir. 1985) (holding that the filing of a Rule 12(b)(6) motion to compel does not, standing alone, constitute waiver of the right to compel arbitration). *See also Jung v. Skadden, Arps, Slate, Meagher, & Flom*, 434 F. Supp. 2d 211, 218 (S.D.N.Y. 2006) ("a defendant does not waive arbitration merely by litigating a Rule 12(b)(6) motion") (citing *Sweater Bee*). A motion to dismiss in this context is in the interests of both the courts and the arbitrators because "by eliminating some of the claims as a matter of law the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate on the claims that have facial merit." *Sweater Bee*, 754 F.2d at 465.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT ECO TELECOM'S MOTION TO STAY THESE PROCEEDINGS AND COMPEL ARBITRATION

In the event that any of Telenor East's claims against Eco Telecom and CTF survives the motion to dismiss, this Court should stay these proceedings to allow such claims to be arbitrated. Under well-established principles of federal law, this Court, in determining whether to compel arbitration, is directed to look at three principal factors: (A) whether the Arbitration Clause constitutes an agreement by Eco Telecom and Telenor East to arbitrate their disputes; (B) whether the allegations in Telenor East's lawsuit fall within scope of the Arbitration Clause; and (C) to the extent Telenor East asserts federal statutory claims, whether Congress has affirmatively deemed those claims to be non-arbitrable.[2] *See, e.g., Deer Stags, Inc. v. Garrison Ind. Inc.*, No. 00 Civ. 0267 (DC), 2000 WL 1800491 at *3 (S.D.N.Y. Dec. 7, 2000) (Chin, J.) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).    These factors mandate the arbitration of Telenor East's surviving claims, if any.

### A.    The Parties Have Agreed to Arbitrate Pursuant to a Valid Arbitration Clause

It is undisputed that Eco Telecom and Telenor East have agreed to arbitrate disputes arising under, relating to, or connected to, the Shareholders Agreement.  The Arbitration Clause (section 6.13) of the Shareholders Agreement states:

> (a) Any and all disputes and controversies *arising under, relating to or in connection with* this Agreement shall be settled by arbitration by a panel of three (3) arbitrators under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules then in force . . . . (v) The arbitrators shall have the power to grant any remedy or relief that they deem just and equitable and that is in accordance with the terms of this Agreement, including specific performance, and including, but not limited to, injunctive relief, . . . and any such relief and any interim, provisional or

---

[2]    A fourth factor also contemplated by federal courts is whether to stay the balance of the proceedings pending arbitration if some but not all claims are to be arbitrated.  This factor is not at issue here because all of Telenor East's claims against Eco Telecom and CTF are subject to arbitration. *See id.*

> conservatory measure ordered by the arbitrators may be specifically
> enforced by any court of competent jurisdiction. . . .
>
> (b) Except for arbitration proceedings pursuant to Section 6.13(a),
> no action, lawsuit or other proceeding (other than the enforcement
> of an arbitration decision, an action to compel arbitration or an
> application for interim, provisional or conservatory measures in
> connection with the arbitration) shall be brought by or between the
> parties to this Agreement in connection with any matter arising out
> of or in connection with this Agreement.

(Zeballos Decl., Ex. A at §§ 6.13(a)-(b) (emphasis added).)  The now-concluded Arbitration was

initiated by Telenor East on the basis of this very Arbitration Clause.[3]

**B.**    **This Dispute Falls Squarely Within the Scope of the Arbitration Clause**

**1.**    **The Arbitration Clause Is Prototypically Broad**

Section 6.13(a) of the Shareholders Agreement provides that "[a]ny and all disputes and

controversies *arising under, relating to or in connection with* this Agreement shall be settled by

arbitration." (Zeballos Decl., Ex. A at Sec. 6.13(a) (emphasis added).)  This type of language in

an arbitration clause is broadly construed by the courts in this Circuit to encompass any dispute

that touches upon the subject matter of the underlying contract.[4]   *See, e.g., Paramedics*

*Electromedicina Comerical, Ltda. v. GE Medical Sys. Information Technologies, Inc.*, 369 F.3d

645, 654 (2d Cir. 2004) (affirming, *inter alia*, the district court's decision to compel arbitration

and interpreting language "any controversy, claim or dispute" in arbitration agreement as of the

---

[3]   Defendant CTF is a party to the Arbitration by virtue of a broad arbitration clause contained in a related agreement, the Guarantee Agreement.  Under the terms of the Guarantee Agreement's arbitration clause, virtually any dispute that would trigger the Shareholders Agreement's arbitration clause, would also trigger the Guarantee Agreement's arbitration clause. *See supra* at 3-4.

[4]   Telenor East's suggestion in its letter to the Court dated June 20, 2007 that Eco Telecom had previously tried, and failed, to expand the scope of the Arbitration is misleading and erroneous, because in fact it was Telenor East that tried and failed to expand the Arbitration.  What actually happened was: (a) Telenor East included in its Statement of Claim allegations concerning Eco Telecom's acquisition of another company; (b) Eco Telecom asserted a counterclaim and sought documents concerning that issue; (c) Telenor East moved to quash Eco Telecom's document request on the basis of relevance; and (d) the Tribunal ordered Telenor East to consider withdrawing its allegations, and Eco Telecom to consider withdrawing its counterclaim, and both parties complied.

"broad type"). Indeed, the use of broad arbitration clauses such as this one has been held to give rise to a strong presumption of arbitrability. *See Fluor Daniel Intercontinental, Inc. v. General Elec. Co.*, No. 98 Civ. 7181 (WHP)*, 1999 WL 637236 (S.D.N.Y. Aug. 20, 1999), at *7 (granting motion to compel arbitration and noting that "arising out of, under or in connection with" is "prototypical of a broad arbitration clause" and applying a strong presumption of arbitrability to the clause, "all disputes arising in connection with this Agreement").

If the Shareholders Agreement is capable of *any* interpretation that would touch upon any of Telenor East's surviving allegations, this Court is required to compel arbitration of those claims. *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2d Cir. 1999) (affirming district court's decision to compel arbitration and noting that, if the allegations underlying the claims "touch matters" covered by the parties' arbitration agreement, then those claims "must be arbitrated"); *Energy Factors Inc. v. Nuevo Energy Co.,* No. 91 Civ. 4273 (RLC), 1992 WL 110541, at *1 (S.D.N.Y. Apr. 29, 1992) (granting motion to compel arbitration of insider trading claims). *See also Dazco Heating and Air Conditioning Corp. v. C.B.C. Industries, Inc.,* 225 A.D.2d 578 (N.Y. App. Div. 1996) (under New York law there need only be a "reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract"). And even if the question of arbitrability were a close call (which it is not), the Supreme Court has long made clear that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

### 2.   The Scope of the Arbitration Clause is Determined by Focusing on Factual Allegations, Rather than Titles of Causes of Action

In a June 20, 2007 letter to the Court, counsel for Telenor East argued that the Arbitration Clause should be read narrowly, to the exclusion of Telenor East's claims, because "there is

nothing in the arbitration or in the arbitration clause concerning the securities law violations set out in the complaint in this action." (Zeballos Decl., Ex. G at 2.)  Telenor East appears to suggest that because it styled its causes of action as claims arising under the United States securities laws, its claims are beyond the scope of the Arbitration Clause.  But under the law in this Circuit, this Court is directed not to the specific causes of action, but to the substance of the dispute, in order to determine whether that dispute falls within the scope of the Arbitration Clause.  Here, the substance of the dispute relates to the Shareholders Agreement, and therefore falls clearly within the scope of the Arbitration Clause.

As the Second Circuit explained in *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987):

> In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims "touch matters" covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them.

*Id.* at 846 (citations omitted).

In that case, notwithstanding how plaintiff had chosen to style its causes of action (including violations of RICO and the Robinson-Patman Act), the court found that the claims were "based on the same central factual allegations .... that the defendants overcharged Genesco over an extended period of time," factual allegations that touched upon the parties' sales agreements, and ordered arbitration of the claims.  *Id.* at 846-47.  Similarly, in *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995), the Second Circuit reiterated the *Genesco* standard and observed that "both parties have been drawn into a debate over labels,"

rather than focusing on whether the "claims plead conduct that 'aris[es] out of or [is] related to' the contracts containing the arbitration clause." *Id.* at 21 (quoting arbitration clause)).[5]

### 3.    Telenor East's Allegations Touch Upon the Shareholders Agreement

Moving past the labels Telenor East chose to assign its various causes of action, the allegations in the Amended Complaint devolve to a very simple set of purported facts: Eco Telecom had an intention to acquire more than 44% of VimpelCom's voting stock as well as the accompanying shareholders' rights, and did not disclose that intention. As Telenor East put it, "[t]he Defendants' concealment of their true intent to acquire control of VimpelCom and their insider trading scheme described in this first amended complaint were inextricably linked." Am. Complaint ¶ 65. Because the rights attendant to share ownership are very much a part of the Shareholders Agreement (and certainly can be reasonably construed to "touch upon" the Shareholders Agreement), Telenor East's claims that Eco Telecom acted improperly in the course of amassing 44% of the shares – to the extent the court does not dismiss them – must be arbitrated. This conclusion is reinforced by the fact that the non-declaratory relief sought by Telenor East would have the effect of depriving Eco Telecom of the rights it enjoys as a Plurality Shareholder (and effectively augmenting the rights Telenor East has by virtue of its own share ownership), and in that way touches upon the Shareholders Agreement as well.

---

[5]   The cases cited by Telenor East in its June 20 letter do not provide support for its position. *Sprecht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) adopts and reiterates the *Genesco* standard, and the court declined to order arbitration when (1) plaintiffs had not manifested the requisite intent to arbitrate and (2) the applicable contract did not contain an arbitration clause, and (3) there was no basis for requiring non-signatory to arbitrate, *Sammarco v. Pepsi-Cola Bottling Co.*, 1 A.D.3d 341, 342, 767 N.Y.S.2d 59 (N.Y. App. Div. 2003) is likewise inapposite, as that case involved a narrow arbitration clause that was limited to disputes "concerning the interpretation of application of the provisions of this Agreement," and thus would not extend to a personal injury claim that did not implicate contract interpretation issues.

### 4.    Telenor East's Actions Further Demonstrate a Strong Connection Between the Amended Complaint and the Shareholders Agreement

As explained above, the broad Arbitration Clause is properly read to encompass all disputes that "touch upon" the Shareholders Agreement by focusing on the underlying factual allegations of the disputes, rather than on how they might be styled in a lawsuit.  Under that approach, Telenor East's allegations unquestionably fall within the scope of the Arbitration Clause.  This is entirely consistent with Telenor East's actions in the days and weeks surrounding its filing of the Complaint and Amended Complaint, when it tried to use the Complaint to interfere with Eco Telecom's attempts to raise additional funds (which Telenor East presumed were to be used to purchase VimpelCom shares), and also deceptively used the allegations made in the Complaint as part of a presentation to ISS on why "Alfa's control of [VimpelCom] is not in the best interests of *any* minority shareholder." (Zeballos Decl., Ex. E at 13.)  In this additional way, Telenor East's own positions and actions lead to the conclusion that its allegations regarding Eco Telecom's attempts to amass shares to "control" VimpelCom touch upon the Shareholders Agreement and must be arbitrated.

### C.    Congress Has Not Foreclosed Arbitration of Securities Law Claims

Finally, the test for a motion to compel requires the Court to consider whether Congress, by instituting a statutory regime, has deemed a particular class of claims to be non-arbitrable. There is no question that violations of the U.S. securities laws as alleged by Telenor East are arbitrable.  In *Energy Factors,* the party opposing a motion to compel arbitration asserted that it was contrary to public policy to order an insider trading case to arbitration.  *See Energy Factors*, 1992 WL 110541 at \*3, No. 91 CIV 4273 (S.D.N.Y. April 29, 1992).  The *Energy Factors* court, in granting the motion to compel arbitration, noted that the Supreme Court and the Second Circuit had recently sent similarly complex claims (such as age discrimination, securities fraud, antitrust,

and ERISA claims) to arbitration, and stated, "[c]ourts have upheld agreements to arbitrate these claims despite the difficulty of proof, and plaintiff has made no showing that proving an insider trading claim is sufficiently more elusive to warrant departure from the strong federal preference for arbitration . . . ." *Id.* (internal citations omitted).

The United States Supreme Court has stated on several occasions that securities law claims are arbitrable.  In so doing, the Supreme Court has further held that a court's duty to enforce an arbitration agreement "is not diminished when a party bound by an agreement raises a claim founded on statutory rights" such as those found under the U.S. securities laws. *Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 226 (1987) (holding that fraud claims brought under the Securities Exchange Act of 1934 (the "Exchange Act") are arbitrable). *See also Rodriguez de Quijas v. Shearson American Express, Inc.,* 490 U.S. 477, 483-85 (1989) (enforcing the *McMahon* decision as to the Exchange Act and harmonizing inconsistencies in prior case law by holding that claims brought under the Securities Act are arbitrable).

Thus, all three relevant factors identified by the federal courts dictate that the claims asserted in Telenor East's Amended Complaint – to the extent they are not dismissed as facially defective – should be arbitrated, not litigated.

### D.    Under Both the FAA and New York Law, Arbitration of Any Surviving Claims Should be Compelled

Should any of Telenor East's claims survive Eco Telecom's and CTF's motion to dismiss, both New York and Federal law mandate arbitration of those claims.  This conclusion is bolstered by the Federal Arbitration Act ("FAA"), which evinces a strong federal public policy favoring arbitration. *See Moses H. Cone,* 460 U.S. at 25. *See also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 147 (2d Cir. 2004) (the FAA creates a "strong presumption in favor of arbitration"), *cert denied,* 543 U.S. 874 (2004).  This policy was endorsed explicitly by the

Supreme Court, which has held that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

The FAA provides two procedural mechanisms to effectuate the "clear" congressional intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22. FAA Sections 3[6] and 4[7] respectively, direct that where a showing is made that an enforceable arbitration provision exists, a court *shall* issue an order staying litigation and an order compelling the parties to arbitrate in accordance with the terms of the their agreement. *See* 9 U.S.C. §§ 3, 4. *See also, Moses H. Cone*, 460 U.S. at 22; *World Crisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("The [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

---

[6]   Section 3 of the FAA provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

[7]   Section 4 of the FAA provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.

signed.'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis added).

Similarly, if a New York court, in deciding whether to compel arbitration of a dispute, concludes "that the parties made a valid agreement to arbitrate, that the dispute sought to be arbitrated falls within its scope, and that there has been compliance with any agreed on conditions precedent to arbitration, judicial inquiry is at an end . . . and the parties should be directed to proceed to arbitration." *In re County of Rockland*, 51 N.Y.2d 1, 8, 409 N.E.2d 951, 431 N.Y.S.2d 478 (N.Y. 1980).

As set forth *supra*, there is no question that the parties have agreed to a binding, written Arbitration Clause and that the dispute falls within its scope.  Accordingly, should any of Telenor East's claims survive Eco Telecom's and CTF's motion to dismiss, Eco Telecom and CTF respectfully request that this Court compel arbitration of those claims.

*          *          *

**Conclusion**

For the reasons set forth above, Eco Telecom and CTF respectfully request that Telenor East's Amended Complaint be dismissed in its entirety, or in the alternative, that Telenor East be compelled to arbitrate the claims set forth in its Amended Complaint.

Respectfully submitted,

LOVELLS LLP

By: _/s/ Edward T. Schorr____

Edward T. Schorr (ES-0290)
Hillel I. Parness (HP-1638)
Gonzalo S. Zeballos (GZ-5994)
590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660
*Attorneys for Eco Telecom Limited and
CTF Holdings Limited*

20