Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue, New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

       - and -

Peter O'Driscoll
Orrick, Herrington & Sutcliffe LLP
25 Old Broad Street
London EC2N 1HQ
DX: 557 London/City
United Kingdom
Telephone: 011 44 20 7562 5000

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
               :

**TELENOR EAST INVEST AS,**      :    07 CV 4829 (DC)(DCF)
               :

          Plaintiff,     :    ECF Case
               :

     -against-       :
               :

               :

**ALTIMO HOLDINGS & INVESTMENTS**  :    <u>**Oral Argument Requested**</u>
**LIMITED, ECO TELECOM LIMITED, CTF**  :
**HOLDINGS LIMITED, CROWN FINANCE**  :
**FOUNDATION** and **RIGHTMARCH**     :
**LIMITED,**                   :

          Defendants.    :
               :

------------------------------------------------------------ x

## PLAINTIFF ' MEMORANDUM
### IN OPPOSITION TO DEFENDANTS' MOTION TO
### STAY THIS ACTION AND COMPEL ARBITRATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

    The Parties ............................................................................................................... 1

    The Shareholders Agreement................................................................................... 2

    The Nomination of Directors Under the Shareholders Agreement ......................... 4

    The Relationship between Eco Telecom and Telenor East Deteriorates.................. 5

    The Arbitration......................................................................................................... 6

ARGUMENT......................................................................................................................... 9

CONCLUSION...................................................................................................................... 16

Plaintiff Telenor East Invest AS ("Telenor East") respectfully submits this memorandum in opposition to the motion of Defendants Altimo Holdings & Investments Limited ("Altimo"), Eco Telecom Limited ("Eco Telecom") and CTF Holdings Limited ("CTF"), to compel arbitration, and the motion of Defendants Altimo, Eco Holdings Limited ("Eco Holdings"), Crown Finance Foundation ("Crown Finance") and Rightmarch Limited ("Rightmarch") to stay this action pending arbitration.

## PRELIMINARY STATEMENT

The Shareholders Agreement between the parties invoked by Defendants in support of their motions for a stay pending arbitration or to compel arbitration is remarkably narrow, and does not in any way address the securities law violations at issue in this action. Unlike the typical shareholders agreement, the one at issue covers only the number of candidates that the parties may nominate for election to the board of directors and restrictions on the sale of their shares to unaffiliated third parties, neither of which is involved here. Accordingly, the arbitration clause in the Shareholders Agreement, however broad, does not encompass those claims. These motions should be denied, and this action should proceed on the merits in this Court.

## STATEMENT OF FACTS

### The Parties

Telenor East is a company organized and existing under the laws of Norway, with its principal place of business in Fornebu, Norway. Telenor East's First Amended Complaint (the "Complaint" or "Cmplt.") ¶8. Telenor East is a wholly-owned subsidiary of Telenor ASA ("Telenor"), a Norwegian company with over 46,000 shareholders. *Id.* Telenor is the largest provider of telecommunications services in Norway, and, through its subsidiary Telenor Mobile

Communications AS ("Telenor Mobile"), is a leading international mobile operator.  Cmplt. ¶¶ 8-9; *Telenor East Invest AS v. Eco Telecom Limited, et al.*, Interim Award (the "Award"), dated January 25, 2007, p. 8, ¶1.[1]  Telenor's shares are publicly traded on the Oslo Stock Exchange.  Cmplt. ¶8.

For many years, Telenor Mobile has invested in, and developed strategic partnerships with, mobile communications companies located outside of Norway.  Cmplt. ¶9.  In December 1998, Telenor East agreed to purchase 25.7% of the voting capital stock of Open Joint Stock Company "Vimpel-Communications" ("VimpelCom"), now the second largest mobile telephone operator in Russia.[2]  Cmplt. ¶16, 20.  Telenor East currently owns 33.6% of the common stock and 29.9% of the voting stock of VimpelCom.  *Id.*; Sills Declaration, Exh. B.

Defendant Eco Telecom is a company organized under the laws of Gibraltar, whose stated purpose is to act as a "holding company."  Cmplt. ¶12; Sills Declaration, Exh. EE.  Eco Telecom is wholly owned by Defendant Altimo, a company organized under the laws of the British Virgin Islands and formerly known as Alfa Telecom Limited.  Cmplt. ¶12.  A majority of the shares of Altimo is indirectly owned by Defendant CTF, a company organized under the laws of Gibraltar.  Cmplt. ¶13.  The sole shareholder of CTF is Defendant Crown Finance, a Lichtenstein foundation.  Cmplt. ¶14.  Eco Telecom, Altimo, Eco Holdings, CTF and Crown are all members or affiliates of a Russian business entity known as the Alfa Group Consortium (the "Alfa Group").  Cmplt. ¶¶11-15; Sills Declaration, Exh. A, p. 8, ¶2.

### The Shareholders Agreement

On November 5, 2001, Eco Telecom made its initial purchase of common and preferred

---

[1] A true and correct copy of the Award is attached to the Declaration of Robert L. Sills, dated October 5, 2007 (the "Sills Declaration") as Exhibit A.

[2] According to its most recent report on Form 20-F with the United States Securities and Exchange Commission, VimpelCom had approximately 48,141,200 subscribers in Russia, representing a market share of 31.7%. As of October 1, 2007, according to publicly available market data, VimpelCom had a market capitalization of approximately $28.5 billion.

shares of VimpelCom, pursuant to agreements dated May 30, 2001. Cmplt. ¶22. After giving

effect to those purchases, Eco Telecom controlled 25% plus two shares of VimpelCom's voting

capital stock. *See* Sills Declaration, Exh. A, p. 10, ¶5. Currently, following the transactions

described in the Complaint, Eco Telecom beneficially owns 37% of the common stock and just

over 44% of the voting stock of VimpelCom. Cmplt. ¶22; Sills Declaration Exh. EE.

In 2001, in connection with its agreement to purchase shares of VimpelCom, Eco

Telecom entered into a Shareholders Agreement with Telenor East, dated as of May 30, 2001

(the "Shareholders Agreement"), a copy of which is attached to the Sills Declaration as Exhibit

C. *See* Cmplt. ¶21; Sills Declaration, Exh. A, ¶6.

Although the Shareholders Agreement was the result of extensive negotiations between

Telenor and Alfa Group regarding the terms and conditions under which Alfa Group would be

permitted to make its investment in VimpelCom, its substantive scope is very limited, and it does

not address most of the subjects one would ordinarily expect to find in such a document. *See*

Sills Declaration, Exh. A, p. 29-30; Exh. C. The only topics addressed by the Shareholders

Agreement are the process by which Telenor East and Eco Telecom are to nominate candidates

for election to the VimpelCom Board of Directors (the "VimpelCom Board"), and restrictions on

the transfer of VimpelCom shares to third parties. Sills Declaration, Exh. C, Arts. III-IV.[3]

---

[3] At the same time that Telenor East and Eco Telecom executed the Shareholders Agreement, Defendants CTF and Eco Holdings entered into a Guarantee Agreement dated as of May 30, 2001 (the "Guarantee Agreement"), a copy of which is attached to the Sills Declaration as Exhibit C. Sills Declaration, Exh. A, p. 12, ¶6. Under Section 2.1 of the Guarantee Agreement, Eco Holdings guaranteed the performance of all obligations of Eco Telecom under the Shareholders Agreement. Sills Declaration, Exh. D.

In May 2001, when the Shareholders Agreement and Guarantee Agreement were executed, Eco Holdings was the parent company of Eco Telecom. Sills Declaration, Exh. E. However, pursuant to a Sale and Purchase Agreement dated August 19, 2004 among Alfa Telecom, Eco Holdings, CTF and Grand Financial Holdings S.A., Eco Holdings sold to Altimo all of its shares in Eco Telecom. *Id.* Pursuant to Section 3.1(d) of the Guarantee Agreement, on March 20, 2007, Altimo delivered its endorsement of Eco Holdings' obligation under the Guarantee Agreement. Sills Declaration, Exh. F.

CFT does not even attempt to explain how its guarantee that Eco Telecom will meet its obligations under the Shareholders Agreement has anything to do with Defendants' violations of the securities laws, nor could it do so. Moreover, Altimo, which is now a guarantor under the Guarantee Agreement, has the same right to seek arbitration as CTF. Defendants' papers are silent as to why CTF, but not Altimo, has chosen to invoke that purported right, other than in an attempt to litigate and arbitrate at the same time.

## The Nomination of Directors Under the Shareholders Agreement

Under Article 53.1 of the Joint Stock Company Law of the Russian Federation (the "JSC Law"), a holder of 2% or more of the voting shares of a Russian joint stock company has the right to nominate such number of candidates for election to the board of directors of such company as does not exceed the total number of board seats. Sills Declaration, Exh. A, p. 13, ¶8. In the absence of the Shareholders Agreement, therefore, each of Eco Telecom and Telenor East would have the right to nominate nine candidates for election to the VimpelCom Board. *See id.* Pursuant to the Shareholders Agreement, Telenor East and Eco Telecom agreed with each other to voluntarily reduce the number of candidates each would otherwise be entitled to nominate, with Telenor East allotted five candidates and Eco Telecom four. *See* Sills Declaration Exh. C, §4.01.

The obligation of both p arties to nominate only a specified number of candidates for election to the VimpelCom Board is one of the very few substantive provisions of the Shareholders Agreement. Under Section 4.01 of the Shareholders Agreement, as noted above, Telenor East has the right to nominate five candidates, while Eco Telecom has the right to nominate four. That section provides as follows:

(a)     So long as the Telenor Shareholders and the Eco Shareholders each beneficially own at least the Specified Percentage of Shares, then the Telenor Shareholders and the Eco Shareholders shall each nominate up to four (4) candidates for election to the Board, with at least one (1) candidate in each such group of four (4) candidates being an Independent; provided that if either the Telenor Shareholders or the Eco Shareholders beneficially own more than forty-four percent (44%) but not more than fifty percent (50%) of the voting capital stock of the Company (a "Plurality Shareholder"), none of the candidates nominated by such Plurality Shareholder is required to be an Independent. In the event of an Eco Telecom Contribution Default, Eco Telecom shall cause such number of the four (4) directors nominated for election to the Board by Eco Telecom to resign from the Board with immediate effect so that Eco Telecom's remaining nominees on the Board will be only those whom it could elect based on cumulative voting at such time (without taking into account any extraordinary rights).

(b)     So long as the Telenor Shareholders beneficially own at least the Specified
Percentage of Shares, then the Telenor Shareholders shall nominate one
(1) additional candidate for election to the Board, who shall be an
Independent and who shall, so long as the Eco Shareholders beneficially
own at least the Specified Percentage of Shares, be approved by Eco
Telecom.[4]

## The Relationship between Eco Telecom and Telenor East Deteriorates

Initially, Eco Telecom complied with the limitations set out in the Shareholders

Agreement restricting it to four board nominees. Sills Declaration, Exh. A, pp. 12-14, ¶¶7-9.

However, in October 2004, Altimo, the sole shareholder of Eco Telecom, began a campaign to

cause VimpelCom to acquire Closed Joint Stock Company "Ukrainian Radio Systems," a minor

participant in the Ukrainian mobile telecommunications market with limited operations ("URS").

Sills Declaration, Exh. G. Telenor East opposed, and ultimately three of the VimpelCom Board

members Telenor East had nominated voted against, VimpelCom's proposal to acquire URS for

approximately $206 million – more than fifty-seven times URS' annual revenues.[5] *Id.* at ¶27.

Apparently in reaction to Telenor East's opposition to VimpelCom's acquisition of URS

(the "URS Transaction"), in January 2005, Eco Telecom, nominated seven candidates for

election to the VimpelCom Board. Sills Declaration, Exh. A, p. 14, ¶ 10. Despite repeated

requests from Telenor East, and despite its obligations under Section 4.01 of the Shareholders

Agreement, Eco Telecom did not withdraw any of those seven nominees for election to the

VimpelCom Board in 2005. *Id.* at p. 15, ¶11-13. Similarly, despite the Guarantee Agreement,

none of the Alfa Group affiliates that guaranteed Eco Telecom's obligations under the

---

[4] "Independent" is defined in Section 1.01 of the Shareholders Agreement as "(a) any Person who is not any
employee, officer, director or other Affiliate (but who may be a consultant and/or former employee) of any
Shareholder, any Controlling Person of such Shareholder or any Controlled Affiliate of such Controlling Person or
(b) any Person listed in Schedule 3."
[5] Telenor East's opposition to the URS Transaction was based not only on the extraordinarily high price paid for a
dubious asset, but on the complete lack of transparency in the transaction. The ostensible sellers of URS were a
collection of shell corporations organized in offshore jurisdiction such as Cyprus and the British Virgin Islands.
Despite repeated requests by Telenor East, neither the "sellers" nor VimpelCom has ever disclosed the identity of
the beneficial owners of the selling corporations. Sills Declaration, Exh. G.

Shareholders Agreement took steps to cause Eco Telecom to comply with Section 4.01. *See id.*; Sills Declaration, Exh. C. As a result, a total of twelve candidates – seven nominated by Eco Telecom and the five nominated by Telenor East – were nominated for election to nine VimpelCom Board seats. Sills Declaration, Exh. A, p. 15, ¶11.

The following year, notwithstanding Eco Telecom's obligation to nominate only up to four candidates under Section 4.01 of the Shareholders Agreement, Eco Telecom nominated five candidates for election to the VimpelCom Board. Sills Declaration, Exh. A, p. 15, ¶15. Despite repeated requests from Telenor East, Eco Telecom refused to withdraw any of its candidates, and all of them stood for election at the annual shareholders meeting. *Id.*

**The Arbitration**

On November 14, 2005, in order to compel Eco Telecom to honor its contractual undertaking to nominate no more than four candidates for election to the VimpelCom Board, which had been breached for two consecutive years, Telenor East commenced an arbitration against Eco Telecom. Sills Declaration Exh. A, p. 4, ¶1. Telenor East's demand for arbitration sought only:

> An award (a) compelling Eco Telecom to nominate candidates for election to the Board in a manner consistent with the terms of the Shareholders Agreement; (b) restraining and enjoining Eco Telecom, together with its officers, agents, servants and employees, and all persons in active concert or participation with them, from violating, or causing or inducing any other person to violate, directly or indirectly, the provisions of Section 4.01 of the Shareholders Agreement; and (c) compelling Eco Holdings and CTF to comply with their respective obligations under Section 2.1 and Section 3.1(d) of the Guarantee Agreement, including without limitation the delivery to Telenor East of Alfa Telecom's endorsement of the Guarantee Agreement. (Sills Declaration, Exh. H, at 6).

On March 31, 2006, Telenor East filed its amended statement of claim. Sills Declaration, Exh. A, p. 5, ¶5. Eco Telecom filed its response on May 1, 2006, denying that it had violated the Shareholders Agreement and asserting that the limitation in Section 4.01 to four candidates for Eco Telecom was unenforceable. Sills Declaration, Exh. E.

On May 16, 2006, Eco Telecom filed an amended response, including a counterclaim against Telenor East asserting that Telenor East had somehow breached a duty of good faith and fair dealing under the Shareholders Agreement by opposing the URS Transaction. Sills Declaration, Exh. I at ¶¶ 12-17. Telenor East moved to dismiss that claim as beyond the scope of the parties' arbitration agreement. Sills Declaration, Exh. J. In response, Defendants argued, in terms virtually identical to those here, that the broad scope of the arbitration clause covered their claims. Sills Declaration, Exh. K. Following briefing and argument, the arbitrators ruled, on August 3, 2006, that there was no basis for arbitral jurisdiction over that counterclaim. Sills Declaration, Exh. L. Eco Telecom then withdrew its counterclaim on August 18, 2006.[6] Sills Declaration, Exh. A, ¶10.

At the arbitration itself, Eco Telecom took the position that the limitation to four candidates was precatory (or, as the arbitrators characterized it, "exhortatory") (Sills Declaration, Exh A, at 29-30, 32), and that Eco Telecom was entitled to nominate up to nine candidates for election to the VimpelCom Board, despite the unequivocal language of the Shareholders Agreement. Sills Declaration, Exh. A, p. 29-30, 32. In their interim award, issued on January 25, 2007 (the "Award"), the arbitrators rejected that position, and held that the provision restricting Eco Telecom to four candidates was valid and enforceable. Sills Declaration, Exh. A,

---

[6] Under the UNCITRAL Arbitration Rules, which are incorporated into and form a part of the Shareholders Agreement, the arbitrators were the judges of the scope of the arbitration agreement. U.N. Commission on International Trade Law, Arbitration Rules, Art. 20-21 *available at* http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-rules.pdf.

pp. 29-30, 32-33. In order to effectuate that limitation, Eco Telecom was ordered by the

arbitrators to withdraw, on or before March 28, 2007, all but four of the eight candidates it had

nominated for the 2007 election. *Id.* at pp. 36, ¶ 1.

Notwithstanding the express requirement of the Award, Eco Telecom withdrew not four,

but three, of its eight candidates, leaving it with five nominees. On Telenor East's application, a

further hearing was conducted concerning Eco Telecom's failure to comply with the Award on

April 14, 2007. On April 18, 2007, contrary to Eco Telecom's suggestion that the arbitrators

"allowed Eco Telecom time", the arbitrators ruled, in a document omitted by Eco Telecom and

CTF from their papers, that Eco Telecom had violated the Interim Award. *Telenor East Invest*

*AS v. Eco Telecom Limited, et al.*, Order of the Tribunal, dated April 18, 2007 (the "April 18th

Order"). The arbitrators ruled as follows:

> The tribunal has determined, upon careful consideration of the submission
> of both parties, that the Respondents are in violation of the Directive
> stated at page 36 of the Interim Award, in their having failed to withdraw,
> on or before the March 28, 2007 meeting of the Board of Directors of
> VimpelCom at which the ballot in respect of the election of directors was
> approved for submission to the vote of shareholders, all but four (4) of Eco
> Telecom's nominees to the said Board, of whom one (1) was to be an
> Independent. The Tribunal stated that this Directive was to have been
> implemented by a date certain, namely the date of the March 28, 2007
> Board meeting, as the parties themselves plainly understood to have been
> the case; and that the prospect invoked by the Respondents of their
> acquisition in due course of more than forty-four per cent (44%) of the
> voting capital stock of VimpelCom did not operate to excuse such
> violation.
>
> The Tribunal accordingly ORDERS that the Respondents within thirty
> (30) days of the date of the Hearing, that is to say on or before May 14,
> 2007, take the action necessary to place themselves in compliance with the
> Interim Award by withdrawing all but four (4) of Eco Telecom's
> nominees to the VimpelCom Board . . .

(Sills Declaration Exh. L).

On May 14, 2007, the last day set by the arbitrators for compliance, Eco Telecom finally

withdrew one more candidate, at last leaving it with four nominees for the VimpelCom Board.[7]

This action was filed on June 6, 2007, and the Complaint was filed on July 12, 2007. In

those pleadings, Telenor East seeks relief arising out of Defendants' scheme to violate United

States securities laws in connection with their purchases of VimpelCom securities. No relief is

sought as to either the nomination of directors to the VimpelCom Board or transfers of Eco

Telecom's VimpelCom shares to third parties, which are the only substantive provisions of the

Shareholders Agreement having anything to do with either party's shareholdings.

Nonetheless, in July 2007, Eco Telecom requested, in writing, that the arbitrators retain

jurisdiction and continue the proceeding, arguing that the claims pleaded in Telenor East's

complaint in this Court, as well as vaguely described counterclaims that supposedly would

shortly be filed on behalf of Eco Telecom, were within the arbitrators' jurisdiction.[8] Following

argument, on July 24, 2007, the arbitrators denied Eco Telecom's request, without any written

order, and stated that they would proceed to issue a final award.

## ARGUMENT

Eco Telecom's argument is based both on a misreading of Telenor East's Complaint and

an incorrect reading of Second Circuit case law regarding the scope of an arbitration agreement.

As set forth below, when the admittedly broad arbitration clause at issue here is read in the

---

[7] Eco Telecom repeatedly asserts or implies in its papers that it prevailed in the arbitration, without any conceivable basis to do so. The most cursory reading of the Award, as well as the arbitrators' ruling of April 18, 2007, shows that Telenor East requested a ruling restricting the number of Eco Telecom's candidates to the VimpelCom board to four; that Eco Telecom resisted that claim; and that the arbitrators granted the relief sought by Telenor East in the Interim Award, and then held that Eco Telecom had not complied with the Interim Award. Eco Telecom's description of the arbitration is entirely at odds with the Award that is attached to its papers. In that regard, it is noteworthy that after the issuance of the Award, Defendant Altimo issued a press release falsely claiming that the arbitrators had ruled that Eco Telecom had the right to nominate nine candidates for the VimpelCom Board. Sills Declaration, Exh. N (Press Release, Altimo Holdings & Investments Limited, "Telenor misinterpret court facts to gain PR leverage" (January 30, 2007)).

[8] No such claims or counterclaims have ever been filed by Eco Telecom or any other Defendant, either in the arbitration or before any court.

context of the very narrow contract of which it forms a part, it is clear that the dispute is not arbitrable under Second Circuit law.

Arbitration is a matter of contract, and a party may not be forced to arbitrate disputes that it has not contractually agreed to submit to arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Alliance Bernstein Investment Research and Management, Inc., v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration"). Accordingly, while courts are directed to construe arbitration clauses generously, consistent with the federal policy favoring arbitration, they may not go beyond the terms of the parties' agreement and order arbitration of claims beyond the scope of the agreement at issue. *See Collins and Aikman Products Co. v. Building Systems Inc.*, 58 F.3d 16, 19-20 (2d Cir. 1995)

The Court of Appeals' opinion in *Ledertex, Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995), sets out the relevant standard. In that case, the parties, two textile companies, had entered into a contract for the provision of various services. The contract contained a broad arbitration clause. The plaintiff then brought an action including claims for defamation. Although the contract contained a broad arbitration clause, the Court of Appeals held that the defamation claim was not within its scope. The Court held as follows:

> The defamation claim is thus factually quite closely related to the contract claims, although legally distinct from them. Because truth is a defense to defamation, resolution of this cause of action will necessitate examining the same evidence regarding *Leadertex's* and Morganton's contractual performance that is to be tried by the district court. But at the same time, the defamatory statement also allegedly contained a number of charges extending beyond core issues of dyeing and finishing goods contracts: namely, that *Leadertex* is dishonest and incompetent, and that it acted with intent to defraud its customers.

10

> It is not particularly helpful in the case at hand to recite the various
> rules governing whether factual allegations subject a matter to
> arbitration: some of these rules ask, for example, whether the
> factual allegations "touch matters" governed by the parties'
> contracts . . . whether the allegations "arising from" contract
> performance, . . . whether they are "integrally linked" to the
> contractual relation, . . . or whether they somehow "pertain to" it. .
> . . None of these formulations itself yields a principled way of
> here deciding whether these claims should be sent to arbitration.
>
> As with any contractual matter our main concern in deciding the
> scope of arbitration agreements is to "faithfully reflect [] the
> reasonable expectations of those who commit themselves to be
> bound by [them]."...

*Id.* at 28 (emphasis added; internal quotations and citations omitted).  *See Collins*, 58 F.3d at 19-

20.[9]

The securities claims pleaded by Telenor East, which are described in more detail in

Telenor East's papers in opposition to Defendants' motion to dismiss under Rule 12(b)(5), have

nothing to do with the limited substantive terms of the Shareholders Agreement.  Those claims

involve Defendants' failure to comply with their disclosure obligations under the Securities

Exchange Act, in particular Section 13(d), and their substantial purchases of VimpelCom shares

and American Depositary Shares ("ADSs") while in possession of material non-public

information.  The Complaint seeks no relief concerning Eco Telecom's rights to nominate up to

---

[9] The state courts in New York follow the same approach.  For example, *Silver v. Pilzer*, 59 A.D.2d 680, 398
N.Y.S.2d 662 (App. Div. First Dep't 1977), involved a shareholders agreement that "outlined the rights and
responsibilities related to capitalization and transfers of the stock of the corporation."  The agreement also contained
a broad arbitration clause, which read, "Any and all disputes and controversies arising out of or in connection with
this agreement . . . shall be determined by arbitration . . ." *Id.* (first ellipsis in original).  A dispute regarding the
management of the corporation arose, and one party served a demand for arbitration.  The Appellate Division held
that the claim was beyond the scope of the arbitration clause, despite its breadth, as follows:

> The shareholders' agreement deals with capitalization of the corporation and
> related matters, but does not contain provisions related to management of the
> corporation.  The arbitration clause contained in it cannot therefore be invoked
> to compel arbitration of the management dispute outlined in the demand for
> arbitration.

59 A.D.2d at 680, 398 N.Y.S.2d at 662 (citation omitted).

four directors for election to the VimpelCom Board or to transfer its VimpelCom shares, the only

substantive topics addressed in the Shareholders Agreement.

The Complaint describes a wide-ranging scheme by all defendants to acquire control of

VimpelCom in violation of the securities laws – and not, as Eco Telecom would have it, an effort

to acquire 44% of VimpelCom's shares – without the required disclosures, and while in

possession of inside information.  Moreover, it is simply not the case that, as Eco Telecom

asserts, "the rights attendant to share ownership are very much a part of the Shareholders

Agreement."  Defendants Memorandum of Law 15.  The question of voting shares is not

addressed at all in the Shareholders Agreement, and the only right even connected to share

ownership is that once a party acquires 44% of  VimpelCom's shares it is no longer required to

nominate one "Independent" candidate, but can propose a slate composed entirely of affiliate

nominees.[10]  None of the relief sought by Telenor East in this action would affect that right, and

Telenor East does not challenge Eco Telecom's right to nominate an entirely non-Independent

slate of four candidates for election to the VimpelCom Board.

The claims at issue here do not implicate any of the terms of the Shareholders

Agreement, but Eco Telecom argues that they "touch upon" those terms, and are, therefore,

arbitrable.  First, as *Ledertex* explains, the use of such catchphrases is not a substitute for

analysis.  As the Court of Appeals stated in declining to order arbitration in *Sprecht v. Netscape

Communications Corp.*, 306 F.3d 17 (2d Cir. 2002):

---

[10] Defendants' mischaracterization of the action as concerning "Telenor East's claims that Eco Telecom acted improperly in the course of amassing 44% of the shares" (Def. Br. at 15), is apparently an effort to link the Complaint to that provision in the Shareholders Agreement.  The fact that Eco Telecom held slightly less than 44% when this action was commenced (as set forth in paragraph 2 of Telenor East's original complaint), now holds just over 44% (Cmplt. ¶ 12), and apparently intends, to continue its acquisitions at least to the 60% level (*see* Cmplt. ¶ 68), are simply steps Defendants have taken along the road of unlawfully obtaining control of VimpelCom.

> Where the scope of an arbitration agreement is broad there arises a
> presumption of arbitrability; if, however, the dispute is in respect
> of a matter that, on its face, is clearly collateral to the contract, then
> a court should test the presumption by reviewing the allegations
> underlying the dispute and by asking whether the claim alleged
> implicates issues of contract construction or the parties' rights and
> obligations under it . . . [C]laims that present no question involving
> construction of the contract, and no questions in respect of the
> parties' rights and obligations under it, are beyond the scope of the
> arbitration agreement.

*Id.* at 36. *See Collins,* 58 F.3d at 23. Here, too, the claims are clearly collateral to the contract, and no issue of contract construction, and no "question in respect of the parties' rights and obligations," is involved. Accordingly, the arbitration clause at issue, however broad, is inapplicable here.

In its argument that the claims in the Complaint "touch upon" the Shareholders Agreement, Eco Telecom correctly observes that the Court should focus on the facts pleaded, and then ignores the rule it invokes. Telenor East's Complaint pleads that Defendants have been purchasing VimpelCom shares and ADSs without complying with the disclosure obligations imposed on them by United States federal securities law, and that Defendants purchased VimpelCom shares while in possession of material inside information. The Shareholders Agreement does not even address the question of the parties' purchases of VimpelCom shares and ADSs, let alone compliance by purchasers with the securities laws.[11] Telenor East's rights to prosecute the claims at issue in this action in no way derive from the Shareholders Agreement, and any VimpelCom shareholder or ADS holder could prosecute the same claims.

---

[11] In that regard, it is noteworthy that in Section 2.06 of the Shareholders Agreement, each shareholder warranted that it filed, *as of the date of the Shareholders Agreement,* all required SEC disclosures of its shareholding interest and that no such filing contained an untrue statement or omission of or material fact, but the Shareholders Agreement contains no obligation or provision of any kind regarding post-execution filings with the SEC or compliance with the securities laws on an ongoing basis.

Defendants attempt to supply the missing link by suggesting that some of the relief sought by Telenor East, if granted, might affect Eco Telecom's ability to exercise its rights under the Shareholders Agreement. However, Defendants never explain how that is the case.[12] More important, to the extent that "touching upon" is the relevant standard, it is not meant by constructing a hypothetical scenario under which some contract right might conceivably be affected. Rather, the claim sought to be arbitrated must arise or relate, in some legally meaningful sense, to the rights and obligations created by the contract. In effect, Defendants' argument is so broad that were it the rule a broad arbitration clause would require arbitration of any claim between contractual parties, regardless of the scope of the contract itself. That is not the rule, as cases declining to order arbitration under broad clauses, such as *Ledertex* and *Sprecht,* make clear. *See Rosen v. Mega Bloks Inc.*, 2007 WL 1958968, at *10; 2007 U.S. Dist LEXIS 48479, at *31-*33 (S.D.N.Y. July 6, 2007) (Gorenstein, U.S.M.J.) (Declining to stay action, despite broad arbitration clause, because the action would not "require *construction* of the Employment Agreements or the parties rights or obligations under them.") (emphasis in original). As the arbitrators held in rejecting Eco Telecom's previous effort to plead a counterclaim not involving any right or obligation under the Shareholders Agreement, the parties' arbitration agreement does not cover all claims between the parties and it has nothing to do with the securities claims at issue.

Finally, in an effort to bolster their claims, Defendants repeatedly attack Telenor East's motives in filing this action. Putting the complete irrelevance of that attack to one side,

---

[12] The only conceivable "right" of Eco Telecom that could be affected is its ability to nominate four candidates affiliated with Defendants once it held 44% of VimpelCom's voting stock, rather than three affiliates and one "Independent". As noted above, the complaint seeks no relief regarding that provision of the Shareholders Agreement, and Telenor East does not challenge Eco Telecom's right to nominate a slate of candidates for the VimpelCom board without an independent. Moreover, Eco Telecom acquired just over 44% of VimpelCom's voting stock after this action was commenced. Telenor East does not challenge Eco Telecom's right to nominate a slate with no Independents, and would not challenge that right in the future.

Defendants' claims are entirely unfounded. In particular, Defendants claim that Telenor East sent a copy of the complaint in this action to Deutsche Bank "to interfere with Eco Telecom's attempts to raise additional funds," presumably through the Eurobond offering described in the Zeballos Declaration. First, until Defendants made their allegation, Telenor East had no knowledge of that prospective offering, and it would have been an extraordinary breach of client confidentiality by Deutsche Bank if it had disclosed such an engagement. Next, although Defendants omit that fact, the Complaint was sent to Deutsche Bank under cover of a letter requesting the bank to preserve its files regarding the transactions described in the complaint, in which Deutsche Bank played a key role. Sills Declaration, Exh. O. Such letters are ordinarily sent in securities litigations, and hardly provide a link between the claims pleaded by Telenor East and the arbitration clause in the Shareholders Agreement.

In the end, the question before the Court is one of the parties' intent when they executed the Shareholders Agreement. Although the arbitration clause is broad, it must be read in the context of that remarkably narrow agreement. The claims pleaded by Telenor East do not "arise under or relate to" the Shareholders Agreement, and are not arbitrable.

**CONCLUSION**

For the reasons laid out above, Plaintiff respectfully requests that this Court deny

Defendants' Motion to Stay This Action and Compel Arbitration.


Dated:   New York, New York               ORRICK, HERRINGTON & SUTCLIFFE LLP
         October 5, 2007

                                          By: _Robert L. Sills_____

                                              Robert L. Sills (RS 8896)
                                              Jay K. Musoff (JM 8716)
                                              666 Fifth Avenue
                                              New York, New York 10103
                                              Telephone: (212) 506-5000
                                              Facsimile: (212) 506-5151

                                              Peter O'Driscoll
                                              ORRICK, HERRINGTON & SUTCLIFFE LLP
                                              Tower 42, Level 35
                                              25 Old Broad Street
                                              London EC2N 1HQ
                                              DX: 557 London/City
                                              United Kingdom
                                              Telephone: 011 44 20 7562 5000


                                              Attorneys for Plaintiff
                                              Telenor East Invest AS