# EXHIBIT E

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:

TELENOR EAST INVEST AS,

        Claimant,

        Snarøyveien 30
        N-1331 Fornebu
        Norway

-and-

ECO TELECOM LIMITED,
ECO HOLDINGS LIMITED, and
CTF HOLDINGS LIMITED,

        Respondents,

        10/8 International
        Commercial Centre
        Casemates Square
        Gibraltar

STATEMENT OF DEFENSE
AND COUNTERCLAIM

Pursuant to Article 19 of the UNCITRAL Arbitration Rules, Respondents Eco Telecom Limited ("Eco Telecom"), Eco Holdings Limited ("Eco Holdings") and CTF Holdings Limited ("CTF"), for their defense to Claimant Telenor East Invest AS's ("Telenor East") amended claim, and for their counterclaim, state as follows:

## PRELIMINARY STATEMENT[1]

This arbitration proceeding is nothing more than one of several legal maneuvers by Telenor ASA ("Telenor") intended to harass and pressure the Alfa Group and to enable Telenor to seize control of VimpelCom and protect Telenor's dominant position in the Ukrainian telecommunications market from competition.[2] More specifically, this proceeding is the latest attempt on Telenor's part to unwind a transaction into which VimpelCom entered late last year to acquire WellCom, the Ukrainian mobile provider. In control of an approximately 56.5% interest in WellCom's competitor, Closed Joint Stock Company Kyivstar G.S.M. ("Kyivstar"), Telenor launched an aggressive, but ultimately futile, campaign to block VimpelCom's acquisition of WellCom. During the past year, Telenor has done everything from initiating a lawsuit in the United States District Court for the Southern District of New York seeking to prevent the WellCom acquisition vote from going forward, to voting down VimpelCom's budget in an attempt to prevent the deal from being consummated, to suing VimpelCom itself in three related Russian actions and to commencing a separate arbitration against an entity owned by Alfa Telecom relating to Telenor's control over Kyivstar, the leading Ukrainian cellular provider -- all in an attempt to unwind or block the WellCom acquisition, which 89% of the non-Telenor East and non-Eco Telecom shareholders of VimpelCom endorsed. The instant arbitration is merely one in a host of

---

[1] Unless otherwise defined, all defined terms shall have the meaning assigned to them in Telenor East's Amended Notice of Arbitration and Amended Statement of Claim.

[2] Telenor's intent to denigrate the Alfa Group is illustrated by the many wholly irrelevant allegations in Telenor East's Amended Statement of Claim, which Eco Telecom will not honor with a response (*see, e.g.*, Paragraphs 6-8 of Telenor East's Amended Statement of Claim).

tactics Telenor has employed in its desperate attempt to continue its domination of the Ukrainian market and to seize control of VimpelCom.

The WellCom acquisition, discussed below, is at the heart of Telenor East's claim. Notably, Telenor East did not bring this claim until late December 2005 (i.e., *after* VimpelCom had completed the WellCom acquisition), although the annual shareholders meeting during which the present VimpelCom Board was elected occurred in June 2005. Following that election, in August 2005, Telenor East brought suit against Eco Telecom and others in United States District Court for the Southern District of New York in an attempt to prevent the Extraordinary General Meeting ("EGM") at which the WellCom acquisition was scheduled to be approved from going forward. Though Telenor East failed to obtain a preliminary injunction and ultimately was forced to dismiss its claims against Eco Telecom, Telenor then simply changed its focus, launching a new campaign against the Alfa Group and VimpelCom. The campaign at this time includes the instant arbitration, three claims Telenor brought against VimpelCom in Russia based largely on the same alleged facts as those involved in Telenor East's failed case in New York and a second arbitration against another Alfa Group affiliate regarding its shareholding in Kyivstar.

During the entire relevant time period, Eco Telecom has behaved in a manner consistent with the expectations and practice of the parties under the Shareholders Agreement and Russian law governing joint stock companies. However, in January 2006, contrary to Section 4.01 of the Shareholders Agreement, Telenor East advised VimpelCom's Board of Telenor East's nomination of Larry A. Zielke as the ninth nominee for the Board, even though Telenor East had failed to obtain Eco Telecom's approval. Under these circumstances, Section 4.01 has no force and effect. Telenor East is estopped from enforcing Section 4.01 and has waived any rights it might have had to enforce it in the absence of Eco Telecom's approval of the ninth nominee.

Telenor East has acted in concert with its parent, Telenor, which has exercised complete domination and control over Telenor East, to promote their interests at the expense of VimpelCom, Eco Telecom and VimpelCom's other shareholders, in violation of the Shareholders Agreement and Russian law, to the detriment of Respondents as described herein.

I.  **FACTUAL BACKGROUND**

1.  Claimant Telenor East is a company organized and existing under the laws of the Kingdom of Norway, with its principal place of business in Fornebu, Norway. Telenor East is a wholly-owned subsidiary of Telenor, a Norwegian company. Telenor's shares are listed in Norway on the Oslo Stock Exchange, and its American Depository Shares are listed in the United States on the Nasdaq National Market.

2.  Respondent Eco Telecom is a company organized under the laws of Gibraltar, with its principal place of business in Gibraltar. Eco Telecom beneficially owns 24.5% of the common stock, and 32.9% of the voting stock, of VimpelCom, a Russian mobile operator. Eco Telecom is wholly owned by Alfa Telecom, a company organized under the laws of the British Virgin Islands that now uses the trade name "Altimo." A majority of the shares of Alfa Telecom are indirectly owned by Respondent CTF, a company organized under the laws of Gibraltar. Eco Holdings is a Gibraltar holding company that, prior to the sale of its shares of Eco Telecom to Alfa Telecom, was the sole shareholder of Eco Telecom. Eco Holdings is also controlled by CTF. Eco Telecom, CTF and Eco Holdings are affiliated with the Alfa Group, one of Russia's largest privately-owned financial-industrial conglomerates.

3.  VimpelCom is the second largest mobile telephone operator in Russia. VimpelCom conducted an initial public offering of its American Depository Shares in 1996. In December 1998, Telenor East purchased 25.7% of the voting capital stock of VimpelCom. Pursuant to agreements dated May 30, 2001, Eco Telecom purchased shares of VimpelCom sufficient to give it control of 25% plus two shares of VimpelCom's voting capital stock.

4.  In connection with Eco Telecom's 2001 acquisition of its more than 25% interest in VimpelCom, the parties executed various agreements. These agreements included: (a) a Shareholders Agreement dated as of May 30, 2001 between Eco Telecom and Telenor East (the "Shareholders Agreement"), which includes a governing law provision specifying that New York law will control its interpretation. (A copy of the Shareholders Agreement is

attached as Exhibit B to Telenor East's Amended Statement of Claim.); and (b) a Guarantee Agreement dated as of May 30, 2001, between CTF, Eco Holdings, Telenor East, VimpelCom and Closed Joint Stock Company VimpelCom-Region, a copy of which is attached as Exhibit C to Telenor East's Amended Statement of Claim.

5. In May 2001, when the Shareholders Agreement and Guarantee Agreement were executed, Eco Holdings was the parent company of Eco Telecom. However, pursuant to a Sale and Purchase Agreement dated August 19, 2004 among Alfa Telecom, Eco Holdings, CTF and Grand Financial Holdings S.A., a copy of which is attached to Telenor East's Amended Statement of Claim as Exhibit D, Eco Holdings sold to Alfa Telecom all of Eco Holdings's shares in Eco Telecom. Telenor East has alleged that under Section 3.1(d) of the Guarantee Agreement, CTF and Eco Holdings agreed to cause the transferee of Eco Holdings's entire interest in VimpelCom to execute and deliver to each Beneficiary an endorsement to the Guarantee Agreement as a condition to any such transfer. CTF does not believe that there is a need for any such endorsement because Eco Telecom continues to hold a stake in VimpelCom and is still controlled by CTF. Moreover, the transfer of Eco Telecom from Eco Holdings to Alfa Telecom did not affect the validity of CTF's and Eco Holdings's guarantees, which both remain valid. In the interest of resolving the parties' disputes, however, Alfa Telecom is prepared to execute an endorsement at Telenor East's request. Respondents note that Telenor East was aware of the details of the transfer from Eco Holdings to Alfa Telecom for nearly a year before it brought the instant claims and, in that time, never requested that Alfa Telecom execute an endorsement.

6. Eco Telecom currently owns 32.9% of VimpelCom's voting stock and 24.5% of VimpelCom's common stock. Telenor East currently owns 26.6% of VimpelCom's voting stock and 29.9% of VimpelCom's common stock. Eco Telecom and Telenor East are VimpelCom's two largest shareholders.

## The Nomination Process Under Russia's Joint Stock Company Law and the Shareholders Agreement

7.  The Joint Stock Company Law of the Russian Federation (the "JSC Law") is mandatory law for all Russian joint stock companies, including VimpelCom. Under Article 53.1 of the JSC Law, a holder of two percent or more of the voting shares of a Russian joint stock company has the right to nominate such number of candidates for election to the board of directors of such company as does not exceed the total number of board seats.

8.  Under Article 66.4 of the JSC Law, members of the board of directors of a Russian joint stock company must be elected by cumulative voting. Article 9.2.4 of VimpelCom's charter provides for election of members of the Board on a cumulative voting basis. In an election of board members conducted on a cumulative voting basis, the number of shares held by a shareholder must be multiplied by the number of persons to be elected to the board (in the case of VimpelCom, nine board seats), with the product being the total number of votes such shareholder may cast. A shareholder may cast its votes however it chooses.

9.  In order to provide for the continuity and stability of the business, Telenor East and Eco Telecom entered into the Shareholders Agreement and created a mechanism by which they jointly could nominate nine candidates to the Board each year if they could agree upon the ninth nominee. The Shareholders Agreement contains the following provision concerning nominating procedures at Section 4.01:

> (a) So long as the Telenor Shareholders and the Eco Shareholders each beneficially own at least the Specified Percentage of Shares, then the Telenor Shareholders and the Eco Shareholders shall each nominate up to four (4) candidates for election to the Board, with at least one (1) candidate in each such group of four (4) candidates being an Independent; provided that if either the Telenor Shareholders or the Eco Shareholders beneficially own more than forty-four percent (44%) but not more than fifty percent (50%) of the voting capital stock of the Company (a "Plurality Shareholder"), none of the candidates nominated by such Plurality Shareholder is required to be an Independent. In the event of an Eco Telecom Contribution Default, Eco Telecom shall cause such number of the four (4) directors nominated for election to

- 6 -

the Board by Eco Telecom to resign from the Board with immediate effect so that Eco Telecom's remaining nominees on the Board will be only those whom it could elect based on cumulative voting at such time (without taking into account any extraordinary rights).

(b) So long as the Telenor Shareholders beneficially own at least the Specified Percentage of Shares, then the Telenor Shareholders shall nominate one (1) additional candidate for election to the Board, who shall be an Independent and who shall, so long as the Eco Shareholders beneficially own at least the Specified Percentage of Shares, be approved by Eco Telecom.[3]

10. Thus, at the time that the parties entered into the Shareholders Agreement, their understanding of the operative effect of Section 4.01 was that Eco Telecom and Telenor East each would be entitled to nominate independently up to only four candidates to the Board, with at least one candidate in each group of four being an Independent, provided that they were able to agree upon the ninth nominee, who must be an Independent candidate nominated by Telenor East. Under no circumstances would either party be able to nominate a fifth nominee in the absence of the other party's approval under the terms of Section 4.01 as long as both parties held the Specified Percentage of shares (as defined). Accordingly, the parties' agreement on the ninth nominee was an essential prerequisite to the implementation of Section 4.01 and necessary to give the provision its intended meaning or effect.

11. At the time that the parties entered into the Shareholders Agreement, they did *not* intend for the nomination provision at Section 4.01 to have any force or effect with respect to the nominations of the other eight directors if the parties were unable to agree upon the ninth nominee. If the parties were unable to reach agreement with respect to the ninth candidate, each of the parties would be free to nominate up to nine candidates on its own, as permitted under the JSC Law.

---

[3] "Independent" is defined in Section 1.01 of the Shareholders Agreement as "(a) any Person who is not an employee, officer, director or other Affiliate (but who may be a consultant and/or former employee) of any Shareholder, any Controlling Person of such Shareholder or any Controlled Affiliate of such Controlling Person or (b) any Person listed in Schedule 3." The only individual listed in Schedule 3 is Mr. Terje Thon.

**Telenor's Attempt to Block VimpelCom's Purchase of WellCom
To Protect Telenor's Position in the Ukrainian Telecommunications Market**

12.     Contrary to Telenor East's allegations in paragraphs 25 through 33 and 46 through 54 of its Amended Statement of Claim, Telenor, Telenor East and VimpelCom directors nominated by Telenor East (collectively, the "Telenor Group") attempted to abuse their interest in, and duties owed to, VimpelCom and its shareholders by attempting to block, and therefore delay, VimpelCom's acquisition of WellCom to protect Telenor's position in the Ukrainian telecommunications market to the detriment of VimpelCom, Eco Telecom and VimpelCom's other shareholders. As the result of this delay, VimpelCom ultimately was forced to pay USD 35M more for WellCom than it would have had to pay had the Telenor Group not opposed the transaction.

13.     As made clear by various industry analysts and VimpelCom management, VimpelCom's acquisition of WellCom served VimpelCom's best interests. The Telenor Group, however, objected to the acquisition because WellCom competes against Kyivstar, the leading Ukrainian cellular provider, in which Telenor has an approximately 56.5% interest. (Storm LLC, a Ukrainian limited liability company that is wholly owned by Alfa Telecom, owns the remaining 43.5% of Kyivstar.)

14.     Both VimpelCom management and the VimpelCom Board, with only the three Telenor non-independent directors dissenting, endorsed the acquisition of WellCom. However, because the VimpelCom charter requires eight votes of the nine Board members to approve such an acquisition, the acquisition was blocked solely by Telenor East-nominated directors. In order to overcome the Telenor blocking position, on July 15, 2005, Eco Telecom called an EGM of VimpelCom for August 15, 2005. Because of technical difficulties in obtaining proxies, Eco Telecom did not cast its votes, resulting in the absence of a quorum and, consistent with Russian law, the meeting was rescheduled for September 14, 2005.

15.     At the September 14, 2005 meeting, which went forward notwithstanding Telenor East's attempt to prevent it, VimpelCom shareholders overwhelmingly approved the

- 8 -

acquisition. Indeed, not including the votes of Eco Telecom or Telenor, 89% of the voting shareholders voted their shares in favor of the WellCom acquisition.

16.     Not content to allow the VimpelCom shareholders and management to decide whether VimpelCom should invest in the Ukrainian telecommunications market, Telenor commenced three lawsuits on January 26, 2006 in Moscow against VimpelCom in connection with the WellCom acquisition. Among other things, the lawsuits sought to invalidate the decision of the September 14, 2005 EGM, to unwind the WellCom acquisition on the basis that it was completed in violation of Russian law and to invalidate the decision of VimpelCom General Director Alexander Isozimov to complete the transaction.

17.     That the Telenor Group has championed its own agenda to the detriment of VimpelCom's and its other shareholders in connection with the above-described events is beyond dispute. As stated in a VimpelCom press release issued the day Telenor announced its three Moscow lawsuits, "Telenor's actions will [ ] force VimpelCom to expend resources and energy to respond to Telenor's lawsuits in order to protect the interest of all VimpelCom shareholders." The Telenor Group's actions in connection with the WellCom acquisition breached the duties owed by directors to companies under Russian law as well as the duty of good faith implied under New York law in the Shareholders Agreement.

## Events Surrounding the Nomination of Candidates to the VimpelCom
## Board of Directors in Advance of the 2005 and 2006 General Shareholders Meetings

18. Article 53.1 of the JSC Law requires that any proposal for the nomination of candidates for election to the board of a joint stock company be received by the company within thirty (30) days after the close of the company's fiscal year, unless a later date is specified in the company's charter. Article 7.5 of VimpelCom's charter provides for VimpelCom's fiscal year to end on December 31, and the charter does not provide for a later date for submission of proposals for the nomination of candidates for election to the Board. Accordingly, all nominations should be received by VimpelCom from Telenor East, Eco Telecom and any other holder of 2% or more of VimpelCom's voting stock no later than January 30 each year.

19. Since January 2002, the parties' practice initially has been to nominate more than the number of candidates permitted by Section 4.01 of the Shareholders Agreement and, thereafter, if the parties were able to agree upon the ninth nominee, Eco Telecom and Telenor East each would effect the withdrawal of the appropriate number of candidates to place the parties into compliance with the Shareholders Agreement prior to the approval by the Board of the agenda for VimpelCom's annual general meeting of shareholders.

### *2005*

20. The parties proceeded in this manner in 2005. As alleged by Telenor East in paragraph 37 of its Amended Statement of Claim, in January 2005, "Eco Telecom nominated seven candidates, four of whom were Independents (as such term is defined in the Shareholders Agreement), and Telenor East nominated six candidates, three of whom were Independents. One of Telenor East's Independent candidates, Alexander Sozonoff, was also nominated by Eco Telecom."

21. Thus, in the process of their initial nominations, the parties clearly had agreed upon Mr. Sozonoff as an Independent candidate to serve as the ninth nominee. Eco Telecom was

- 10 -

prepared to effect the withdrawal of two of its other candidates in order to comply with Section 4.01 of the Shareholders Agreement. However, contrary to the allegations in paragraphs 34 and 38 through 43 of Telenor East's Amended Statement of Claim, Telenor East proceeded in a manner inconsistent with the parties' expectations under Section 4.01 of the Shareholders Agreement and caused it to have no force or effect.

22. Contrary to the expectations of the parties under the Shareholders Agreement, Telenor East attempted to cause Mr. Sozonoff to withdraw as an Independent candidate, even though he had been nominated by Telenor East and approved by Eco Telecom. Mr. Sozonoff refused to withdraw. Even though Telenor East had nominated Mr. Sozonoff and he was approved by Eco Telecom, Telenor East attempted to overcome its breach of the Shareholders Agreement by offering for Eco Telecom's approval the other two Independent candidates it had nominated, but the parties failed to reach an agreement as to the ninth candidate.

23. Accordingly, Telenor East and Eco Telecom understood that Section 4.01 of the Shareholders Agreement could not be given effect in 2005. Neither party commenced an arbitration proceeding or litigation to prevent the election at the AGM in June 2005 from going forward. Six candidates nominated by Telenor East (including Mr. Sozonoff) and seven nominated by Eco Telecom (including Mr. Sozonoff) were considered by the shareholders at the AGM in June 2005. Telenor East does not seek any relief in this arbitration or in any other proceeding in connection with the 2005 nomination process or election.

24. Telenor East waived its right to enforce Section 4.01 of the Shareholders Agreement for the election held in 2005.

25. Telenor East has waived its right to enforce Section 4.01 of the Shareholders Agreement if the parties fail to agree upon the ninth candidate as required by that provision.

*2006*

26. During 2006, the parties have again failed to reach an agreement on the ninth candidate for election to the VimpelCom Board.

27. By letter dated January 11, 2006, Ragnar Korsæth of Telenor East advised Eco Telecom of Telenor East's desire to nominate Larry A. Zielke as an Independent candidate and sought Eco Telecom's approval. By letter dated January 17, 2006, Oleg Malis of Eco Telecom advised Mr. Korsæth of Eco Telecom's desire to meet with Mr. Zielke to discuss his qualifications and potential service as a Board member. By letter dated January 20, 2006, Mr. Korsæth confirmed that the meeting Mr. Malis had requested with Mr. Zielke would occur on January 26, 2006.

28. Mr. Malis's meeting with Mr. Zielke went forward as planned. On January 26, 2006, Oleg Malis and his colleague Alexei Reznikovich met with Mr. Zielke over dinner in London. During the meeting, it was revealed that (i) Mr. Zielke has had no experience with telecommunications or any other special expertise useful for the VimpelCom Board and, more significantly, (ii) during Mr. Zielke's time working for Sakhalin Energy in Russia, he was a client of Peter O'Driscoll, counsel for Telenor East in this arbitration proceeding.

29. As a result of the January 26 meeting, Eco Telecom transmitted its objection to Mr. Zielke's nomination on January 30, 2006. Eco Telecom attempted to communicate its objection to Telenor East by sending the letter via facsimile to the two facsimile numbers designated as appropriate for notice to Telenor East in Section 6.10 of the Shareholders Agreement. Telenor East had not at any time notified Eco Telecom of a change in these numbers, but transmission to both of these numbers -- +47 22 77 91 59 and +47 22 11 44 61 -- failed. Left with no alternative method by which to notify Telenor East of its objection to Mr. Zielke's nomination, Eco Telecom transmitted the letter via facsimile to the law firm of Orrick, Herrington & Sutcliffe LLP, counsel to Telenor East, because Eco Telecom previously had received a letter from Mr. Korsæth by way of the Orrick firm.

30. Telenor East did not obtain Eco Telecom's approval to nominate Mr. Zielke as the ninth candidate, as required by the Shareholders Agreement. Mr. Korsæth, by letter dated January 30, 2006, nonetheless advised VimpelCom's Board of Telenor East's nomination of Mr. Zielke as its fifth candidate (the ninth nominee).

31. Having objected to Telenor East's fifth candidate, and having not received any notification that Telenor East intended to nominate anybody in Mr. Zielke's stead, Eco Telecom concluded that the parties had failed to agree on a ninth nominee to the Board. Accordingly, because the nominating provision of the Shareholders Agreement ceases to have any force or effect with respect to the nomination of candidates if the parties are unable to agree on the ninth candidate, Eco Telecom, by letter dated January 30, 2006, advised VimpelCom's Board of its nomination of five candidates to the Board, in accordance with Article 53.1 of the JSC Law.

### Telenor East's Request for Fishing Expedition

32. In Paragraphs 61 through 66 of its Amended Statement of Claim, Telenor East speculates with no basis whatsoever that Eco Telecom may have acted in concert with minority shareholders who have nominated Mr. David Haines and/or Mr. Alexander Isozimov as candidates for the VimpelCom Board, and asks that the Panel direct Eco Telecom to provide disclosure of agreements and correspondence on this issue. Eco Telecom did not act in concert, or enter into any agreement, with any minority shareholders regarding the nomination of directors to the VimpelCom Board. Accordingly, there are no such agreements or communications to disclose.

## II. RESPONDENTS' RESPONSE TO THE POINTS AT ISSUE RAISED BY TELENOR EAST

1. Eco Telecom denies that it violated the Shareholders Agreement between itself and Telenor East when it nominated candidates for election to the Board. Because the parties had failed to reach agreement with respect to the ninth candidate, the nominating provision of the Shareholders Agreement ceased to have any force or effect, and Eco Telecom was entitled pursuant to Article 53.1 of the JSC Law to nominate up to nine candidates to the Board.

2. Telenor East has waived its right to enforce Section 4.01 of the Shareholders Agreement if the parties fail to agree upon the ninth candidate as required by that provision.

3. CTF does not believe that there is a need for an endorsement to the Guarantee Agreement because Eco Telecom continues to hold a stake in VimpelCom and is still controlled by CTF. Moreover, the transfer of Eco Telecom from Eco Holdings to Alfa Telecom did not affect the validity of CTF's and Eco Holdings's guarantees, which both remain valid. In the interest of resolving the parties' disputes, however, Alfa Telecom is prepared to execute an endorsement at Telenor East's request.

4. Telenor East is not entitled to an award requiring Eco Telecom to comply with the nomination provisions of Section 4.01 and Section 4.03 of the Shareholders Agreement. Telenor East is not entitled to an award requiring CTF, Eco Holdings or Alfa Telecom to comply with their respective obligations under the Guarantee Agreement because the Respondents are in compliance for the reasons stated above.

## III. RESPONDENTS' RESPONSE TO THE RELIEF SOUGHT BY TELENOR EAST

Respondents expressly deny any entitlement of the Claimant to the relief sought in these proceedings. Specifically, for the reasons set forth above, Telenor East is *not* entitled to:

1. An award (a) compelling Eco Telecom to withdraw its fifth nominee to the Board and to allocate its votes to ensure the election of candidates to the Board; (b) restraining and enjoining Eco Telecom, together with its officers, agents, servants and employees, and all persons in active concert or participation with them, from violating, or causing or inducing any other person to violate, directly or indirectly, the provisions of Section 4.01 and Section 4.03 of the Shareholders Agreement; (c) compelling Eco Holdings and CTF to comply with their respective obligations under Section 2.1 and Section 3.1(d) of the Guarantee Agreement, including, without limitation, the delivery to Telenor East of Alfa Telecom's endorsement of the Guarantee Agreement; and (d) directing Eco Telecom to disclose all agreements and communications concerning the nominations of directors with other persons or entities making such nominations, and affording Telenor East discovery regarding the facts and circumstances concerning the nomination of David Haines and the attempted nomination of Alexander Isozimov on January 30, 2006;

- 14 -

2. Its costs and disbursements in this action, including, without limitation, Telenor East's reasonable attorneys' and expert fees, in accordance with Article 38 of the UNCITRAL Rules;

3. Interest on the sums claimed in subparagraph (2) until paid; or

4. Any other relief.

## COUNTERCLAIM

33. Eco Telecom asserts a counterclaim against Telenor East for acting in bad faith in violation of the Shareholders Agreement by, in concert with Telenor and contrary to Russian law as well as the Shareholders Agreement, controlling, using, directing and conspiring with its nominated directors to promote its interests and the interests of Telenor at the expense of the interests of VimpelCom and its other shareholders, including Eco Telecom.

34. During all relevant times and for all relevant matters alleged herein, Telenor East was the alter ego and agent of Telenor, which used Telenor East as a mere department to perpetrate the wrongdoing alleged herein. Accordingly, Telenor has been, and continues to be, bound by the terms of the Shareholders Agreement and has had and continues to have the obligations stated therein for Telenor East.

35. Alternatively, Respondents allege that Telenor and Telenor East (either together or with none or any of Telenor's other affiliates, the "Telenor Group") were co-conspirators and acted as each other's agents to perpetrate the wrongs alleged herein.

36. The actions of the Telenor Group violated the duty of good faith that is implied in any agreement governed by New York law such as the Shareholders Agreement and violated Russian law governing the duties and responsibilities of corporate directors.

**The Telenor Group Directed its Nominees to Place Telenor's Interests Above Those of VimpelCom and its Shareholders, In Violation of Its Duties to VimpelCom and Eco Telecom**

37.     The Telenor Group has directed its nominees on VimpelCom's Board to take actions that advanced Telenor's interests at the expense of those of VimpelCom and its shareholders, including Eco Telecom. In one recent example, as set forth above, at paragraphs 12 through 17, the Telenor Group's attempt to block VimpelCom's ultimate acquisition of WellCom has been detrimental to VimpelCom and its shareholders, including Eco Telecom. Respondents hereby adopt by reference the allegations of ¶¶ 12 through 17, above.

38.     At the Telenor Group's direction, and in contravention of what would have been most beneficial for VimpelCom and its shareholders, Telenor East's nominees to the VimpelCom Board (a) attempted to block the WellCom acquisition and (b) successfully voted down VimpelCom's budget.

39.     As part of the Telenor Group, Telenor East, through its nominees to the VimpelCom Board, took the above-described actions in bad faith in violation of the duty of good faith implied in every contract governed by New York law. By directing its nominees to VimpelCom's Board to promote Telenor's interests at the expense of VimpelCom's and its shareholders', specifically Eco Telecom's, Telenor East acted in bad faith and violated the duty of good faith implicit in the Shareholders Agreement.

40.     Telenor East's actions also violated Russian law governing the duties and responsibilities of corporate directors. Pursuant to Article 71 of the JSC Law, Telenor East's nominees to VimpelCom's Board were obligated, "when exercising their rights and performing duties, [to] operate in the interests of [VimpelCom] and exercise their rights and perform duties with respect to [VimpelCom] reasonably and in good faith." By choosing to champion the interests of Telenor instead of those of VimpelCom, the Telenor Group caused Telenor East's nominees to the Board to violate their duties to VimpelCom and its shareholders, including Eco Telecom. Notably, as a VimpelCom shareholder possessing at

least one percent of the issued common stock of VimpelCom, Eco Telecom has standing under Article 71 of the JSC Law to apply for relief in connection with this violation.

### IV. POINTS AT ISSUE RAISED BY COUNTERCLAIM

1. By directing Telenor East's nominees to the VimpelCom Board to attempt to block the WellCom acquisition and to vote down VimpelCom's budget, did the Telenor Group act in bad faith and cause Telenor East's nominees to fail to fulfil their duties under Russian law to VimpelCom and its shareholders, including Eco Telecom?

2. Did Telenor East breach its duty of good faith under New York law and the Shareholders Agreement by its legal and public opposition to the WellCom transaction and by directing Telenor East's nominees to the VimpelCom Board to attempt to block the WellCom acquisition and to vote down VimpelCom's budget?

### V. RELIEF SOUGHT BY RESPONDENTS

Respondents seek:

1. A declaration that Section 4.01 of the Shareholders Agreement is not enforceable in the absence of Eco Telecom's approval of Telenor East's fifth proposed nominee (the ninth nominee);

2. A declaration that Telenor East waived any rights it might have had to enforce Section 4.01 in the absence of Eco Telecom's approval of the ninth nominee;

3. A declaration that Telenor East is estopped from enforcing Section 4.01 in the absence of Eco Telecom's approval of the ninth nominee;

4. An award directing the Telenor Group to cease causing Telenor East's nominees to the VimpelCom board to breach their duties and responsibilities under Russian law;

5. An award of compensatory damages to Eco Telecom for the harm it suffered as a result of Telenor East causing Telenor East's nominees to the VimpelCom Board to breach their duties and responsibilities under Russian law and Telenor East's breach of its duty of good faith under New York law and the Shareholders Agreement by its legal and public opposition to the WellCom transaction;

6. Their costs and disbursements in this action, including, without limitation, their reasonable attorneys' and expert fees, in accordance with Article 38 of the UNCITRAL Arbitration Rules;

7. Interest in the sums claimed in subparagraph (6) until paid; and

8. Such other and further relief as the Arbitrators deem just and proper.

Dated: May 1, 2006

LOVELLS

By: *Joe Cyr*
Joe Cyr
Lisa J. Fried

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Respondents

- 18 -