# EXHIBIT J

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:

TELENOR EAST INVEST AS,

                Claimant,

                Snarøyveien 30
                N-1331 Fornebu
                Norway

      -and-

ECO TELECOM LIMITED,
ECO HOLDINGS LIMITED, and
CTF HOLDINGS LIMITED

                Respondents,

                10/8 International
                Commercial Centre
                Casemates Square
                Gibraltar

**MEMORANDUM IN SUPPORT OF CLAIMANT'S OBJECTION TO REQUESTS
FOR PRODUCTION OF DOCUMENTS ON GROUNDS OF RELEVANCE**

# TABLE OF AUTHORITIES

## CASES

Blatt v. Sochet, 199 A.D.2d 451, 606 N.Y.S.2d 11 ..................................................................9

Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16.................................10

Dalton v. Educational Testing Service, 87 N.Y.2d 384, 639 N.Y.S.2d 977...........................11

Hotcaveg v. Lightman, 27 Misc.2d 573, 211 N.Y.S.2d 533..................................................8, 9

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 ..............................................................6

In re Miller Art Co., 4 A.D.2d 1032, 168 N.Y.S.2d 732 ..........................................................7

Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20 ...................................10

National Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.,
  25 A.D.3d 309, 807 N.Y.S.2d 344................................................................................11, 12

Primavera Laboratories, Inc. v. Avon Products, Inc., 279 A.D.2d 505, 747 N.Y.S.2d 16 ......7

R.H. Macy & Co. v. Nat'l Sleep Products, Inc., 39 N.Y.2d 268, 383 N.Y.S.2d 562................6

Renis Fabrics Corp. v. Millworth Converting Corp., 25 Misc.2d 280, 201 N.Y.S.2d 13 ....7, 9

Rinaolo v. Berke, 188 A.D.2d 297, 590 N.Y.S.2d 490.............................................................9

Sammarco v. Pepsi-Cola Bottling Co., 1 A.D.3d 341, 767 N.Y.S.2d 59 .................................7

Skillgames, LLC v. Brody, 1 A.D.3d 247, 767 N.Y.S.2d 418 ................................................12

Silver v. Pilzer, 59 A.D.2d 680, 398 N.Y.S.2d 662...............................................................7, 8

Smith v. Shields Sales Corp., 22 A.D.3d 942, 802 N.Y.S.2d 764............................................6

Sprecht v. Netscape Communications Corp., 306 F.3d 17 ..................................................9, 10

Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574...............................................6

Sutton Associates v. Lexis-Nexis, 196 Misc.2d 30, 761 N.Y.S.2d 800 ..................................11

## ARTICLES

David Rivkin, *Commentary on the New Rules of Evidence in International Commercial
  Arbitration* (2004)...................................................................................................................4

By letter of May 22, 2006, Respondents Eco Telecom Limited ("Eco Telecom"), Eco Holdings Limited ("Eco Holdings") and CTF Holdings Limited ("CTF") requested Claimant Telenor East Invest AS ("Telenor East") to produce six broadly described categories of documents. That letter describes three of those categories—numbered 4, 5 and 6—as relating, in whole or in part, to a counterclaim asserted by Eco Telecom.

Telenor East hereby objects to the requests for documents in those three categories, and moves for an order that such documents need not be produced, pursuant to Articles 3 and 9 of the International Bar Association Rules on the Taking of Evidence in International Commercial Arbitration (the "IBA Rules") which permit objections to requests for production and direct tribunals, "at the request of a party ... [to] exclude from evidence or production any document, statement oral testimony or inspection for ... lack of sufficient relevance or materiality." IBA Rules Art. 9(2).

## I. INTRODUCTION

Eco Telecom's counterclaim seeks relief based on allegations that Telenor East's nominees to the board of Open Joint Stock Company "Vimpel-Communications" ("VimpelCom") harmed the company and its shareholders through their opposition to VimpelCom's acquisition of Closed Joint Stock Company "Ukrainian Radio Systems," a small Ukrainian mobile operator doing business under the name "WellCom" ("WellCom"), from a group of offshore entities. The Respondents now seek discovery of three vaguely described categories of documents supposedly relevant to that counterclaim.[1]

---

[1] The overbreadth of Respondents' request is an additional ground for objection. Rule 3.3 of the IBA Rules, which governs this proceeding, provides as follows:
    A request to Produce shall contain:
        (a) (i) a description of a requested document sufficient to identify it, or

2

These requests are improper because there is no basis upon which this Tribunal can exercise jurisdiction over Eco Telecom's counterclaim. The Shareholders Agreement dated as of May 30, 2001 (the "Shareholders Agreement" or the "Agreement") between Telenor East and Eco Telecom that is at issue in this Proceeding does not govern the general relationship between Telenor East and Eco Telecom as shareholders of VimpelCom, nor does it address, in any manner at all, the conduct of the parties' nominees as members of VimpelCom's Board of Directors (the "Board"). Rather, it is a narrowly drawn agreement, which addresses only the transfer of the parties' VimpelCom shares to third parties; the procedures relating to the nomination of candidates for election to VimpelCom's Board; and a prohibition on the parties' granting proxies for their VimpelCom shares or entering into any agreement or understanding with third parties that would circumvent the nomination provisions.

Eco Telecom's counterclaim, which asserts that Telenor East's nominees to the VimpelCom Board somehow breached their duties—presumably, to VimpelCom and its shareholders—by opposing the WellCom acquisition, bears no relation to those contractual provisions. Putting to one side the fact that Telenor East's nominees in fact acted in good faith to protect VimpelCom from entering into an economically pointless and highly suspect transaction, the counterclaim's assertions concern questions of

---

(ii) a description in sufficient detail (including subject matter) of a narrow and specific requested category of documents that are reasonably believed to exist;
(b) a description of how the documents requested are relevant and material to the outcome of the case; and
(c) a statement that the documents requested are not in the possession, custody or control of the requesting Party, and of the reason why that Party assumes the document requested to be in the possession, custody or control of the other Party.

Eco Telecom's request, which simply call for "all documents" concerning particular topics, fall far short of that standard. Instead, like the proposals for extensive and time consuming discovery previously advanced by Eco Telecom and rejected by the Tribunal, they appear to be modeled on the prevailing practice in

3

corporate governance and of directors' duties that bear no relationship to the Shareholders Agreement. In that regard, it is striking that Eco Telecom's counterclaim nowhere refers to any of the Agreement's substantive provisions, nor could it do so.

## II. STATEMENT OF FACTS

Telenor East and Eco Telecom entered into the Shareholders Agreement in May 2001. Statement of Defense and Counterclaim ¶¶ 2-4. The Agreement's substantive provisions—found in Articles III and IV— address only three issues: (1) the procedure for and effect of a party's transfer of shares to a third party, (2) the process by which the parties will nominate directors for election to VimpelCom's Board, and (3) a prohibition on the parties' entering into other agreements regarding the nomination of candidates for election to the Board or the voting of their respective shares. Amended Statement of Claim, Exh. B §§ 3.01-3.04, 4.01 and 4.03.

The Agreement designates arbitration under the UNCITRAL Rules as the means for resolving "[a]ny and all disputes and controversies arising under, relating to or in connection with [the] Agreement," and states that it "shall be governed by, and construed in accordance with, the laws of the State of New York, United States of America, without giving effect to any conflicts of laws principles thereof which would result in the application of the laws of another jurisdiction." *Id.* at Exh. B § 6.14.

Telenor East filed its Amended Statement of Claim in this arbitration against Eco Telecom on March 31, 2006, alleging that Eco breached those provisions of the Shareholder Agreement relating to the nomination of candidates for election to the Board.

---

American litigation, an approach not followed in international arbitration. *See* David Rivkin, *Commentary on the New Rules of Evidence in International Commercial Arbitration* (2004).

*Id.* at pp. 21 and 22. The Respondents filed their Statement of Defense and Counterclaim on May 1, 2006, and their amended Counterclaim on May 16, 2006.

The allegations underlying Eco Telecom's counterclaim are, in essence, that the VimpelCom Board members nominated by Telenor East, supposedly on the instructions of Telenor East and its parent, Telenor ASA, opposed VimpelCom's acquisition of WellCom and voted against VimpelCom's proposed annual budget, to the detriment of VimpelCom and its shareholders. *Id.* at ¶¶ 37-38. Eco Telecom then asserts that those actions (1) constitute bad faith in that they violate the duty of good faith implied into the Shareholders Agreement by New York law and (2) run afoul of Article 71 of the Russian Federal Law on Joint Stock Companies ("JSC Law")[2], which Eco Telecom states requires directors to perform their corporate duties "reasonably and in good faith." *Id.* at ¶¶ 39-40.[3]

By letter dated May 22, 2006, the Respondents propounded requests for six very broad and vaguely defined categories of documents. According to that letter, a copy of which is attached hereto as Exhibit A, three of those categories relate, at least in part, to Eco Telecom's counterclaim. Those categories are:

> 4.     All documents concerning VimpelCom's 2005 acquisition of Closed Joint Stock Company "Ukrainian Radio Systems" ("WellCom"), including but not limited to all documents concerning (a) WellCom's value; (b) Telenor East's and its parents' and affiliates' views regarding the acquisition; (c) actions taken by Telenor East's nominees to VimpelCom's Board of Directors in connection with the acquisition; and (d) Telenor East's allegations that Eco Telecom forced VimpelCom to acquire WellCom when the acquisition was not in VimpelCom's best interests.

---

[2] Federal Law No. 208-FZ "On Joint Stock Companies" of December 26, 1995 (as amended).
[3] In fact, Article 71(1) of the JSC Law states that "when members of the board of directors ... of a company ... exercise their rights and perform their obligations, they shall act in the interests of the company and shall exercise their rights and perform their obligations with respect to the company in a *diligent and reasonable manner*" (emphasis added).

5. All documents concerning internal communications between or among one or more of Telenor East, any of its affiliates and/or parents, and one or more of Telenor East's nominees to VimpelCom's Board of Directors, from September 2004 through and including the present, concerning (a) VimpelCom's contemplated acquisition of WellCom and/or (b) any shareholder or director vote to approve VimpelCom's budget.

6. All documents concerning the allegation, at Paragraph 27 of Telenor East's Amended Statement of Claim, that, in 2004 and the first quarter of 2005, Alexey Reznikovich "attempted to broker a sale of WellCom to Golden Telecom," including but not limited to all documents concerning the price of that sale.

Exh. A at p. 2.

## III. DISCUSSION

### A. The Counterclaim is not Arbitrable.

#### 1. The Counterclaim Bears no Relationship to the Shareholders Agreement.

Under New York law, determining the scope of an arbitration agreement is a matter of contract interpretation. *See, e.g., R.H. Macy & Co. v. Nat'l Sleep Products, Inc.*, 39 N.Y.2d 268, 270, 383 N.Y.S.2d 562, 563 (1976); *Smith v. Shields Sales Corp.*, 22 A.D.3d 942, 943, 802 N.Y.S.2d 764, 765 (App. Div. 3d Dep't 2005) ("[T]he right to arbitrate is manifestly a matter of contract.") (citation and internal marks omitted). *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (*quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The rule under New York law is that:

> It is well settled that a court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute, and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration. The threshold determination [is] whether there is a "clear, unequivocal and extant agreement to arbitrate" . . . . and arbitration clauses, as

6

> contractual agreements, must be enforced according to their terms, even if the result is bifurcated litigation.

*Primavera Laboratories, Inc. v. Avon Products, Inc.*, 279 A.D.2d 505, 505-06, 747 N.Y.S.2d 16, 17 (App. Div. 1st Dep't 2002); *see also Renis Fabrics Corp. v. Millworth Converting Corp.*, 25 Misc. 2d 280, 282, 201 N.Y.S.2d 13, 17 (N.Y. Sup. Ct. 1960) ("The fact that a party might have signified willingness to arbitrate some disputes does not bind him to arbitrate all other disputes merely because of the general identity of the adversary interests or the interrelationship of the transactions involved.").

In this case, the Agreement's narrowly circumscribed substantive provisions refute any presumption of arbitrability arising from its broadly worded arbitration clause because no relationship exists between the matters raised in Eco Telecom's counterclaim and those provisions. There is simply no way in which the counterclaim's allegations that Telenor East caused its nominees for election to the Board to breach their fiduciary duties relates, however broadly, to the substantive provisions of the Shareholders Agreement, which are set out in Articles III and IV thereof. Such alleged actions do not "arise under," "relate to" or occur "in connection" with the Agreement, and accordingly are not arbitrable. *See, e.g., Sammarco v. Pepsi-Cola Bottling Co.*, 1 A.D.3d 341, 342, 767 N.Y.S.2d 59, 60 (App. Div. 2d Dep't 2003); *In re Miller Art Co.*, 4 A.D.2d 1032, 1032, 168 N.Y.S.2d 732, 732 (App. Div. 1st Dep't 1957) (stating that "[w]hile the stockholders' agreement in question contained a broad arbitration clause relating to any dispute that might arise out of the agreement, the issue is whether the subject of the disputes is covered in any manner by the agreement").

New York courts have declined to compel arbitration on a number of occasions on facts similar to those presented here. For example, *Silver v. Pilzer*, 59 A.D.2d 680,

7

681, 398 N.Y.S.2d 662, 662 (App. Div. 1st Dep't 1977), involved a shareholders agreement that "outlined the rights and responsibilities related to capitalization and transfers of the stock of the corporation." The agreement also contained a broad arbitration clause, which stated that "[a]ny and all disputes and controversies arising out of or in connection with this agreement . . . shall be determined by arbitration . . . ." *Id.* (first ellipsis in original). The parties to the agreement fell into a dispute regarding the management of the corporation, prompting one party to serve a demand for arbitration. *See id.* The Appellate Division held that the claim was beyond the scope of the arbitration clause, despite the breadth of its clause:

> The shareholders' agreement deals with capitalization of the corporation and related matters, but does not contain provisions related to management of the corporation. The arbitration clause contained in it cannot therefore be invoked to compel arbitration of the management dispute outlined in the demand for arbitration. This Court will not by implication or construction extend the scope of the agreement to arbitrate and we have therefore directed a stay of arbitration.

*Id.* (internal citation omitted).

Similarly, the shareholders agreement at issue in *Hotcaveg v. Lightman*, 27 Misc.2d 573, 574, 211 N.Y.S.2d 533, 534 (N.Y. Sup. Ct. 1960), contained a broad arbitration clause. When certain of the shareholders sued others for breach of an alleged "fiduciary and trust obligations as directors and officers of the corporation," the defendants sought to stay the action in favor of arbitration. *Id.* The Court denied the motion, explaining:

> While it is true that the complaint in part charges [a] violation of the stockholders' agreement . . . the gravamen of the cause of action alleged is the claimed violation by the individual defendants of their fiduciary and trust obligations as directors and officers . . . . It can hardly be said that such alleged violations constitute, in the language of the arbitration clause, "Any dispute or disagreement among the

8

> parties with respect to any provisions of this agreement or its interpretation." It is clear that the . . . [stockholders'] agreement executed by the parties was intended to cover only the relationship among the stockholders, *inter se.*

*Id.*

Numerous other cases hold that broad arbitration clauses in shareholders agreements do not operate to compel arbitration of disputes unrelated to the rights actually conferred and duties actually imposed by those agreements. *See, e.g., Rinaolo v. Berke*, 188 A.D.2d 297, 297, 590 N.Y.S.2d 490, 491 (App. Div. 1st Dep't 1992) (holding claim not arbitrable where shareholders agreement contained arbitration clause, and dispute related to corporate management); *Blatt v. Sochet*, 199 A.D.2d 451, 453, 606 N.Y.S.2d 11, 13 (App. Div. 2d Dep't 1993) (determining that broad arbitration provision in shareholders agreement did not allow arbitration of dispute regarding issues not governed by that agreement); *Renis Fabrics*, 25 Misc. 2d at 282, 201 N.Y.S.2d at 17 (declining to compel arbitration where the agreement "in no way evidence an attempt to govern every possible dispute between the principals here involved").

Like their State counterparts, New York's federal courts routinely decline to order arbitration, despite the presence of a broad arbitration clause, where the claim at issue bears no relationship to the subject matter of the agreement containing that clause. In *Sprecht v. Netscape Communications Corp.*, 306 F.3d 17, 25, 35-36 (2d Cir. 2002), for example, the defendant successfully moved to stay a pending arbitration over a dispute supposedly arising out of the license agreement between the parties. In affirming the lower Court's rejection of arbitration, the Court of Appeals wrote:

> Where the scope of an arbitration agreement is broad there arises a presumption of arbitrability; if, however, the dispute is in respect of a matter that, on its face, is clearly collateral to the contract, then a court should test

9

> the presumption by reviewing the allegations underlying
> the dispute and by asking whether the claim alleged
> implicates issues of contract construction or the parties'
> rights and obligations under it. . . [C]laims that present no
> question involving construction of the contract, and no
> question in respect of the parties' rights and obligations
> under it, are beyond the scope of the arbitration
> agreement.

*Id.* at 36 (quoting *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 23 (2d Cir. 1995); *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (refusing to compel arbitration, explaining that the arbitrability question turns on "whether [a claim] extends to matters beyond the parties' contractual relationship").

In fact, the express language of the Shareholders Agreement makes it clear that its subject matter is restricted to the conduct of the parties as shareholders. Section 4.02 provides that:

> No person executing this Agreement who is, or who
> becomes during the term hereof, a Director makes any
> agreement or understanding herein in his or her capacity as
> such Director, and the agreements set forth herein shall in
> no way restrict any Director in the exercise of his or her
> fiduciary duties as a Director. *Each shareholder executes
> and delivers this Agreement solely in his, her or its
> capacity as the record and beneficial owner of such
> Shareholder's shares.*

*Id.* at Exh. B § 4.02. (emphasis added). Eco Telecom should be held to the bargain it made, and its efforts to expand the scope of the arbitration agreement to which it agreed should be rejected.

Accordingly, Eco Telecom's counterclaim is beyond the scope of this arbitration. The counterclaim stands entirely apart from the Agreement, complains of conduct not governed by the Agreement and concerns rights and duties outside the scope of the

10

Agreement. Respondents' request for documents relating to that counterclaim are, therefore, improper.

### 2. The Counterclaims' References to the Implied Duty of Good Faith Does Not Create a Link to the Shareholders Agreement.

Although the Shareholders Agreement has nothing to do with directors' duties and is expressly governed by New York law, Eco Telecom's counterclaim appears to be based largely on Eco Telecom's view of the duties imposed on directors by Russian law. However, in an apparent effort to tie its counterclaim to the Shareholders Agreement, Eco Telecom refers to the duty of good faith implied into every contract by New York law. Those references do not supply the missing link between the counterclaim and the Shareholders Agreement.

While every contract governed by New York law does contain an implied covenant of good faith and fair dealing, that covenant simply requires a party to exercise good faith in performing the terms of the contract itself. *See, e.g., Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995). The implied covenant, however, does not confer any rights or impose any duties beyond those set out in the contract itself. As one New York appellate court recently observed, "[t]he covenant of good faith and fair dealing cannot be construed so broadly as to effectively nullify other express terms of the contract, or to create independent contractual rights." *National Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*, 25 A.D.3d 309, 310, 807 N.Y.S.2d 344, 346 (App. Div. 1st Dep't 2006); *see also Sutton Associates v. Lexis-Nexis*, 196 Misc. 2d 30, 34, 761 N.Y.S.2d 800, 804 (N.Y. Sup. Ct. 2003) ("Although a duty of good faith and fair dealing is implicit in every contract . . . the duty cannot be used to

create independent obligations beyond those agreed upon and stated in the express language of the contract.").

Accordingly, Eco Telecom's claim of bad faith performance by Telenor East's nominees to the VimpelCom Board bears no relation to the Shareholders Agreement because no part of the counterclaim relates to Telenor East's performance of its obligations under the Shareholders Agreement. The counterclaim makes no allegations whatsoever concerning Articles III and IV—the only substantive provisions of the Shareholders Agreement—much less allegations that Telenor East performed any of those obligations in bad faith. Nor does the counterclaim suggest that Telenor East somehow prevented Eco Telecom from enjoying its contractual rights under those provisions. The conduct of which it does complain—that Telenor East's nominees to the VimpelCom Board disapproved of a corporate acquisition and failed to approve a corporate budget—is not even remotely governed by the Shareholders Agreement.

New York cases uniformly hold that a plaintiff who cannot state a viable claim for breach of contract necessarily has no claim for breach of the contract's implied covenant of good faith and fair dealing. *See, e.g., National Union*, 25 A.D.2d at 310, 807 N.Y.S.2d at 345 ("The court properly dismissed plaintiff's claim for breach of defendants' duty of good faith and fair dealing since it is merely a substitute for plaintiff's non-viable contract claims."); *Skillgames, LLC v. Brody*, 1 A.D.3d 247, 252, 767 N.Y.S.2d 418, 423 (App. Div. 1st Dep't 2003) ("A claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim."). Here, Eco Telecom has not stated a claim for breach of contract, failing as it does to cite a single term of the Shareholders Agreement that Telenor East is supposed to have

12

offended. Because the counterclaim does not state a claim for a contractual breach, it cannot state a claim for breach of the implied covenant of good faith and fair dealing. *See, e.g., Sutton Assoc.*, 96 Misc. 2d at 34, 761 N.Y.S.2d at 804 (dismissing claim for breach of implied duty of good faith where plaintiff "fail[ed] to identify any specific contractual provision actually breached by [the defendant]").

Eco Telecom's purported Russian law claims against the members of the Board nominated by Telenor East have nothing to do with the Shareholders Agreement, and Eco Telecom's claim of bad faith under New York law does not arise from, relate to or concern the Agreement; indeed, it states no claim at all. Accordingly, the counterclaim is not arbitrable, and any and all discovery sought in aid of that counterclaim should be quashed.

### 3. Telenor East has not Waived its Objection to Arbitration.

Telenor East's Amended Statement of Claim outlines and describes Eco Telecom's improper actions with regard to the acquisition of WellCom by VimpelCom. However, Telenor East's Amended Statement of Claim does not seek any relief regarding the WellCom acquisition, nor are the facts of that transaction at issue in this proceeding.[4] Rather, the transaction is described solely to place in context Eco Telecom's conduct in violation of the Shareholders Agreement. The only issues presented to the Tribunal are the narrow question of Eco Telecom's compliance with its obligations under Article IV of the Shareholders Agreement.

---

[4] There are currently three ongoing, separate proceedings in the Russian courts (two commenced by Telenor East against VimpelCom and one commenced by Telenor East against VimpelCom and the sellers of WellCom) challenging various aspects of the WellCom acquisition. Neither Eco Telecom nor any other member of the Alfa Group Consortium is a party to any of these proceedings.

At the Organizational Meeting, Eco Telecom's counsel suggested that the references in the Statement of Claim to the WellCom acquisition somehow expanded the scope of this proceeding. Because no relief of any kind has been sought in this proceeding by Telenor East regarding that transaction, and because there is no occasion for the Tribunal to rule on any aspect of that acquisition, that suggestion is unfounded. The proceeding is limited to Eco Telecom's breach of a narrowly drawn contract, and questions regarding the WellCom acquisition and the conduct of members of VimpelCom's Board—both those nominated by Telenor East and those nominated by Eco Telecom—must be resolved in other fora.[5]

---

[5] As discussed at the Organizational Meeting, if the Tribunal were to rule that the WellCom acquisition were at issue in this proceeding, Telenor East would then raise its own claims regarding the WellCom transaction, as well as other improper conduct by Eco Telecom and its nominees on the VimpelCom Board, vastly enlarging the scope of this proceeding.

## IV. CONCLUSION

Eco Telecom's counterclaim is beyond the scope of these proceedings, and all document requests based on that counterclaim should be quashed.

Dated: June 12, 2006

By: /s/ Robert L. Sills
Robert L. Sills
ORRICK, HERRINGTON &
SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

- and -

Peter O'Driscoll
ORRICK, HERRINGTON &
SUTCLIFFE LLP
25 Old Broad Street
London EC2N 1HQ
DX: 557 London/ City
United Kingdom
Telephone: +44 20 7562 5000
Facsimile: +44 20 7628 0078

Attorneys for Claimant

# Lovells

590 Madison Avenue
New York, NY 10022
Tel: +1 212 909 0600
Fax: +1 212 909 0660

May 22, 2006

By electronic mail and first-class mail

Direct line (212) 909-0658
lisa.fried@lovells.com
Direct fax (212) 909-0660

Our ref NYLJF/102096.1
Matter ref V2093/00016

Robert L. Sills, Esq.
Orrick Herrington & Sutcliffe
666 Fifth Avenue
New York, NY 10103-0001

RE: TELENOR EAST INVEST AS v. ECO TELECOM LIMITED, ET AL.

Dear Bob:

Pursuant to the timetable and procedures agreed to at the May 9, 2006 conference in Geneva in the above-referenced arbitration, Respondents hereby request that Telenor East Invest AS ("Telenor East"), and any of its parents or affiliates in possession, custody or control of responsive documents,[1] produce the following documents to the New York offices of Respondents' counsel, Lovells, no later than June 12, 2006:

1. All documents relating to the allegations in Telenor East's Amended Statement of Claim that Eco Telecom Limited ("Eco Telecom") violated the shareholders agreement dated May 30, 2001, between Telenor East and Eco Telecom (the "Shareholders Agreement") in connection with the 2005 and 2006 Board of Directors election for Open Joint Stock Company "Vimpel-Communications" ("VimpelCom").

These documents are relevant to, among other things, Telenor East's claim that Eco Telecom violated the Shareholders Agreement.

2. All documents concerning the parties' negotiation of the Shareholders Agreement, including but not limited to all documents concerning the parties' discussion and understanding of Section 4.01 of the Shareholders Agreement.

These documents are relevant to, among other things, Telenor East's allegation that Eco Telecom violated the Shareholders Agreement when it nominated candidates in advance of the 2005 and 2006 Board of Directors election for VimpelCom.

---

[1] The IBA Rules on the Taking of Evidence in International Commercial Arbitration, with which the parties have agreed to comply, define "document" as "a writing of any kind, whether recorded on paper, electronic means, audio or visual recordings or any other mechanical or electronic means of storing or recording information."

Alicante Amsterdam Beijing Berlin Brussels Chicago Dusseldorf Frankfurt Hamburg Ho Chi Minh City Hong Kong London Madrid Milan Moscow Munich New York Paris Prague Rome Shanghai Singapore Tokyo Warsaw  Associated offices: Budapest Zagreb
Lawyers (USA) Solicitors Rechtsanwälte Avocats Advocaten Notarissen Avvocati Abogados

Robert L. Sills, Esq.          - 2 -          May 22, 2006

3. All documents concerning the VimpelCom Board of Directors elections from May 30, 2001 through and including the present, including but not limited to all documents concerning (a) the nomination process that preceded each such election; (b) the parties' internal and external communications concerning the nominating process and the elections; and (c) the parties' course of conduct with one another with respect to the nomination process in advance of the VimpelCom Board of Directors elections over that time period.

These documents are relevant to, among other things, Telenor East's allegation that Eco Telecom violated the Shareholders Agreement when it nominated candidates in advance of the 2005 and 2006 VimpelCom Board of Directors elections.

4. All documents concerning VimpelCom's 2005 acquisition of Closed Joint Stock Company "Ukrainian Radio Systems" ("WellCom"), including but not limited to all documents concerning (a) WellCom's value; (b) Telenor East's and its parents' and affiliates' views regarding the acquisition; (c) actions taken by Telenor East's nominees to VimpelCom's Board of Directors in connection with the acquisition; and (d) Telenor East's allegations that Eco Telecom forced VimpelCom to acquire WellCom when the acquisition was not in VimpelCom's best interests.

These documents are relevant to, among other things, Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom and Respondents' counterclaim that Telenor East wrongfully attempted to block the acquisition.

5. All documents concerning internal communications between or among one or more of Telenor East, any of its affiliates and/or parents, and one or more of Telenor East's nominees to VimpelCom's Board of Directors, from September 2004 through and including the present, concerning (a) VimpelCom's contemplated acquisition of WellCom and/or (b) any shareholder or director vote to approve VimpelCom's budget.

These documents are relevant to, among other things, Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom and Respondents' counterclaim that Telenor East violated the Shareholders Agreement by championing the interests of itself and its parent company at the expense of the interests of VimpelCom and its shareholders, including Eco Telecom.

6. All documents concerning the allegation, at Paragraph 27 of Telenor East's Amended Statement of Claim, that, in 2004 and the first quarter of 2005, Alexey Reznikovich "attempted to broker a sale of WellCom to Golden Telecom," including but not limited to all documents concerning the price for that sale.

These documents are relevant to, among other things, Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom and Respondents' counterclaim that Telenor East wrongfully attempted to block the acquisition.

The documents requested herein are not in the possession, custody or control of Respondents. Respondents believe that these documents may be in the possession, custody or control of Telenor East and/or its affiliates and parents because they are either internally generated or circulated documents or other documents that may have been received by Telenor East and/or its affiliates and parents or of which Telenor East and/or its affiliates and parents may have access or control.

NYCLIB01/NYLJF/102096.1          Lovells

Robert L. Sills, Esq.                             - 3 -                                May 22, 2006

Please let us know if you have any questions.

Very truly yours,

*Lisa J. Fried*

Lisa J. Fried