# EXHIBIT  K

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:


**TELENOR EAST INVEST AS,**

Claimant,

Snarøyveien 30
N-1331 Fornebu
Norway

-and-

**ECO TELECOM LIMITED,**
**ECO HOLDINGS LIMITED, and**
**CTF HOLDINGS LIMITED,**

Respondents,

10/8 International
Commercial Centre
Casemates Square
Gibraltar


**MEMORANDUM IN OPPOSITION TO CLAIMANT'S OBJECTION**
**TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

Respondents Eco Telecom Limited ("Eco Telecom"), Eco Holdings Limited ("Eco Holdings") and CTF Holdings Limited ("CTF," and, collectively with Eco Telecom and Eco Holdings, "Respondents") submit this memorandum in opposition to Telenor East Invest AS's ("Telenor East" or "Claimant") motion for an order quashing requests 4, 5, and 6 of Respondents' document request served on May 22, 2006 (the "Requests").

## PRELIMINARY STATEMENT

The documents that Telenor East seeks to avoid producing are necessary not only to the counterclaim Respondents have properly asserted in this arbitration (the "Counterclaim"), but also to the very allegations that Telenor East has itself asserted. Telenor East's motion should be denied because: (a) the arbitration clause in the Shareholders Agreement is exceedingly broad -- surely broad enough to cover Respondents' Counterclaim (which is tied to duties arising under the Shareholders Agreement); (b) the Counterclaim about which Telenor East complains concerns facts and issues identical to those raised by Telenor East; and (c) at a minimum, the materials sought by Respondents are necessary to defend against Telenor East's allegations.

Arbitration clauses like the one in the Shareholders Agreement are consistently construed as having the broadest possible scope. As set forth below, the clause -- which designates arbitration as the means for resolving "[a]ny and all disputes and controversies arising under, *relating to or in connection with* [the] Agreement" (emphasis added) -- undoubtedly covers a counterclaim involving the actions of directors nominated pursuant to the Shareholders Agreement's provisions. Those actions constitute a breach, among other things, of the duty of utmost good faith that is contained in the Shareholders Agreement pursuant to New York law, which the parties chose to govern the Agreement.

Respondents are further entitled to the materials sought because their Counterclaim and Telenor East's claim concern the same general issue (the management of VimpelCom) and arise out of the same facts and circumstances. Telenor East devoted *thirteen paragraphs* of its Amended Statement of Claim to discussion of events surrounding VimpelCom's

- 2 -

acquisition of "Ukrainian Radio Systems" ("WellCom"), yet now takes the extraordinary position that those allegations were included "solely to place in context Eco Telecom's conduct...." (Claimant's Memo., p. 13.) Telenor East may not inhibit, through this motion, Respondents' ability to defend themselves and to respond to those allegations.

Moreover, to resolve this motion, the Tribunal need not even reach the question of the arbitrability of Respondents' Counterclaim. This is because, even if they had not asserted their Counterclaim, Respondents would be entitled to receive the materials sought by the Requests because the materials are necessary to Respondents' defenses.

Accordingly, Telenor East's motion should be denied.

## STATEMENT OF FACTS

Telenor East and Eco Telecom entered into the Shareholders Agreement in May 2001. Amended Statement of Claim ¶ 12. The parties entered into the agreement because they "believe[d] it [was] in the best interests of [VimpelCom] that provision be made for the continuity and stability of the business and management of [VimpelCom]." Amended Statement of Claim, Ex. B, p. 3. The Agreement designated arbitration under the UNCITRAL Rules as the means for resolving "[a]ny and all disputes and controversies arising under, relating to or in connection with [the] Agreement," and provided that it "shall be governed by, and construed in accordance with, the laws of the State of New York, United States of America, without giving effect to any conflicts of laws principles thereof which would result in the application of the laws of another jurisdiction." *Id.* at Ex. B §§ 6.13, 6.14.

Telenor East filed its Amended Statement of Claim on March 31, 2006, alleging that Eco Telecom breached those provisions of the Shareholders Agreement relating to the nomination of candidates for election to the Board. *Id.* at pp. 21-22. Telenor East's Amended Statement of Claim included an extended discussion of the facts surrounding VimpelCom's acquisition, late last year, of WellCom. *Id.* at ¶¶ 25-28; 46-54. Among other things, Telenor East alleged that Eco Telecom, in October 2004, "began a campaign to take effective control of VimpelCom and to destroy Telenor East's rights in VimpelCom...." *Id.* at ¶ 25. Telenor

- 3 -

East continued: "Eco Telecom's assault on VimpelCom's corporate governance centered on Eco Telecom's efforts to force VimpelCom to acquire WellCom, a Ukrainian mobile operator, over the objections of Telenor East." *Id.* Telenor East went on to make unfounded allegations concerning (a) WellCom's value; (b) Telenor East's (and its nominees to the VimpelCom Board's) views regarding the acquisition; (c) actions taken by Telenor East's nominees to VimpelCom's Board in connection with the acquisition; and (d) Eco Telecom allegedly forcing VimpelCom to acquire WellCom when the acquisition was not in VimpelCom's best interests. *Id.* at ¶ 28 (alleging that the proposed price to acquire WellCom, $206 million, was "grossly in excess of the value of the Company" and that that is why Telenor East's nominees to VimpelCom's Board all voted against the proposed acquisition); ¶ 46 (characterizing Eco Telecom's actions as taken "[i]n an effort to bypass the Board and to circumvent the minority protections to which it had agreed in the Charter and the Shareholders Agreement, and attempt to have the acquisition of WellCom approved").

As part of the extended discussion of the WellCom acquisition in its Amended Statement of Claim, Telenor East alleged that Alexey Reznikovich, the current CEO of Altimo, "attempted to broker a sale of WellCom to Golden Telecom." *Id.* at ¶ 27. Telenor East further alleged that "[t]he price for that proposed acquisition by Golden was $100,000,000 in cash, and the assumption of $23,500,000 in debt." *Id.*

Respondents filed their Amended Statement of Defense and Counterclaim on May 16, 2006. In their Counterclaim, Respondents allege that Telenor East violated the Shareholders Agreement by, in concert with its parent company Telenor ASA ("Telenor"), controlling, using, directing and conspiring with its nominated directors to promote its interests and the interests of Telenor at the expense of the interests of VimpelCom and its other shareholders, including Eco Telecom. Amended Statement of Defense and Counterclaim, ¶ 33. Specifically, Respondents alleged that Telenor East's actions violated the duty of good faith that is implied in any agreement governed by New York law, such as the Shareholders Agreement. *Id.* at ¶ 36-39.

- 4 -

By letter dated May 22, 2006, Respondents propounded requests for six narrowly-tailored categories of documents. Claimant's Memo., Ex. A.[1] Pursuant to Rule 3.3 of the International Bar Association Rules on the Taking of Evidence in International Commercial Arbitration (the "IBA Rules") that govern document exchange in this proceeding, Respondents included in their Requests (a) descriptions in sufficient detail of narrow and specific requested categories of documents they reasonably believe to exist, (b) descriptions of how the documents requested are relevant and material to the outcome of the case, and (c) a statement that the documents requested are not in the possession, custody or control of Respondents, and of the reason why Respondents assume the documents requested to be in the possession, custody or control of Telenor East. *See, e.g.*, Requests 4, 5 and 6:

> 4. All documents concerning VimpelCom's 2005 acquisition of Closed Joint Stock Company "Ukrainian Radio Systems" ("WellCom"), including but not limited to all documents concerning (a) WellCom's value; (b) Telenor East's and its parents' and affiliates' views regarding the acquisition; (c) actions taken by Telenor East's nominees to VimpelCom's Board of Directors in connection with the acquisition; and (d) Telenor East's allegations that Eco Telecom forced VimpelCom to acquire WellCom when the acquisition was not in VimpelCom's best interests.

These documents are relevant to, among other things, *Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom* and Respondents' counterclaim that Telenor East wrongfully attempted to block the acquisition.

> 5. All documents concerning internal communications between or among one or more of Telenor East, any of its affiliates and/or parents, and one or more of Telenor East's nominees to VimpelCom's Board of Directors, from September 2004 through and including the present, concerning (a) VimpelCom's contemplated acquisition of WellCom and/or (b) any shareholder or director vote to approve VimpelCom's budget.

These documents are relevant to, among other things, *Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom* and Respondents' counterclaim that Telenor East violated the Shareholders Agreement by championing the interests of itself and its parent company at the expense of the interests of VimpelCom and its shareholders, including Eco Telecom.

---

[1] Respondents note that Telenor East propounded many more requests (39 in total), and Respondents have agreed, subject to certain objections, to produce any non-privileged documents responsive to those requests, to the extent that such documents exist and are within Respondents' possession, custody or control.

- 5 -

6. All documents concerning the allegation, at Paragraph 27 of Telenor East's Amended Statement of Claim, that, in 2004 and the first quarter of 2005, Alexey Reznikovich "attempted to broker a sale of WellCom to Golden Telecom," including but not limited to all documents concerning the price for that sale.

These documents are relevant to, among other things, *Telenor East's allegations that Eco Telecom took inappropriate actions in order to force VimpelCom to acquire WellCom* and Respondents' counterclaim that Telenor East wrongfully attempted to block the acquisition.

Claimant's Memo., Ex. A (emphasis added).[2]

Thus, Respondents made it clear that the Requests relate to both Telenor East's allegations in the main claim and to Respondents' Counterclaim. It is telling -- and unfortunate -- that Telenor East makes no mention of this in its motion papers and fails to note Respondents' rationale for the Requests, which is highly relevant here.

## DISCUSSION

I.    **The Counterclaim Is Arbitrable Under The Broad Arbitration Clause And, Therefore, The Requests Are Proper**

Given its expansive language and the strong public policy favoring broad interpretation of arbitration clauses, the arbitration clause contained in the Shareholders Agreement clearly covers Respondents' Counterclaim. As a general matter, New York and United States courts routinely underscore the strong public policy in favor of arbitration. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (citing "strong federal policy favoring arbitration as an alternative means of dispute resolution"); *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248-251 (2d Cir. 1991) (same); *Alemac Ins. Svs., Inc. v. Risk Transfer Inc.*, No. 03 Civ. 1162(WHP), 2003 WL 22024070, *3 (S.D.N.Y. Aug. 28, 2003) ("The United States Supreme Court has recognized a strong policy favoring arbitration, and has advised courts that 'any doubts

---

[2] Respondents satisfied the last prong of IBA Rule 3.3's requirements by stating, "The documents requested herein are not in the possession, custody or control of Respondents. Respondents believe that these documents may be in the possession, custody or control of Telenor East and/or its affiliates and parents because they are either internally generated or circulated documents or other documents that may have been received by Telenor East and/or its affiliates and parents or of which Telenor East and/or its affiliates and parents may have access or control." Claimant's Memo., Ex. A, p. 2.

- 6 -

concerning the scope of arbitrable issues should be resolved in favor of arbitration'.") (citing

*Moses H. Cone Memorial Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24-25 (1983)); *State v.*

*Philip Morris Inc.*, 813 N.Y.S.2d 71, 75 (1st Dep't 2006) ("Arbitration is strongly favored

under New York law.").

   This approach to the scope of arbitration clauses is black letter law. *See ACE*, 307

F.3d at 29 ("[W]here, as here, the existence of an arbitration agreement is undisputed, doubts

as to whether a claim falls within the scope of that agreement should be resolved in favor of

arbitrability.") (citation omitted); *Threlkeld*, 923 F.2d at 248 (same); *Cap Gemini Ernst &*

*Young U.S. LLC v. Arentowicz*, No. 04 Civ. 0299(DAB), 2004 WL 1386145, *4 (S.D.N.Y.

June 22, 2004) ("[C]ourts should, given the federal policy favoring arbitration agreements,

broadly interpret the clauses that authorize arbitration.") (citation omitted); *Alemac*, 2003 WL

22024070 at *3 ("A court should compel arbitration unless 'it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute'.") (citation omitted); *Philip Morris*, 813 N.Y.S.2d at 75.

   As noted above, the arbitration clause in the present case is particularly broad. The

clause's language -- encompassing "[a]ny and all disputes and controversies arising under,

relating to or in connection with [the Shareholders Agreement]" -- is widely acknowledged to

be among the broadest possible for an arbitration clause. *See, e.g., Pervel Industries, Inc. v.*

*TM Wallcovering, Inc.*, 871 F.2d 7, 8-9 (2d Cir. 1989) (clause providing for arbitration of

"any controversy 'relating to' " a purchase and sale contract broad enough to cover claims

stemming from an alleged collateral agreement to provide plaintiffs with an exclusive

distributorship); *Oldroyd v. Elmira Savings Bank FSB*, 134 F.3d 72, 76 (2d Cir. 1998)

(finding that an arbitration clause requiring "[a]ny dispute, controversy or claim arising under

or in connection with" was to be interpreted broadly); *State v. Philip Morris Inc.*, 813

N.Y.S.2d 71, 75 (1st Dep't 2006) (noting that the term "relating to" "certainly evince[s] a

broad arbitration clause"). Indeed, the arbitration clause here is broader even than the model

arbitration clause recommended in the UNCITRAL Rules, which itself is viewed as being broad.[3]

Respondents' Counterclaim falls within the very broad arbitration clause in the Shareholders Agreement in at least three ways.

*First*, as noted above, Respondents allege that Telenor East violated an obligation under the Shareholders Agreement (*i.e.*, the duty of good faith) that is implied pursuant to the New York law the parties chose. In other words, the obligation to act in good faith, *in accordance with New York law*, only came into existence because of the Shareholders Agreement.[4] Therefore, a claim that Telenor East breached its contractual obligation must be deemed a dispute or controversy arising under the Shareholders Agreement or, at a minimum, a dispute or controversy that is related to or connected with the Agreement. It is significant that Telenor East does not cite any case where a counterclaim for a breach of the implied duty of good faith was dismissed as non-arbitrable.[5]

*Second*, it is clear that Telenor East's claims and the Respondents' Counterclaim both cover the same general issue -- the management of VimpelCom. That issue, in turn, directly relates to the provisions of the Shareholders Agreement. As also noted above, the Shareholders Agreement states that its purpose is to provide "for the continuity and stability of the business and management of [VimpelCom]." Amended Statement of Claim, Ex. B, p. 3. In the Amended Statement of Claim, Telenor East asserts that Respondents' alleged failure to abide by the terms of the Shareholders Agreement "has caused, and continues to cause, real and irreparable injury to Telenor East's bargained-for *right to maintain the continuity and*

---

[3] The UNCITRAL Rules, in a footnote to Article 1, para. 1, suggests use of the following language: "[a]ny dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof..." The clause in the instant case additionally covers "any *and all* claims" and disputes and controversies *"in connection with."* (emphasis added).

[4] This duty is distinct from, and in addition to, the fiduciary duties that the Telenor East nominees owe under Russian law (which do not directly derive from the Shareholders Agreement, but rather the general duties imposed by the law). Given that the Counterclaim for breach of the New York duty of good faith is interrelated with the allegation that the nominees also violated co-existing duties under Russian law, the Tribunal should hear both prongs of Respondents' counterclaim.

[5] The cases cited by Telenor East are discussed, and distinguished, below.

- 8 -

*stability of the business and management of VimpelCom*." Amended Statement of Claim, ¶ 67 (emphasis added). Telenor East is referring, quite clearly, to a right that arises out of the Shareholders Agreement.

It should be noted that Telenor East does not limit its claim for injury to the alleged violations of the technical provisions in Articles III and IV of the Shareholders Agreement. It also claims that Respondents' actions in connection with the WellCom acquisition are further examples of Respondents' purported effort to curtail or disrupt the management and voting rights afforded to Telenor East under the Shareholders Agreement. In discussing the WellCom acquisition, Telenor East asserts that:

- Eco Telecom had begun "a campaign to take effective control of VimpelCom and to destroy Telenor East's rights in VimpelCom" (Amended Statement of Claim, ¶ 25);

- Eco Telecom's actions at the time of the WellCom acquisition were an "assault on VimpelCom's corporate governance" (*id.*); and

- Eco Telecom's same actions were "an effort to bypass the Board and to circumvent the minority protections to which it had agreed in the Charter and the Shareholders Agreement." Amended Statement of Claim, ¶ 46.[6]

Clearly, Telenor East asserts that the above allegations relate to the dispute in this arbitration; otherwise, there would be no legitimate reason for Telenor East to include them in the Amended Statement of Claim. The Counterclaim directly responds to Telenor East's allegations regarding the WellCom acquisition, and it is based on the fact that it was Telenor East's nominees who acted inappropriately and illegally, thereby affecting Eco Telecom's voting and management rights in VimpelCom. Viewed in this context, there can be little doubt that the Counterclaim is well within the scope of the arbitration clause in the Agreement.

*Third*, the foregoing discussion illustrates that the Counterclaim arises out of the same facts and circumstances alleged in the Amended Statement of Claim. As such, it is analogous to a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure

---

[6] Telenor East cannot now claim that the references to the WellCom acquisition are merely provided for "context." Telenor East has alleged that the purported effort to affect its voting and management rights was inextricably linked to the WellCom acquisition.

- 9 -

(requiring that a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction). It would be artificial, inefficient and inappropriate for the Tribunal to find that Telenor East may make allegations about the WellCom acquisition but that Respondents must bring any directly related issues in a separate litigation. Indeed, the breadth of the arbitration clause demonstrates that the parties intended for all such claims and counterclaims to be decided by the Tribunal.

The cases cited by Telenor East in its memorandum of law are easily distinguished. Each case involved arbitration clauses that are far narrower in scope than the arbitration clause in the Shareholders Agreement. Moreover, many of the claims in those cases were clearly outside the scope of the arbitration clause, in contrast to the situation here.[7] Also, none of the cases cited by Telenor East arose in the context of a counterclaim.

---

[7] *See Primavera Laboratories, Inc. v. Avon Products. Inc.*, 297 A.D.2d 505, 505-506 (1st Dep't 2002) (arbitration clause was "clearly narrow in scope and limited to one category of claim"); *Renis Fabrics Corp. v. Millworth Converting Corp.*, 25 Misc. 2d 280, 282 (N.Y. Sup. Ct. 1960) (narrow arbitration clause did not include the term "related to"; arbitration clause was contained in an unrelated contract between the parties signed after the first contract in dispute); *Sammarco v. Pepsi-Cola Bottling Co.*, 1 A.D.3d 341, 342 (2d Dep't 2003) (narrow arbitration clause limited to disputes or disagreements "concerning the interpretation of [sic] application of the provisions of this Agreement", and did not include the term "related to"); *In re Miller Art Co.*, 4 A.D.2d 1032, 1032 (1st Dep't 1957) (dispute concerning employee compensation following death or disability clearly outside scope of arbitration clause in a stockholder's agreement concerning devolution of stocks); *Silver v. Pilzer*, 59 A.D.2d 680, 681 (1st Dep't 1977) (narrow arbitration clause did not include the term "related to": dispute concerning management of the corporation clearly outside scope of arbitration clause in an agreement which dealt only with the limited issues of capitalization of the corporation rather than broader management and voting rights); *Hotcaveg v. Lightman*, 27 Misc. 2d 573, 574 (N.Y. Sup. Ct. 1960) (narrow arbitration clause covered only disputes "with respect to any provisions of this agreement or its interpretation", and did not include the term "related to": arbitration clause was contained in a pre-incorporation agreement and not in an agreement governing management and voting rights); *Rinaolo v. Berke*, 188 A.D.2d 297, 297 (1st Dep't 1992) (defendant's motion to compel arbitration based on an arbitration clause contained in an entirely different contract, and was mutually exclusive from the contract at issue; contracts

- 10 -

## II.   Respondents Would be Entitled to the Materials Sought Even Had They Not Asserted Their Counterclaim

The Tribunal need not even reach the question of the arbitrability of Respondents' Counterclaim to resolve this motion, because Respondents would be entitled to the materials sought by Requests 4, 5 and 6 even had they not asserted the Counterclaim.  As shown below, Requests 4, 5 and 6 seek documents necessary for Respondents to evaluate and defend against Telenor East's claims.  For this reason alone, the Panel should deny Telenor East's motion.

### Request 4

Respondents are entitled to receive the four categories of documents specified in Request 4:

- Documents concerning "WellCom's value" are necessary to evaluate and defend against Telenor East's allegation that the proposed price that VimpelCom would pay for WellCom "was grossly in excess of the value of the Company."  Amended Statement of Claim, ¶ 28.

- Documents concerning "Telenor East's and its parents' and affiliates' views regarding the acquisition" are necessary to evaluate and defend against Telenor East's allegations that "Eco Telecom's assault on VimpelCom's corporate governance centered on Eco Telecom's efforts to force VimpelCom to acquire WellCom...over the objections of Telenor East" (*id.*, ¶ 25) and "Telenor East's nominees all voted against the proposed acquisition of WellCom on grounds that the proposed price...was grossly in excess of the value of the Company." *Id.*, ¶ 28.

- Documents concerning "actions taken by Telenor East's nominees to VimpelCom's Board of Directors in connection with the acquisition" are necessary to evaluate and defend against the same allegations as set forth in the paragraph immediately preceding this one.

---

involved partially different parties); *Blatt v. Sochet*, 199 A.D.2d 451, 452-453 (2d Dep't 1993) (narrow arbitration clause only covered controversies "arising under this agreement", and did not include the term "related to"; in any event, Appellate Court compelled arbitration in this case); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 25, 35-36 (2d Cir. 2002) (arbitration clause was contained in an entirely separate licensing agreement from the one in dispute; licensing agreement in dispute was limited in scope, and governed only disputes under that agreement, since it included an integration clause stating that the "Agreement constitutes the entire agreement between the parties concerning the subject matter hereof"); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (motion to compel arbitration waived by defendant due to his delay in bringing the motion; defamation claim was clearly unrelated to the contract terms to provide dyeing and warehousing services, and parties could not have reasonably expected, or even contemplated, arbitration clause to cover such a defamation claim).

- Documents concerning "Telenor East's allegations that Eco Telecom forced VimpelCom to acquire WellCom when the acquisition was not in VimpelCom's best interests" are necessary to evaluate and defend against Telenor East's allegation that Eco Telecom took action "[i]n an effort to bypass the Board and to circumvent the minority protections to which it had agreed in the Charter and the Shareholders Agreement, and attempt to have the acquisition of WellCom approved...." *Id.*, ¶ 46.

Respondents need and are entitled to receive these documents in order to defend against Telenor East's allegations. Accordingly, Telenor East should be directed to furnish the requested documents.

### *Request 5*

Similarly, even in the absence of the Counterclaim, Respondents would need and would be entitled to receive the documents requested in Request 5 in order to evaluate and defend against Telenor East's allegation that Telenor East objected to the WellCom acquisition (Amended Statement of Claim, ¶ 25), and that the reason that Telenor East's nominees voted against the proposed acquisition was that the proposed price was in excess of the value of WellCom. *Id.*, ¶ 28. The documents sought by Request 5 are clearly relevant to questions surrounding why Telenor East's nominees to the Board opposed the WellCom transaction. Accordingly, they would properly have been the subject of the Requests even in the absence of the Counterclaim.

### *Request 6*

Request 6 is another obvious example of a request that is appropriate even if there were no Counterclaim, inasmuch as it *explicitly* seeks documents underlying one of *Claimant's* -- not Respondents' -- allegations. Respondents are undoubtedly entitled to the evidence underlying Claimant's explicit allegations. Here, where Telenor East alleges that Alexey Reznikovich attempted to broker a sale of WellCom to Golden Telecom (Amended Statement of Claim, ¶ 27), Respondents have requested the documents substantiating that allegation, and this request is appropriate.

- 12 -

## <u>CONCLUSION</u>

Respondents' document requests call for materials necessary to both defend against Telenor East's claim, and to support Respondents' Counterclaim. For the foregoing reasons, Telenor East's motion should be denied, and Telenor East should be directed to furnish all documents responsive to Requests 4, 5 and 6.[8]

Dated: June 21, 2006

Respectfully submitted,

By: _Pieter Van Tol_
Pieter Van Tol
Lisa J. Fried
Eric Z. Chang

LOVELLS
590 Madison Avenue
New York, New York 10022
Tel: (212) 909-0658
Fax: (212) 909-0660

*Attorneys for Respondents*

---

[8] To the extent Telenor East is seeking dismissal of the Counterclaim on the grounds of non-arbitrability, and if the Tribunal is inclined to treat this motion as one that goes to the merits of the Counterclaim, Respondents reserve all their rights, including the right to ask the Tribunal for leave to amend the Counterclaim (even though, as shown above, Respondents believe that such an amendment is not necessary).