# EXHIBIT  Z



# OPEN JOINT STOCK CO VIMPEL COMMUNICATIONS (VIP)

10 12 8TH MARCH ST
MOSCOW RUSSIA, U2 125083
70959745888
http://www.vimpelcom.com/

## SC 13D/A

**SCHEDULE 13D AMENDMENT NO. 28**
Filed on 03/08/2007
File Number 005−48091



SCHEDULE Information Provided by Global Securities Information, Inc.
800 436 1114
www.gsionline.com

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 13D

### Under the Securities Exchange Act of 1934
### (Amendment No. 28)*

## OPEN JOINT STOCK COMPANY
## "VIMPEL–COMMUNICATIONS"
(Name of Issuer)

Common Stock, nominal value 0.005 rubles per share
(Title of Class of Securities)

68370R109
(CUSIP Number)

Franz Wolf
Eco Telecom Limited
Suite 2
4 Irish Place
Gibraltar
+350 41977
(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

March 8, 2007
(Date of Event which Requires Filing of this Statement)

With a copy to:

Alexey Reznikovich
Altimo Holdings & Investments Limited
Str. Novy Arbat, build. 21
GSP–2
119992 Moscow, Russia
+7 (495) 981–4449

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d–1(e), 13d–1(f) or 13d–1(g), check the following box.  ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d–7 for other parties to whom copies are to be sent.

*   The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 (the "Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

1. Name of Reporting Persons I.R.S. Identification Nos. of above persons (entities only)

**Eco Telecom Limited**
**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**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

**AF; OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6. Citizenship or Place of Organization

**Gibraltar**

| Number of Shares Beneficially Owned by Each Reporting Person With | | |
|---|---|---|
| | 7. Sole Voting Power | **14,526,707 shares of Common Stock*** |
| | 8. Shared Voting Power | **0** |
| | 9. Sole Dispositive Power | **14,526,707 shares of Common Stock*** |
| | 10. Shared Dispositive Power | **0** |

11. Aggregate Amount Beneficially Owned by Each Reporting Person

**14,526,707 shares of Common Stock***

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares    ☐

13. Percent of Class Represented by Amount in Row (11)

**28.3% of Common Stock***

14. Type of Reporting Person

**OO, HC**

---

\*  Eco Telecom is also the direct beneficial owner of 6,426,600 (100%) shares of the Issuer's type-A voting preferred stock (the "Preferred Stock"), which, together with the total number of shares of the Issuer's common stock owned by Eco Telecom, represents approximately 36.3% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of certain forward transaction, Eco Telecom shall have the right to receive 1,177,325 shares of Common Stock in the Issuer, represented by 4,709,300 American Depositary Receipts of the Issuer on March 14, 2007. See Item 6. Assuming the acquisition of the Common Stock described in Item 6, the Reporting Person would be, taking the Preferred Stock into account, the beneficial owner of 38.4% of the Issuer's outstanding voting capital stock.

1. Name of Reporting Persons I.R.S. Identification Nos. of above persons (entities only)

   **Altimo Holdings & Investments Limited**
   **000–00–0000**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6. Citizenship or Place of Organization

   **British Virgin Islands**

| Number of Shares Beneficially Owned by Each Reporting Person With | 7. Sole Voting Power<br>**14,526,707 shares of Common Stock\*** |
| | 8. Shared Voting Power<br>**0** |
| | 9. Sole Dispositive Power<br>**14,526,707 shares of Common Stock\*** |
| | 10. Shared Dispositive Power<br>**0** |

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,526,707 shares of Common Stock\***

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares    ☐

13. Percent of Class Represented by Amount in Row (11)

    **28.3% of Common Stock\***

14. Type of Reporting Person

    **OO, HC**

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type–A voting preferred stock (the "Preferred Stock"), which, together with the total number of shares of the Issuer's common stock that the reporting Person may be deemed to beneficially own, represents approximately 36.3% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of certain forward transaction, Eco Telecom shall have the right to receive 1,177,325 shares of Common Stock in the Issuer, represented by 4,709,300 American Depositary Receipts of the Issuer on March 14, 2007. See Item 6. Assuming the acquisition of the Common Stock described in Item 6, the Reporting Person would be, taking the Preferred Stock into account, the beneficial owner of 38.4% of the Issuer's outstanding voting capital stock.

1. Name of Reporting Persons I.R.S. Identification Nos. of above persons (entities only)

   **CTF Holdings Limited**
   **000−00−0000**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **AF; OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)     ☐

6. Citizenship or Place of Organization

   **Gibraltar**

| Number of Shares Beneficially Owned by Each Reporting Person With | 7. Sole Voting Power **14,526,707 shares of Common Stock\*** |
| | 8. Shared Voting Power **0** |
| | 9. Sole Dispositive Power **14,526,707 shares of Common Stock\*** |
| | 10. Shared Dispositive Power **0** |

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,526,707 shares of Common Stock\***

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares     ☐

13. Percent of Class Represented by Amount in Row (11)

    **28.3% of Common Stock\***

14. Type of Reporting Person

    **OO, HC**

---

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type–A voting preferred stock (the "Preferred Stock"), which, together with the total number of shares of the Issuer's common stock that the reporting Person may be deemed to beneficially own, represents approximately 36.3% of the Issuer's outstanding voting stock. See Item 5. Pursuant to the terms of certain forward transaction, Eco Telecom shall have the right to receive 1,177,325 shares of Common Stock in the Issuer, represented by 4,709,300 American Depositary Receipts of the Issuer on March 14, 2007. See Item 6. Assuming the acquisition of the Common Stock described in Item 6, the Reporting Person would be, taking the Preferred Stock into account, the beneficial owner of 38.4% of the Issuer's outstanding voting capital stock.

1. Name of Reporting Persons I.R.S. Identification Nos. of above persons (entities only)

   **Crown Finance Foundation**
   **000—00—0000**

2. Check the Appropriate Box if a Member of a Group
   (a) ☐
   (b) ☒

3. SEC Use Only

4. Source of Funds

   **AF; OO**

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6. Citizenship or Place of Organization

   **Liechtenstein**

| Number of Shares Beneficially Owned by Each Reporting Person With | | |
|---|---|---|
| 7. | Sole Voting Power | **14,526,707 shares of Common Stock*** |
| 8. | Shared Voting Power | **0** |
| 9. | Sole Dispositive Power | **14,526,707 shares of Common Stock*** |
| 10. | Shared Dispositive Power | **0** |

11. Aggregate Amount Beneficially Owned by Each Reporting Person

    **14,526,707 shares of Common Stock***

12. Check If the Aggregate Amount in Row (11) Excludes Certain Shares    ☐

13. Percent of Class Represented by Amount in Row (11)

    **28.3% of Common Stock***

14. Type of Reporting Person

    **OO**

---

\* The Reporting Person may be deemed to beneficially own 6,426,600 (100%) shares of the Issuer's type–A voting preferred stock (the "Preferred Stock"), which, together with the total number of shares of the Issuer's common stock that the reporting Person may be deemed to beneficially own, represents approximately 36.3% of the Issuer's outstanding voting capital stock. See Item 5. Pursuant to the terms of certain forward transaction, Eco Telecom shall have the right to receive 1,177,325 shares of Common Stock in the Issuer, represented by 4,709,300 American Depositary Receipts of the Issuer on March 14, 2007. See Item 6. Assuming the acquisition of the Common Stock described in Item 6, the Reporting Person would be, taking the Preferred Stock into account, the beneficial owner of 38.4% of the Issuer's outstanding voting capital stock.

**Item 1.**    Security and Issuer.

This Amendment No. 28 (this "Amendment") to the Statement on Schedule 13D relates to the common stock, nominal value 0.005 rubles per share (the "Common Stock"), of Open Joint Stock Company "Vimpel–Communications" ("VimpelCom"). The initial Statement on Schedule 13D, previously filed jointly by Eco Telecom Limited ("Eco Telecom"), Eco Holdings Limited, CTF Holdings Limited ("CTF Holdings") and Crown Finance Foundation ("Crown Finance") on June 11, 2001 (as amended and supplemented by Amendment Nos. 1 through 27, the "Statement"), is hereby amended and supplemented with respect to the items set forth in this Amendment. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Statement.

**Item 2.**    Identity and Background.

This Amendment is being filed on behalf of each of the following persons (each, a "Reporting Person" and, collectively, the "Reporting Persons"):

(i) Eco Telecom;

(ii) Altimo Holdings & Investments Limited (formerly known as Alfa Telecom Limited) ("Altimo");

(iii) CTF Holdings; and

(iv) Crown Finance.

The Statement, as amended hereby, relates to the shares of Common Stock held for the account of Eco Telecom.

### The Reporting Persons

Eco Telecom is a Gibraltar company, with its principal business address at 10/8 International Commercial Centre, Casemates Square, Gibraltar. The principal business of Eco Telecom is to function as a holding company. Current information concerning the identity and background of the directors and officers of Eco Telecom is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

Altimo is a British Virgin Islands company, with its principal address at P.O. Box 3339, Geneva Place, Second Floor, 333 Waterfront Drive, Road Town, Tortola, British Virgin Islands. The principal business of Altimo is to function as a holding company. Altimo is the sole shareholder of Eco Telecom and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of Altimo is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

CTF Holdings is a Gibraltar limited liability company, with its principal address at Suite 2, 4 Irish Place, Gibraltar. The principal business of CTF Holdings is to function as a holding company. CTF Holdings indirectly owns a majority of the shares of Altimo and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of CTF Holdings is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

Crown Finance is a Liechtenstein foundation, with its principal address at Am Schragen Weg 14, P.O. Box 1618, FL–9490, Vaduz, Liechtenstein. The principal business of Crown Finance is investment and management of the assets and capital of the foundation. Crown Finance is the sole shareholder of CTF Holdings and, in such capacity, may be deemed to be the beneficial owner of the shares of Common Stock held for the account of Eco Telecom. Current information concerning the identity and background of the directors and officers of Crown Finance is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

The "Supervisory Board" coordinates the strategic development of a group of affiliated entities, often referred to as the "Alfa Group Consortium," which group includes the Reporting Persons. In certain instances, the Supervisory Board issues recommendations regarding strategic business decisions to the entities that are members of the Alfa Group Consortium. Current information regarding the identity and background of the members of the Supervisory Board is set forth in Annex A hereto, which is incorporated by reference in response to this Item 2.

During the past five years, none of the Reporting Persons and, to the best of the Reporting Persons' knowledge, no other person identified in response to this Item 2, has been (a) convicted in a criminal proceeding or (b) a party to any civil proceeding or a judicial or administrative body of competent jurisdiction as a result of which such person was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws, or finding any violation with respect to such laws.

**Item 3.**       **Source and Amount of Funds or Other Consideration.**

No material change.

**Item 4.**       **Purpose of Transaction.**

Item 4 is hereby supplemented as follows:

The Reporting Persons are increasing their ownership of VimpelCom's Common Shares to increase their influence over the corporate actions to be taken by VimpelCom but may, from time to time, and reserve the right to, change their plans or intentions and take any and all actions that they deem appropriate to maximize the value of their investment in VimpelCom.

**Item 5.**       **Interest in Securities of the Issuer.**

Item 5 is hereby supplemented as follows:

(a) After giving effect to the transaction described in Item 6, the Reporting Persons may be the direct or indirect beneficial owner of an aggregate of 6,426,600 shares of the Issuers type-A voting preferred stock, representing 100% of such class of securities, and an aggregate of 15,704,032 shares of the Issuer's Common Stock. 3,140,250 shares of such Common Stock would be represented by 12,561,000 American Depositary Receipts of VimpelCom (the "VimpelCom ADRs").

(b) Each of the Reporting Persons may be deemed to have sole voting power to direct the voting and disposition of an aggregate of 15,704,032 shares of Common Stock (subject to the acquisition under the share forward transactions described in Item 6), which number would include Common Stock represented by 12,561,000 VimpelCom ADRs and an aggregate of 6,426,600 shares of the Issuer's type-A voting preferred stock held for the account of Eco Telecom.

(c) No material change.

(d) No material change.

(e) Not applicable.

**Item 6.**       **Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

In addition to the share forward transactions entered into by Eco Telecom and reported on the Reporting Persons Amendment 26 to Schedule 13D and Amendment 27 to Schedule 13D, on March 7, 2007, Eco Telecom entered into a share forward transaction (the "March 7 Forward Transaction") with Deutsche Bank AG, London Branch (the "Counterparty") relating to VimpelCom ADRs pursuant to a confirmation with a trade date of March 6, 2007 (which confirmation incorporates the terms of a 2002 International Swaps and Derivatives Association, Inc. ("ISDA") Master Agreement and the 2002 ISDA Equity Derivatives Definitions). Under the March 7 Forward Transaction, Eco Telecom has agreed to acquire 675,000 VimpelCom ADRs from the Counterparty for $82.6466 per VimpelCom ADR. The settlement date for the ADRs which are to be purchased by Eco Telecom will be March 14, 2007. Neither Eco Telecom nor any of the other Reporting Persons shall have any voting power with respect to any VimpelCom ADRs or the underlying shares in VimpelCom represented thereby until such time as delivery of the relevant VimpelCom ADRs to Eco Telecom takes place.

On March 8, 2007, Eco Telecom entered into a share forward transaction (the "March 8 Forward Transaction") with the Counterparty relating to VimpelCom ADRs pursuant to a confirmation with a trade date of March 7, 2007 (which confirmation incorporates the terms of a 2002 ISDA Master Agreement and the 2002 ISDA Equity Derivatives Definitions). Under the March 8 Forward Transaction, Eco Telecom has agreed to acquire 818,400 VimpelCom ADRs from the Counterparty for $84.1644 per VimpelCom ADR. The settlement date for the ADRs which are to be purchased by Eco Telecom will be March 14, 2007. Neither Eco Telecom nor any of the other Reporting Persons shall have any voting power with respect to any VimpelCom ADRs or the underlying shares in VimpelCom represented thereby until such time as delivery of the relevant VimpelCom ADRs to Eco Telecom takes place.

The preceding summary of the Forward Transactions is not intended to be complete and is qualified in its entirety by reference to the full text of the confirmation to the March 7 Forward Transaction, a conformed copy of which is attached hereto as Exhibit 99.1 and incorporated herein by reference, and the March 8 Forward Transaction, a conformed copy of which is attached hereto as Exhibit 99.2 and incorporated herein by reference.

Except as provided in the documents described in the Statement on Schedule 13D and Amendments Nos. 1 through 27 hereto (inclusive), or as set forth herein, neither Eco Telecom, Altimo, CTF Holdings or Crown Finance, nor to the best of Eco Telecom's, Altimo's, CTF Holdings' or Crown Finance's knowledge, any of the individuals named in Item 2 hereof has entered into any contracts, arrangements, understandings or relationships (legal or otherwise) with any person with respect to any securities of VimpelCom, including, but not limited to, transfer or voting of any securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or losses, or the giving or withholding of proxies.

**Item 7.**       **Material to be Filed as Exhibits.**

The Index of Exhibits is incorporated herein by reference.

## SIGNATURES

After reasonable inquiry and to the best of his or her knowledge and belief, each of the undersigned certifies that the information in this Amendment is true, complete and correct.

Date: March 8, 2007                     ECO TELECOM LIMITED

                                        By:    /s/ Marina Kushnareva
                                        Name:  Marina Kushnareva
                                        Title:  Director


Date: March 8, 2007                     ALTIMO HOLDINGS & INVESTMENTS LIMITED

                                        By:    /s/ Franz Wolf
                                        Name:  Franz Wolf
                                        Title:  Director


Date: March 8, 2007                     CTF HOLDINGS LIMITED

                                        By:    /s/ Franz Wolf
                                        Name:  Franz Wolf
                                        Title:  Director


Date: March 8, 2007                     CROWN HOLDINGS LIMITED

                                        By:    /s/ Franz Wolf
                                        Name:  Franz Wolf
                                        Title:  Attorney-in-Fact

## ANNEX A

### Directors and Officers of Eco Telecom Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Marina Kushnareva, Director (Russia) | Manager, CTF Holdings Limited | Suite 2 4 Irish Place, Gibraltar |

### Directors and Officers of Altimo Holdings & Investments Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Geoffrey Piers Hemy, Director (United Kingdom) | Director, Grand Financial Holding S.A. | 11 Boulevard Royale L–2449 Luxembourg |
| Georgia Karydes, Director (Cyprus) | Director, Feldmans Management (Overseas) Ltd. | 6 Nikou Georgiou Street Block C, Office 704 Nicosia 1098, Cyprus |
| Olga Kichatova, Director (Russia) | Senior Financial Advisor, CTF Holdings Limited | 3rd Floor, building 3, 6 Secbenovskiy per. Moscow Russia 109 034 |
| Alexey Reznikovich, Chief Executive Officer (Russia) | Chief Executive Officer, OOO ALTIMO Limited | Str. Novy Arbat, build. 21 GSP–2 119992 Moscow, Russia |
| Marina Kushnareva, Director (Russia) | Director, CTF Holdings Limited | Suite 2 4 Irish Place, Gibraltar |
| Franz Wolf, Director (Germany) | Director, CTF Holdings Limited | Suite 2 4 Irish Place, Gibraltar |

### Directors and Officers of CTF Holdings Limited

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Marina Kushnareva, Director (Russia) | Director, CTF Holdings Limited | Suite 2 4 Irish Place, Gibraltar |
| Franz Wolf, Director (Germany) | Director, CTF Holdings Limited | Suite 2 4 Irish Place, Gibraltar |

### Directors and Officers of Crown Finance Foundation

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Christian Rosenow, Director (Switzerland) | Financial Adviser | Talacker 35, 8001 Zurich, Switzerland |
| Dr. Norbert Seeger, Director (Liechtenstein) | Attorney, Arcomm Trust Company | Am Schragen Weg 14 P.O. Box 1618 FL–9490 Vaduz, Liechtenstein |
| Dr. Christian Zangerle, Director (Austria) | Attorney, Law Office of Dr. Norbert Seeger | Am Schragen Weg 14 P.O. Box 1618 FL–9490 Vaduz, Liechtenstein |

### Members of the Supervisory Board of Alfa Group Consortium

| Name/Citizenship | Principal Occupation | Business Address |
|---|---|---|
| Peter Aven, Director (Russia) | President, OJSC Alfa Bank | 11 Mashy Poryvaevoy Street 107078 Moscow, Russia |
| Alexandr Fain, Director (Russia) | Chief Executive Officer, Alfa Eco LLC | 21 Novy Arbat Street 121019 Moscow, Russia |
| Mikhail Fridman, Director (Russia) | Chairman of the Board of Directors, OJSC Alfa Bank | 9 Mashy Poryvaevoy Street 107078 Moscow, Russia |
| Michail Gamzin, Director (Russia) | Director General, OAO Russian Technologies | 3 rd Golutvinsky Pereulok 10 Building 6 109180 Moscow, Russia |
| German Khan, Director (Russia) | Executive Director, TNK–BP Management | 18/2, Schipok Street 115093 Moscow, Russia |
| Lev Khasis, Director (Russia) | Chief Executive Officer, X 5 Retail Group N.V. | Kapranova Pereulok 3 123242 Moscow, Russia |
| Alexander Kosiyanenko, Director (Russia) | Member of the Supervisory Board of X 5 Retail Group N.V. | Apt. 421 Mozhayskoye shosse 2, B 121356 Moscow, Russia |
| Andrei Kosogov, Director (Russia) | Chairman of the Board of Directors of Alfa Asset Management | 12 Prospect Academic Sakharov 107078 Moscow, Russia |
| Alexey Kuzmichev, Director (Russia) | Chairman of Board of Directors, Alfa Eco LLC | 21 Novy Arbat Street 121019 Moscow, Russia |
| Nigel John Robinson, Director (United Kingdom) | Director of Corporate Development, Finance and Control, Alfa Group Consortium | 6 Sechenovskiy Pereulok Building 3, Floor 3 119034 Moscow, Russia |
| Alexey Reznikovich, Director (Russia) | Chief Executive Officer, OOO ALTIMO Limited | Str. Novy Arbat, build. 21 GSP–2 119992 Moscow, Russia |
| Alexander Savin, Director (Russia) | Managing Director, A1 LLC | 12 Krasnopresenskaya Nab. International Trade Center 2, Entrance 7 123610 Moscow, Russia |

To the best of the Reporting Persons' knowledge:

(a)  None of the above persons holds any shares of Common Stock.

(b)  None of the above persons has any contracts, arrangements, understandings or relationships with respect to any shares of Common Stock.

**Index to Exhibits**

Exhibit 99.1          Confirmation, dated 7 March 2007, between Eco Telecom Limited and Deutsche Bank AG, London Branch.

Exhibit 99.2          Confirmation, dated 8 March 2007, between Eco Telecom Limited and Deutsche Bank AG, London Branch.



# OPEN JOINT STOCK CO VIMPEL COMMUNICATIONS (VIP)

10 12 8TH MARCH ST
MOSCOW RUSSIA, U2 125083
70959745888
http://www.vimpelcom.com/

## EX-99.1

CONFIRMATION, DATED 7 MARCH 2007
SC 13D/A Filed on 03/08/2007
File Number 005-48091



EDGAR Information provided by Global Securities Information, Inc.
800-555-9340
www.gsionline.com

Exhibit 99.1



Deutsche Bank AG London
Winchester House
1 Great Winchester Street
London EC2N 2DB

Telephone: +44 20 7545 8000

7 March, 2007

To:     Eco Telecom Limited ("Party B")
        4 Irish Place, Suite 2
        Gibraltar
        Fax: +350–41988
        Attention: Franz Wolf

From:   Deutsche Bank AG, London Branch ("Party A")

Re:     Forward Transaction – DB reference – LN : 164485

Dear Sirs,

The purpose of this letter agreement (this "**Confirmation**") is to confirm the terms and conditions of the transaction entered into between us on the Trade Date specified below (the "**Transaction**"). This Confirmation constitutes a "Confirmation" as referred to in the ISDA Master Agreement specified below.

1.    The definitions and provisions contained in the 2000 ISDA Definitions (the "**2000 Definitions**") and the 2002 ISDA Equity Derivatives Definitions (the "**2002 Definitions**" and, together with the 2000 Definitions, the "**Definitions**"), each as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between the 2002 Definitions and the 2000 Definitions, the 2002 Definitions will govern. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

      This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. This Confirmation shall supplement, form a part of, and be subject to an agreement in the form of the 2002 ISDA Master Agreement (the "**Agreement**") as if Party A and Party B had executed an agreement in such form (but without any Schedule except for the election of (i) the laws of England and Wales as the governing law and (ii) United States dollars as the Termination Currency). In the event of any inconsistency between provisions of that Agreement and this Confirmation, this Confirmation will prevail for the purpose of the Transaction to which this Confirmation relates. The parties hereby agree that no Transaction other than the Transaction to which this Confirmation relates shall be governed by the Agreement. For purposes of the 2002 Definitions, the Transaction is a Share Forward Transaction.

      Party A and Party B each represents to the other that it has entered into this Transaction in reliance upon such tax, accounting, regulatory, legal, and financial advice as it deems necessary and not upon any view expressed by the other.

2.    The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

       Trade Date:                        6 March 2007

       Seller:                            Party A

       Buyer:                             Party B

Chairman of the Supervisory Board: Clemens Börsig
Management Board: Josef Ackermann (Chairman), Hugo Banziger,
Tessen von Heydebreck, Anthony Di Iorio, Hermann–Josef Lamberti

Deutsche Bank AG is authorised under German Banking Law
(competent authority: BaFin – Federal Financial Supervising Authority)
and with respect to UK commodity derivatives business by the
Financial Services Authority; regulated by the Financial Services
Authority for the conduct of UK business; a member of The London
Stock Exchange. Deutsche Bank AG is a joint stock corporation with
limited liability incorporated in the Federal Republic of Germany HRB
No. 30 000 District Court of Frankfurt am Main; Branch Registration in
England and Wales BR000005. Registered address: Winchester House,
1 Great Winchester Street, London EC2N 2DB. Deutsche Bank Group
online: http://www.deutsche–bank.com

| | |
|---|---|
| Shares: | American Depository Receipts issued by The Bank of New York under the ADR Program of the Open Joint Stock Company "Vimpel–Communications", a Russian company (the "Issuer"), each representing 1/4th of a share of common stock, 0.005 rubles nominal value, of the Issuer |
| Number of Shares: | **675,000** |
| Forward Price: | **USD 82. 6466** |
| Prepayment: | Not Applicable |
| Variable Obligation: | Not Applicable |
| Exchange: | New York Stock Exchange |
| Related Exchange(s): | All Exchanges |
| Clearance System(s): | DTC |
| **Settlement Terms:** | |
| Physical Settlement: | Applicable |
| Settlement Currency: | USD |
| Settlement Price: | Forward Price |
| Settlement Date: | **March 14, 2007** |
| Settlement Method Election: | Not Applicable |
| Dividends: | |
| Dividend Period: | Second Period |
| Excess Dividend Amount: | The Paid Amount multiplied by the Number of Shares |
| Share Adjustments: | |
| Method of Adjustment: | Calculation Agent Adjustment |
| **Extraordinary Events:** | |
| Consequences of Merger Events: | |
| Share–for–Share: | Alternative Obligation |
| Share–for–Other: | Alternative Obligation |
| Share–for–Combined: | Alternative Obligation |
| Tender Offer: | Applicable |
| Consequences of Tender Offers: | |
| Share–for–Share: | Calculation Agent Adjustment |
| Share–for–Other: | Calculation Agent Adjustment |
| Share–for–Combined: | Calculation Agent Adjustment |

| | |
|---|---|
| Determining Party: | Seller |
| Composition of Combined Consideration: | Applicable |
| Nationalization, Insolvency or Delisting: | Cancellation and Payment |
| Determining Party: | Seller |
| Additional Disruption Events: | |
| Change in Law: | Applicable |
| Failure to Deliver: | Applicable |
| Insolvency Filing: | Applicable |
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Determining Party: | Seller |
| Non–Reliance: | Applicable |
| Agreements and Acknowledgments | |
| Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments | |

3.  Calculation Agent.                                              Party A

4.  Account Details:

   Account for payments to Party A:


   To be advised


   Account for delivery of Shares to Party B:


   To be advised


5.  Offices:


   (a)  The Office of Party A for the Transaction is   London; and


   (b)  The Office of Party B for the Transaction is   Not Applicable.

6.  Additional Representations of Party B:

Party B acknowledges that Party A will hedge its exposure under this Transaction by purchasing the Number of Shares in the open market in a commercially reasonable manner. In connection therewith, Party B hereby represents and warrants to Party A as follows:

(i) it is not entering into the Transaction (x) on the basis of, and is not aware of, any material non–public information with respect to the Issuer or the Shares, (y) in anticipation of, in connection with, or to facilitate a tender offer, or (z) to create actual or apparent trading activity in the Shares or to raise or depress or otherwise manipulate the price of the Shares; and it will not become aware of any material non–public information with respect to the Issuer or the Shares at any time prior to the Settlement Date; *provided* that if Party B is in breach of the immediately preceding representation, it shall provide an immediate notice to Deutsche Bank AG London Branch, Winchester House, 1 Great Winchester Street, London, EC2N 2DB, Attention: Colin Greene, Email: colin.greene@db.com, Tel: +44 207 545 8000 Fax: +44207 5470953 of that fact to Party A (but without disclosing to Party A the nature of the material non–public information that has caused it to be in such a breach) and Party B understands and acknowledges that Party A will cease purchases of such Shares upon receipt of such notice from Party B;

(ii) is in compliance with its reporting obligations under Section 13 of the Securities Exchange Act of 1934, as amended (the "Exchange Act") with respect to the Shares and will comply with such obligations by filing with the SEC the Schedule 13D/A including this Confirmation within 48 hours of the Trade Date;

(iii) its entry into the Transaction and Party A's purchases of Shares contemplated hereby do not and will not violate Rule 13e–1 or Rule 13e–4 under the Exchange Act;

3

(iv) neither it nor any of its affiliates will purchase any Shares during the period from the Trade Date to the Settlement Date and it will not enter into any arrangements (whether similar to this Transaction or not) pursuant to which any person were to purchase any Shares on its account during the period from the Trade Date to the Settlement Date;

(v) it is not a "U.S. person" (as defined in Regulation S ("**Regulation S**" under the US Securities Act of 1933, as amended (the "**Securities Act**") and the entry into this Transaction is an "offshore transaction" (as defined in Regulation S).

7.    Determination of the "Close-out Amount."

Party B agrees and acknowledges that if an Event of Default occurs with respect to which Party B is the Defaulting Party or if a Termination Event occurs with respect to which Party B is an Affected Party, then, Party A will determine the "Close-out Amount" for the Transaction based on the net proceeds received by it from the sale of the Number of Shares in arms' length good faith transaction, taking into account the fact that such Number of Shares will be sold at an illiquidity discount to the market price of the Shares at the time due to such Number of Shares being "restricted securities" that can only be sold in private transactions not involving a "public offering" (within the meaning of Section 4(2) under the Securities Act.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours sincerely,

**DEUTSCHE BANK AG, LONDON BRANCH**

By: /s/Andrew Dixon-Smith
Name: Andrew Dixon-Smith
Title: Legal Counsel

By: /s/Colin Greene
Name: Colin Greene
Title: Authorized Signatory

Confirmed as of the date first above written:

**ECO TELECOM LIMITED**

By: /s/Marina Kushnareva
Name: Marina Kushnareva
Title: Director

4



# OPEN JOINT STOCK CO VIMPEL COMMUNICATIONS (VIP)

10 12 8TH MARCH ST
MOSCOW RUSSIA, U2 125083
70959745888
http://www.vimpelcom.com/

## EX−99.2

**CONFIRMATION, DATED 8 MARCH 2007**
SC 13D/A Filed on 03/08/2007
File Number 005−48091



LIVEDGAR Information Provided by Global Securities Information, Inc.
800.669.
www.gsionline.com

Exhibit 99.2



Deutsche Bank AG London
Winchester House
1 Great Winchester Street
London EC2N 2DB

Telephone: +44 20 7545 8000

8 March, 2007

To:      Eco Telecom Limited ("Party B")
         4 Irish Place, Suite 2
         Gibraltar
         Fax: +350-41988
         Attention: Franz Wolf

From:   Deutsche Bank AG, London Branch ("Party A")

Re:     Forward Transaction -- DB reference -- LN : 164890

Dear Sirs,

The purpose of this letter agreement (this "**Confirmation**") is to confirm the terms and conditions of the transaction entered into between us on the Trade Date specified below (the "**Transaction**"). This Confirmation constitutes a "Confirmation" as referred to in the ISDA Master Agreement specified below.

1.    The definitions and provisions contained in the 2000 ISDA Definitions (the "**2000 Definitions**") and the 2002 ISDA Equity Derivatives Definitions (the "**2002 Definitions**" and, together with the 2000 Definitions, the "**Definitions**"), each as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between the 2002 Definitions and the 2000 Definitions, the 2002 Definitions will govern. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

      This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. This Confirmation shall supplement, form a part of, and be subject to an agreement in the form of the 2002 ISDA Master Agreement (the "**Agreement**") as if Party A and Party B had executed an agreement in such form (but without any Schedule except for the election of (i) the laws of England and Wales as the governing law and (ii) United States dollars as the Termination Currency). In the event of any inconsistency between provisions of that Agreement and this Confirmation, this Confirmation will prevail for the purpose of the Transaction to which this Confirmation relates. The parties hereby agree that no Transaction other than the Transaction to which this Confirmation relates shall be governed by the Agreement. For purposes of the 2002 Definitions, the Transaction is a Share Forward Transaction.

      Party A and Party B each represents to the other that it has entered into this Transaction in reliance upon such tax, accounting, regulatory, legal, and financial advice as it deems necessary and not upon any view expressed by the other.

2.    The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 7 March 2007 |
| Seller: | Party A |
| Buyer: | Party B |

Chairman of the Supervisory Board: Clemens Börsig
Management Board: Josef Ackermann (Chairman), Hugo Banziger, Tessen von Heydebreck, Anthony Di Iorio, Hermann-Josef Lamberti

Deutsche Bank AG is authorised under German Banking Law (competent authority: BaFin – Federal Financial Supervising Authority) and with respect to UK commodity derivatives business by the Financial Services Authority; regulated by the Financial Services Authority for the conduct of UK business; a member of The London Stock Exchange. Deutsche Bank AG is a joint stock corporation with limited liability incorporated in the Federal Republic of Germany HRB No. 30 000 District Court of Frankfurt am Main; Branch Registration in England and Wales BR000005. Registered address: Winchester House, 1 Great Winchester Street, London EC2N 2DB. Deutsche Bank Group online: http://www.deutsche-bank.com

| | |
|---|---|
| Shares: | American Depository Receipts issued by The Bank of New York under the ADR Program of the Open Joint Stock Company "Vimpel–Communications", a Russian company (the "Issuer"), each representing 1/4th of a share of common stock, 0.005 rubles nominal value, of the Issuer |
| Number of Shares: | 818,400 |
| Forward Price: | USD 84.1644 |
| Prepayment: | Not Applicable |
| Variable Obligation: | Not Applicable |
| Exchange: | New York Stock Exchange |
| Related Exchange(s): | All Exchanges |
| Clearance System(s): | DTC |
| Settlement Terms: | |
| Physical Settlement: | Applicable |
| Settlement Currency: | USD |
| Settlement Price: | Forward Price |
| Settlement Date: | March 14, 2007 |
| Settlement Method Election: | Not Applicable |

Dividends:

| | |
|---|---|
| Dividend Period: | Second Period |
| Excess Dividend Amount: | The Paid Amount multiplied by the Number of Shares |

Share Adjustments:

| | |
|---|---|
| Method of Adjustment: | Calculation Agent Adjustment |

**Extraordinary Events:**

Consequences of Merger Events:

| | |
|---|---|
| Share–for–Share: | Alternative Obligation |
| Share–for–Other: | Alternative Obligation |
| Share–for–Combined: | Alternative Obligation |
| Tender Offer: | Applicable |

Consequences of Tender Offers:

| | |
|---|---|
| Share–for–Share: | Calculation Agent Adjustment |
| Share–for–Other: | Calculation Agent Adjustment |
| Share–for–Combined: | Calculation Agent Adjustment |

2

| | |
|---|---|
| Determining Party: | Seller |
| Composition of Combined Consideration: | Applicable |
| Nationalization, Insolvency or Delisting: | Cancellation and Payment |
| Determining Party: | Seller |
| Additional Disruption Events: | |
| Change in Law: | Applicable |
| Failure to Deliver: | Applicable |
| Insolvency Filing: | Applicable |
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Determining Party: | Seller |
| Non–Reliance: | Applicable |
| Agreements and Acknowledgments | |
| Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments | |

3.  Calculation Agent:               Party A

4.  Account Details:

     Account for payments to Party A:

     To be advised

     Account for delivery of Shares to Party B:

     To be advised

5.  Offices:

     (a)  The Office of Party A for the Transaction is   London; and

     (b)  The Office of Party B for the Transaction is   Not Applicable.

6.  Additional Representations of Party B:

Party B acknowledges that Party A will hedge its exposure under this Transaction by purchasing the Number of Shares in the open market in a commercially reasonable manner. In connection therewith, Party B hereby represents and warrants to Party A as follows:

(i) it is not entering into the Transaction (x) on the basis of, and is not aware of, any material non–public information with respect to the Issuer or the Shares, (y) in anticipation of, in connection with, or to facilitate a tender offer, or (z) to create actual or apparent trading activity in the Shares or to raise or depress or otherwise manipulate the price of the Shares; and it will not become aware of any material non–public information with respect to the Issuer or the Shares at any time prior to the Settlement Date; *provided* that if Party B is in breach of the immediately preceding representation, it shall provide an immediate notice to Deutsche Bank AG London Branch, Winchester House, 1 Great Winchester Street, London, EC2N 2DB, Attention: Colin Greene, Email: colin.greene@db.com, Tel: +44 207 545 8000 Fax: +44207 5470953 of that fact to Party A (but without disclosing to Party A the nature of the material non–public information that has caused it to be in such a breach) and Party B understands and acknowledges that Party A will cease purchases of such Shares upon receipt of such notice from Party B;

(ii) is in compliance with its reporting obligations under Section 13 of the Securities Exchange Act of 1934, as amended (the "Exchange Act") with respect to the Shares and will comply with such obligations by filing with the SEC the Schedule 13D/A including this Confirmation within 48 hours of the Trade Date;

(iii) its entry into the Transaction and Party A's purchases of Shares contemplated hereby do not and will not violate Rule 13e–1 or Rule 13e–4 under the Exchange Act;

3

(iv) neither it nor any of its affiliates will purchase any Shares during the period from the Trade Date to the Settlement Date and it will not enter into any arrangements (whether similar to this Transaction or not) pursuant to which any person were to purchase any Shares on its account during the period from the Trade Date to the Settlement Date;

(v) it is not a "U.S. person" (as defined in Regulation S ("**Regulation S**" under the US Securities Act of 1933, as amended (the "**Securities Act**")) and the entry into this Transaction is an "offshore transaction" (as defined in Regulation S).

7.     Determination of the "Close-out Amount."

Party B agrees and acknowledges that if an Event of Default occurs with respect to which Party B is the Defaulting Party or if a Termination Event occurs with respect to which Party B is an Affected Party, then, Party A will determine the "Close-out Amount" for the Transaction based on the net proceeds received by it from the sale of the Number of Shares in arms' length good faith transaction, taking into account the fact that such Number of Shares will be sold at an illiquidity discount to the market price of the Shares at the time due to such Number of Shares being "restricted securities" that can only be sold in private transactions not involving a "public offering" (within the meaning of Section 4(2) under the Securities Act.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours sincerely,

**DEUTSCHE BANK AG, LONDON BRANCH**

By:     /s/Andrew Dixon-Smith
Name: Andrew Dixon-Smith
Title: Legal Counsel


By:     /s/Colin Greene
Name: Colin Greene
Title:   Authorized Signatory

Confirmed as of the date first above written:

**ECO TELECOM LIMITED**

By:     /s/Marina Kushnareva
Name: Marina Kushnareva
Title:   Director