UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TELENOR EAST INVEST AS,

                        Plaintiff,

-against-

ALTIMO HOLDINGS & INVESTMENTS LIMITED, ECO TELECOM LIMITED, CTF HOLDINGS LIMITED, CROWN FINANCE FOUNDATION, and RIGHTMARCH LIMITED,

                        Defendants.

07 Civ. 4829 (DC)
ECF ACTION

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY OF ALTIMO HOLDINGS & INVESTMENTS LIMITED, CROWN FINANCE FOUNDATION, AND RIGHTMARCH LIMITED**

 

Ronald S. Rolfe
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

*Attorneys for Defendants Altimo Holdings & Investments Limited, Crown Finance Foundation, and Rightmarch Limited*

October 23, 2007

# Table of Contents

Page

Table of Authorities ........................................................................................................... ii

I.   TELENOR FAILS TO STATE A CLAIM UNDER SECTION 13(d) ................... 1

   A.   The "Intent to Control" Claim Fails ............................................................. 1

   B.   Telenor Has No "Financing Disclosure" Claim .......................................... 3

   C.   The Deutsche Bank and Rightmarch Transactions Have Been
        Adequately Disclosed. ................................................................................. 4

   D.   Telenor Has No "Group" Claim Against Rightmarch. ................................ 5

II.  TELENOR FAILS TO STATE A CLAIM UNDER SECTION 10(b) ................... 6

   A.   Telenor Has No Standing to Pursue an Insider Trading Claim ................... 6

   B.   Telenor Fails to Meet the Heightened Pleading Standard ........................... 7

III. TELENOR FAILS TO STATE A CLAIM UNDER SECTION 14 ........................ 8

   A.   The Facts Alleged Do Not Establish the Existence of a Tender
        Offer ............................................................................................................ 8

   B.   Telenor's 14(e) Claim Fails ......................................................................... 9

IV.  TELENOR FAILS TO STATE A CLAIM UNDER SECTION 13(e) .................... 9

Conclusion ........................................................................................................................ 10

## Table of Authorities

Page(s)

**Cases**

*Berne St. Enterprises, Inc., v. American Export Isbrandtsen Co.,* CCH Fed. Sec. L. Rep. ¶ 92,711, 1970 WL 268 (S.D.N.Y. July 8, 1970) ...................................... 6

*Brascan Ltd. v. Edper Equities Ltd.*, 477 F. Supp. 773 (S.D.N.Y. 1979) .......................... 8

*Calvary Holdings, Inc. v. Chandler*, 948 F.2d 59 (1st Cir. 1991) ...................................... 5

*Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216 (4th Cir. 1980) .......................................... 3

*E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 559 (S.D.N.Y. 2006) ................................. 8, 9

*E.ON AG v. Acciona, S.A.*, No. 06 Civ. 8720 (DLC), 2007 WL 316874, (S.D.N.Y. Feb. 5, 2007) ................................................................................................ 1

*Gulf & W. Indus., Inc. v. Great Atl. Pac. Tea Co.*, 476 F.2d 687 (2d Cir. 1973) ...................................................................................................... 1

*Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) .......................................... 8

*Heyman v. Heyman*, 356 F. Supp. 958 (S.D.N.Y. 1973) .................................................... 6

*Int'l Banknote Co. v. Muller*, 713 F. Supp. 612 (S.D.N.Y. 1989) ..................................... 6

*Martinez v. Sanders*, No. 02 Civ. 5624 (RCC), 2004 WL 1234041, (S.D.N.Y. June 3, 2004) .............................................................................................. 1

*Morales v. Quintel Entm't, Inc.,* 249 F.3d 115 (2d Cir. 2001) .......................................... 5

*Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540 (2d Cir. 1967) ................................ 6

*Packer v. Yampol*, 630 F. Supp. 1237 (S.D.N.Y. 1986) .................................................... 7

*Stromfeld v. Great Atl. & Pac. Tea Co.,* 484 F. Supp. 1264 (S.D.N.Y. 1980) ................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................... 1, 7

*Universal Container Corp. v. Horwitz*, No. 74 Civ. 3865, 1977 WL 1036 (S.D.N.Y. Sept. 6, 1977) ............................................................................................. 6

**Statutes**

17 C.F.R. § 240.13d-101 ...................................................................................................... 1

17 C.F.R. § 240.13e-3(a) ............................................................................................... 9-10

17 C.F.R. § 240.14e-3(a) ................................................................................................. 9

**Other Authorities**

New York Stock Exchange Listed Company Manual, § 309.00 ........................................ 7

Ralph C. Ferrara, Donna M. Nagy and Herbert Thomas, *Ferrara on Insider Trading and the Wall*, § 7.02 (2007) ............................................................................ 7

Telenor's Opposition ("Opp.") to Defendants' Motion to Dismiss ("Mem.") fails to defend several claims asserted in the Complaint and opposed by Defendants.[1] Those claims should be dismissed as abandoned. *See Martinez v. Sanders*, No. 02 Civ. 5624 (RCC), 2004 WL 1234041, *3 (S.D.N.Y. June 3, 2004) (dismissing six claims due to plaintiff's failure to oppose dismissal). The remaining claims should be dismissed because Telenor provides no basis for avoiding dismissal.[2]

## I. TELENOR FAILS TO STATE A CLAIM UNDER SECTION 13(d)

### A. The "Intent to Control" Claim Fails.

Telenor's Complaint is premised on the notion that Defendants have concealed an intent to "control" VimpelCom. Item 4(b) of Schedule 13D, on which Telenor relies (Opp. 10), requires disclosure of plans for "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation", 17 C.F.R. § 240.13d-101, Item 4(b), as do the cases Telenor cites, which both involved such transactions.[3] Eco Telecom becoming a Plurality Shareholder under the Shareholders Agreement was not a "merger, reorganization or liquidation" or any other "extraordinary" transaction.

---

[1] Telenor does not challenge Defendants' arguments for dismissal of its claims that (1) Defendants violated Section 13(d) by failing to disclose insider trading (Compl. ¶ 91 (c)) and (2) Defendants violated Section 13(d) by failing to "promptly report" certain transactions (*Id*. ¶¶ 29, 83, 85).

[2] Telenor states that the allegations must be viewed in the light most favorable to the plaintiff. (Opp. 6.) However, for fraud allegations governed by the Private Securities Litigation Reform Act ("PSLRA"), including claims in the Complaint, that is no longer the standard after *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2510 (2007) ("court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff").

[3] *See Gulf & W. Indus., Inc. v. Great Atl. Pac. Tea Co*., 476 F.2d 687, 697 n.18 (2d Cir. 1973) (defendant failed to disclose plans "to liquidate the issuer, to sell its assets or to merge it with any other persons, or to make any other major change in its business or corporate structure"); *E.ON AG v. Acciona, S.A.*, No. 06 Civ. 8720 (DLC), 2007 WL 316874, at *9 (S.D.N.Y. Feb. 5, 2007) (defendant failed to disclose merger proposal).

Under the Shareholders Agreement, which allocates director nominees between Eco Telecom and Telenor, both parties shared "control" of VimpelCom both before and after Eco Telecom's acquisition of 44% of the voting shares. Telenor has always had, and still has, the right to nominate five Board candidates and Eco Telecom the right to nominate four.

Moreover, Telenor contradicts itself as to what constitutes "control". In its Opposition, Telenor alleges that because Eco Telecom increased its ownership to 44% "Eco Telecom has now obtained effective control of VimpelCom". (Opp. 1.) But in its opposition to the motion of codefendants Eco Telecom and CTF Holdings (at 12), Telenor asserts that the Complaint describes Defendants' effort to "acquire control of VimpelCom . . . and not, as Eco Telecom would have it, an effort to acquire 44% of VimpelCom's shares".

Control of VimpelCom would shift to one party only if that party acquired more than 50% of VimpelCom's voting shares, terminating the Shareholders Agreement and triggering Russian tender offer rules. With this definition of "control", Telenor's claims fail, because Telenor makes no allegation supporting a plausible inference that Eco Telecom harbors an intent to acquire more than 50% ownership. Telenor points to Eco Telecom's application to the Russian antimonopoly authorities, filed in May 2005, requesting permission to acquire 60% of VimpelCom's voting stock. (Opp. 9.) As Defendants explained in an SEC filing, that application was not based on any intent to obtain 60%, but was instead "a defensive move to neutralize similar applications [filed] by Telenor". (Exhibit 2 to the August 27, 2007 Declaration of Ronald S. Rolfe ("Rolfe Decl.").) Moreover, once a shareholder owns more than 50% of the securities of a

2

company, the holder must tender for—and since October 26, 2006, the effective date of the new antimonopoly law, seek clearance to acquire—100%. (*See* Exhibits 1-3 to the October 23, 2007 Declaration of Ronald S. Rolfe ("Rolfe Decl. II").) Thus, Eco Telecom's application for 60% is moot. Even more telling, in March 2006, Telenor requested approval to obtain 100% of VimpelCom's voting stock (*id*. Ex. 4), yet none of Telenor's 13D filings discloses an intent to acquire "control" of VimpelCom.

Finally, the case that Telenor cites, *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216 (4th Cir. 1980), supports dismissal. In *Dan River*, the court found that the "defendants at no point have declared clearly the purpose of their acquisition". *Id.* at 1225. The court found it inconceivable that the defendants had "no plan" in light of, among other things, their hiring a financial firm with a recognized expertise in corporate mergers and acquisitions to make the purchases. *Id.* Here, Defendants do not assert they have "no plan", and, contrary to Telenor's unsupported assertion (Opp. 9), did not merely say "that they were interested only in protecting their investment" in VimpelCom, but explicitly declared the purpose of their acquisition of shares: that they "intend to acquire more than 44% but less than 50% of VimpelCom's voting shares". (Rolfe Decl. Ex. 14.) Unlike in *Dan River*, Telenor has alleged no plausible basis to question that disclosure.

    **B.**  **Telenor Has No "Financing Disclosure" Claim.**

Telenor does not dispute the Section 13(d) requirements concerning borrowed funds: a reporting person must disclose a loan if it was obtained for and has been used to acquire shares that are the subject of a 13D. There is no requirement to disclose a borrowing unless and until it is used for a share purchase. (Mem. 7-8.) Telenor argues that Defendants "falsely claimed [in a press release] that the [Deutsche Bank] borrowings were intended to invest in new telecommunications ventures in

Eurasia". (Opp. 11.) Telenor does not explain, because it cannot, why that statement is false or how it gives rise to a Section 13(d) claim. Telenor also argues that Defendants did not disclose a $750 million Credit Suisse loan. (*Id.*) Defendants had no obligation to do so, and Telenor cites no authority to the contrary.

### C. The Deutsche Bank and Rightmarch Transactions Have Been Adequately Disclosed.

The Complaint asserts that the Confirmations show that there must have been some undisclosed prior agreement or understanding between Deutsche Bank and Eco Telecom. (Compl. ¶¶ 42, 44-46.) As Defendants explained, Telenor's argument is based on a misreading of the Confirmations. For example, the March 1 Confirmation documents the parties' Transaction of February 28 (the "Trade Date"). (Mem. 9.) Nothing further exists. The 2002 ISDA Equity Derivatives Definitions and 2002 ISDA Master Agreement, published by the International Swaps and Derivatives Association, Inc., and incorporated into the Confirmations, show that it is standard practice to complete a Transaction one day and execute the Confirmation the next. (Rolfe Decl. II Ex. 5 at 1-2 (defining "Transaction", "Confirmation" and "Trade Date"); *Id.* Ex. 6 at 16 (after Transaction, "Confirmation will be entered into as soon as practicable").)

Telenor claims that the 13Ds that Defendants filed after the Complaint ignored the "litany of omissions and inaccuracies" alleged with respect to the Rightmarch Transaction (Opp. 12). But that is wrong. Defendants fully addressed the allegations. (*See* Mem. 10-12.) Telenor argues that "[a]t a minimum" Defendants failed to disclose the Rightmarch Transaction as part of a "concerted effort to obtain control of VimpelCom". (Opp. 12.) As discussed above, Defendants adequately disclosed their intent with respect to VimpelCom in Amendment No. 32. Telenor's accusation that

4

Defendants used the Rightmarch Transaction to "circumvent Russian law" (Opp. 5) is nonsense and belied by Telenor's use of a similar forward purchase mechanism. Pursuant to the transaction described in Defendants' Memorandum (Mem. 16 n.11), ING acquired shares for Telenor beginning on June 2, 2006 and those shares were "parked" until a transfer to Telenor in May 2007, during which period Telenor never reported when and how many VimpelCom ADSs it instructed ING to purchase on its behalf. (Rolfe Decl. Exs. 21, 22.) It is worth emphasizing that during that period there were several instances when Telenor nominees on the VimpelCom Board possessed material nonpublic information. (Mem. 16 n.11.)

### D. Telenor Has No "Group" Claim Against Rightmarch.

Telenor does not respond to Defendants' argument that Jam was not a beneficial owner and thus not a member of a 13(d) group with Defendants. (Mem. 12-13.) Telenor now focuses on Rightmarch, arguing that Rightmarch violated its disclosure obligations by not joining the 13Ds because it was a beneficial owner and member of a 13(d) group. (Opp. 13-14.) As disclosed (Rolfe Decl. Ex. 7), Jam delivered all VimpelCom shares directly to Eco Telecom as the beneficial owner, and thus Rightmarch was not required to file. *See Calvary Holdings, Inc. v. Chandler*, 948 F.2d 59, 62, 64 n.6 (1st Cir. 1991) (record owner with no voting control was not required to file 13D as individual or as member of 13(d) group). The purpose of the "group" rule is to prevent evasion of the disclosure requirement. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 123 (2d Cir. 2001). Defendants reported Eco Telecom's beneficial ownership of shares purchased under the Rightmarch Transaction, foreclosing the straw-man argument (Opp. 4-5) that Rightmarch was used to "hide" purchases.

Moreover, even if the failure to include Rightmarch as a reporting person constitutes a technical violation—and it does not—Telenor cannot show any harm. *See Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 620 (S.D.N.Y. 1989) (if litigant "seeks and is to receive equitable relief, [he must] do more than establish a technical violation of the statute" (quoting *Universal Container Corp. v. Horwitz*, No. 74 Civ. 3865, 1977 WL 1036, at *18 (S.D.N.Y. Sept. 6, 1977))).

## II.     TELENOR FAILS TO STATE A CLAIM UNDER SECTION 10(b)

### A.     Telenor Has No Standing to Pursue an Insider Trading Claim.

Telenor's reliance on *Mutual Shares Corp. v. Genesco, Inc.,* 384 F.2d 540, 546-47 (2d Cir. 1967) (Opp. 16) fails for at least two reasons. First, it was decided before *Blue Chip* and is no longer controlling. Second, *Mutual Shares* is limited to an attempt to restrain on-going market manipulation; it does not apply when, as here, the alleged fraudulent activity has been completed. *See Heyman v. Heyman*, 356 F. Supp. 958, 964 (S.D.N.Y. 1973); *Berne St. Enterprises, Inc., v. American Export Isbrandtsen Co.,* CCH Fed. Sec. L. Rep. ¶ 92,711, 1970 WL 268, *10 (S.D.N.Y. July 8, 1970) (Mansfield, J.)

Telenor lacks standing for the independent reason that it does not plead a direct injury. Telenor argues that Defendants acquired control of VimpelCom to the "detriment" of all shareholders, including Telenor. (Opp. 18.) The "detriment" is not explained, nor could it be. Defendants simply exercised their contractual rights under the Shareholders Agreement to increase their candidate nomination rights. Telenor also argues that Defendants purchased VimpelCom shares at an "artificially low price". (*Id.*) Even assuming the prices were artificially depressed, Telenor did not sell shares, and thus could not have been injured. Indeed, Telenor would have benefited, because it purchased shares through ING throughout the relevant period.

6

Recognizing its inability to plead real injury, Telenor argues that "the allegation that Defendants caused Plaintiff's injury should be sufficient". (Opp. 18, n.14.) That is not the law. *See Packer v. Yampol*, 630 F. Supp. 1237, 1240 (S.D.N.Y. 1986) (conclusory allegations of injury are not sufficient to withstand dismissal).

### B. Telenor Fails to Meet the Heightened Pleading Standard.

As Defendants have established, Telenor's theory of "insider trading" is so broad as to include Telenor itself. (Mem. 16.) Telenor does not refute this. Telenor ignores the point and makes the conclusory argument that the Complaint pleads the necessary links between Defendants' purchases and inside information given to VimpelCom Board members. (Opp. 19.) That is wrong. Telenor does not allege that Eco Telecom's nominees on the VimpelCom Board (who are not employees of Eco Telecom or Rightmarch) disclosed non-public information to the individuals responsible for the purchases or that they directed the purchases.[4]

Telenor's allegations also fail to establish the requisite "strong inference" of intent to defraud required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499 (2007). No inference of scienter can be drawn, because the purchases at issue were consistent with Eco Telecom's ongoing efforts and not suspiciously timed. Telenor cites to a stock price chart to argue that the purchases were "suspiciously-timed" (Opp. 20), but the chart shows nothing but the steadily increasing price of VimpelCom stock. Telenor's other response, that there was "no regular pattern" in Eco Telecom's purchases,

---

[4] Contrary to Telenor's representation (Opp. 2), neither source cited in its preliminary statement includes "shareholders whose representatives are members of a publicly-traded corporation" in a discussion of recommended safe-trading "window periods". Rather, both discuss "officers, directors and employees". *See* Ralph C. Ferrara, Donna M. Nagy and Herbert Thomas, *Ferrara on Insider Trading and the Wall*, § 7.02 (2007); New York Stock Exchange Listed Company Manual, § 309.00.

misses the point. The point is that the alleged "insider trading" purchases were not "unusual"— there is no suspicious chronology that gives rise to a strong inference that Eco Telecom or Rightmarch was purchasing VimpelCom shares because they possessed nonpublic information. (Mem. 16-17.) The innocent inference that they were purchasing shares to achieve a 44% interest before an upcoming shareholders meeting is stronger.

### III.   TELENOR FAILS TO STATE A CLAIM UNDER SECTION 14

#### A.   The Facts Alleged Do Not Establish the Existence of a Tender Offer.

Telenor does not deny that the sellers in the transactions at issue were sophisticated investors and not the public shareholders whom the Williams Act was intended to protect. *See Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 56 (2d Cir. 1985). Nor does Telenor deny the general rule that privately negotiated transactions do not constitute tender offers. *See, e.g.*, *Brascan Ltd. v. Edper Equities Ltd.*, 477 F. Supp. 773, 790 (S.D.N.Y. 1979). Instead, Telenor accuses Defendants of improperly making the factual assertion that the purchases were "privately negotiated block trades". (Opp. 21.) That assertion is taken directly from the Complaint. According to Telenor, the purchases were individually brokered tractions with "hedge funds and other holders of large blocks of VimpelCom shares", made over several weeks. (Compl. ¶ 56.)

Telenor relies on *E.ON AG v. Acciona, S.A.,* 468 F. Supp. 2d 559 (S.D.N.Y. 2006), to suggest that whether purchases amount to an "unconventional tender offer" is a question of fact that cannot be resolved on a motion to dismiss.[5] The law is

---

[5] It is worth noting that in *E.ON* Judge Cote emphasized that after the SEC's revisions in 2000 courts "should . . . restrain any impulse to define a tender offer broadly and confer tender offer status on buying programs which would at best constitute 'unconventional' tender offers". 468 F. Supp. 2d at 583.

clear that when the facts alleged do not resemble a tender offer the claim should be dismissed. *See, e.g.*, *Stromfeld v. Great Atl. & Pac. Tea Co.*, 484 F. Supp. 1264, 1273 (S.D.N.Y. 1980). That is the case here. Indeed, *E.ON* supports dismissal. In contrast to the large number of offers made over weeks and on different terms alleged here, *E.ON* involved a single offer contingent on a fixed number of shares being tendered, made to all offerees on nonnegotiable terms. The offer, which was open for only a few hours, resulted in an acquisition of over 13% of the company's shares. 468 F. Supp. 2d at 565-66.

      **B.**    **Telenor's 14(e) Claim Fails.**

Telenor misses the point regarding the inadequacies of its Section 14(e) claim. Rule 14e-3 prohibits trading while in possession of material, non-public information "relating to" a tender offer by "any other person", meaning someone other than person allegedly making the tender offer. 17 C.F.R. § 240.14e-3(a). Information about VimpelCom does not "relate to" the alleged tender offer, and Rule 14e-3 does not apply to offerors. (Mem. 22-23.) Therefore, under Telenor's own theory, Rule 14e-3 is inapplicable. Shying from its flawed argument, Telenor improperly attempts to revise its Complaint to make the more general allegation that Defendants violated Section 14(e) by failing to disclose that they were engaged in a tender offer. That argument, however, merely repeats Telenor's 14(d) claim, which fails for the reasons discussed.

**IV.**    **TELENOR FAILS TO STATE A CLAIM UNDER SECTION 13(e)**

Telenor also fails to provide any support for its claim that Eco Telecom's acquisitions amounted to a "going private" transaction under Section 13(e). The Complaint contains no allegation that the acquisitions had the purpose or created a reasonable likelihood of triggering a "going private" transaction. *See* 17 C.F.R. §

9

240.13e-3(a)(3). Telenor once again cites Eco Telecom's application for permission to acquire 60% of VimpelCom, along with Russian tender offer laws that would require Eco Telecom to launch a tender offer if 50% ownership is actually attained. (Opp. 24.) Besides it being entirely speculative (and unrealistic given the new Russian antimonopoly law) that Eco Telecom will ever actually attain 60% ownership, the accusation of a "going private" transaction would apply with much stronger force to Telenor, which made a valid application (unlike Eco Telecom's moot one) for permission to acquire 100% of VimpelCom. (Rolfe Decl. II Ex. 4.)

## Conclusion

For the foregoing reasons, Telenor's claims should be dismissed.

October 23, 2007

CRAVATH, SWAINE & MOORE LLP,

by

　　　　/s/ Ronald S. Rolfe
　　　　Ronald S. Rolfe
　　　　Member of the Firm

　　　　Worldwide Plaza
　　　　825 Eighth Avenue
　　　　New York, NY 10019-7475
　　　　(212) 474-1000

*Attorneys for Defendants Altimo Holdings & Investments Limited, Crown Finance Foundation, and Rightmarch Limited*